**SUMMARY OF ARGUMENT**

In May of 2006, Plaintiff Abhinav Bhatnagar was arrested at a gas station in San Ramon. Based largely on the testimony of Richard Ha, who was working at the gas station at the time of the arrest, Plaintiff's criminal charges and license suspension were subsequently dismissed with negative findings of credibility against the arresting officer, Defendant Jason Ingrassia. Since his involvement as a witness for Plaintiff, Defendant Ingrassia and other police officers have continued to harass this witness by appearing at his work and home, giving him threatening looks, and asking the witness questions. The officer's conduct towards this witness is consistent with Defendant Ingrassia's threatening and retaliatory conduct towards others who have challenged his misconduct, including Plaintiff, the public defender who successfully represented Plaintiff in his criminal case, and another public defender who successfully represented another motorist arrested by the same officer.

Defendant Ingrassia now seeks to depose Mr. Ha and intends to be present during Mr. Ha's deposition. Due to this officer's history of harassing this witness, Plaintiff seeks a protective order pursuant to Fed. R. Civ. Pro., rule 26(c)(5) to exclude Defendant Ingrassia from the deposition of this witness. Trial courts have the authority to prohibit a party from attending a deposition upon a showing of "good cause". (Fed. R. Civ. Pro., rule 26(c)(5); *Galella v. Onassis* (2nd Cir. 1973) 487 F.2d 986, 997.) Plaintiff has good cause for this protective order to issue because he will be deprived of testimony from this witness if the order is not granted, either because Mr. Ha will not be able to testify freely and without fear of intimidation at his deposition, or because he may refuse to testify at all. (*In re Shell Oil Refinery* (E.D. La. 1991) 136 F.R.D. 615, 617.) Any legitimate interests Defendant Ingrassia may have in attending Mr. Ha's deposition are outweighed by the prejudicial impact on the Plaintiff because the officer

continues to have ample opportunity to assist his counsel in the examination of this witness at deposition and at trial.

## STATEMENT OF FACTS

In the early morning hours on May 20, 2006, Plaintiff Abhinav Bhatnagar was getting gas at the Valero Gas Station in San Ramon when he was first approached by Contra Costa Deputy Sheriff Jason Ingrassia. (Affidavit of Richard Ha ("Ha Aff.") at ¶ 2-4; Affidavit of Abhinav Bhatnagar ("Bhatnagar Aff.") at ¶ 2-3.) Defendant Ingrassia targeted Plaintiff on the basis of his actual or perceived race and started interrogating him without reasonable suspicion to believe that he had committed any crime. (Affidavit of Jenny Huang ("Huang Aff.") at ¶ 8.) Without probable cause, Defendant Ingrassia arrested Plaintiff for driving while intoxicated. (*Id.* at ¶ 8.) At the police station, Defendant Ingrassia repeatedly called Plaintiff a "terrorist" and made other racially offensive remarks to him about Asians. (Bhatnagar Aff. at ¶ 5.)

In an effort to cover-up his discriminatory conduct, Defendant Ingrassia falsified evidence by claiming that he saw Plaintiff driving, that he saw Plaintiff make an illegal u-turn, and that he pulled Plaintiff over at the gas station for a traffic violation. In addition to making such false statements in his police report, Defendant Ingrassia gave false testimony under oath during Plaintiff's hearing before the Department of Motor Vehicles ("DMV") and during the suppression hearing in his criminal case. (Huang Aff. at ¶¶ 10, 5.) Defendant Ingrassia's testimony was contradicted by the testimony of Richard Ha, a gas station attendant who was working on the night of Plaintiff's arrest. (*Id.* at ¶ 11, 6.) According to Mr. Ha, Defendant Ingrassia first approached Plaintiff at the gas station while he was getting gas. Contrary to the officer's testimony, Mr. Ha stated that Plaintiff was standing outside of his car when Defendant Ingrassia started questioning him and was not sitting in his vehicle at that time as the officer had

claimed. (Ha Aff. at ¶¶ 2-4.) According to Mr. Ha, Defendant Ingrassia's patrol car was not parked behind Plaintiff's car as the officer had testified, and he did not see the emergency lights on Defendant Ingrassia's patrol car turned on that night. Mr. Ha did not see Defendant Ingrassia question a Caucasian woman at the gas station who appeared to be very drunk and instead directed his questioning at Plaintiff, who did not appear to be drunk. (*Id.* at ¶¶ 2, 5.)

In November of 2006, the criminal charges against Plaintiff were dismissed by Contra Costa County Superior Court Judge Charles Treat. Specifically, Judge Treat found that the officer's testimony was not credible and instead concluded that "the officer was trolling for drunk drivers across from the bar and picked on this defendant because of his race." (Affidavit of Diana Garrido ("Garrido Aff.") at ¶ 5.) Similarly, in March of 2007, a DMV hearing officer found that Defendant Ingrassia had no reasonable cause to believe Plaintiff was driving under the influence and that he unlawfully arrested Plaintiff. The hearing officer concluded that Defendant Ingrassia lacked credibility and that "he was less than truthful when completing documents submitted to the department." (Huang Aff. at ¶ 12.)

Since his involvement as a witness, Mr. Ha has felt intimidated and threatened by an increased presence of the police at both his workplace and his home. For instance, after Plaintiff's arrest, Mr. Ha noticed an increased presence of the police at the gas station where he worked. He also began to notice one particular officer who resembled Defendant Ingrassia and who repeatedly drove by the gas station, giving him threatening looks. (Ha Aff. at ¶ 7.) Within the first week after Plaintiff filed this lawsuit, Mr. Ha had three disturbing encounters with the police at his workplace, which made him feel intimidated and threatened. With at least two of those incidents, Mr. Ha recalls seeing an officer who resembled Defendant Ingrassia. (*Id.* at

¶¶17-19.) On several occasions, the police officers asked Mr. Ha questions, inquiring about his name and how long he had been working at the gas station. (*Id.* at ¶¶ 18, 24.)

Eight days after this case was filed, Mr. Ha believes it was Defendant Ingrassia who came to the witness' home on May 29, 2007, purporting to be responding to a 911 call from Mr. Ha's house. (*Id.* at ¶¶ 20-21; Huang Aff. at 24-26.) When Mr. Ha's wife answered the door, the officer asked if everything was alright and then asked to speak with her husband. The officer then asked Mr. Ha if he called 911. As Mr. Ha informed the officer, nobody from his home called 911 that evening. (Ha Aff. at ¶ 20.) Although Plaintiff has not yet been able to confirm the identity of the officer who appeared at Mr. Ha's Ha, the witness believes Defendant Ingrassia is responsible for this encounter. (*Id.* at ¶ 22; Huang Aff. at ¶¶ 27-28.) In recent weeks, Mr. Ha has noticed an increased presence of patrol cars on the street where he lives. On one instance, Mr. Ha reports that he watched a police patrol car drive back and forth past his house multiple times. (*Id.* at ¶ 27.)

Mr. Ha lives in San Ramon, where he is in constant fear of the police. (*Id.* at ¶ 29.) Although Mr. Ha believes it is his duty to provide truthful testimony about the events surrounding Plaintiff's arrest, he fears that his involvement in this case will ensure continued harassment and retaliation against him by Defendant Ingrassia. (*Id.* at ¶ 32.) On two prior occasions, Mr. Ha has refused to testify as a witness to Plaintiff's arrest out of fear and concern for his safety. (*Id.* at ¶¶ 12, 25.)

Other individuals who have challenged this officer's misconduct have also reported hostile and retaliatory conduct by Defendant Ingrassia. Throughout the underlying criminal and administrative proceedings, Defendant Ingrassia repeatedly harassed and intimidated Plaintiff by looking at him in a threatening manner, sitting near Plaintiff, making a bizarre comment or

gesture to Plaintiff, and staring him down along with other officers. (Bhatnagar Aff. at ¶¶ 8-12.) While criminal and administrative charges against him were still pending, Plaintiff began receiving numerous disturbing and threatening phone calls in which the caller said to "watch your back," "watch your family," and "you don't belong here." (Bhatnagar Aff. at ¶¶ 15-19.) Plaintiff believes that Defendant Ingrassia is responsible for these threatening phone calls that have terrorized him and his family over a period of many months. (*Id.* at ¶¶ 14-19.)

In August of 2006, Deputy Public Defender Diana Garrido requested that the Contra Costa County Sheriff's Department ("Sheriff's Dept.") conduct an internal affairs investigation to determine whether Defendant Ingrassia was responsible for this harassing and retaliatory conduct against Plaintiff and his witness, Mr. Ha. (Garrido Aff. at ¶ 6.) Just weeks later on September 29, 2006, Defendant Ingrassia initiated a traffic stop on Plaintiff while he was driving in San Ramon. When the officer first approached Plaintiff, he asked, "Do you remember me?" Defendant Ingrassia then threatened Plaintiff with physical violence, told him never to return to San Ramon again, and assured Plaintiff that his attorneys could not do anything to him. (Bhatnagar Aff. at ¶¶ 21-24.) Defendant Ingrassia then issued Plaintiff a traffic citation based on the false allegation that he made an illegal u-turn. (*Id.* at 25.) In March of 2007, Contra Costa County Superior Court Judge Joel Golub found Plaintiff not guilty of the traffic violation and dismissed the citation against him. (Huang Aff. at ¶ 16.)

Defendant Ingrassia has also conducted himself in an intimidating manner towards Diana Garrido, the deputy public defender who successfully defended Plaintiff against his criminal charges and complained to the Sheriff's Department of the officer's misconduct. (Garrido Aff. ¶¶ 1-3, 5-8.) Just weeks after Ms. Garrido successfully argued a suppression motion against Defendant Ingrassia, the officer focused his attention on her when he saw her in the courthouse,

and then he stared at her in a hateful manner as they passed each other. (*Id.* at ¶ 8.) In a similar vein, Defendant Ingrassia accosted Deputy Public Defender Tim Ahearn, who successfully defended a client who was also arrested by Defendant Ingrassia in an entirely separate matter. Like Ms. Garrido, Mr. Ahearn successfully argued a suppression motion based on the claim that Defendant Ingrassia fabricated grounds for probable cause to justify the arrest of his client. (Declaration of Tim Ahearn ("Ahearn Decl.") at ¶¶ 5-9.) Contra Costa County Superior Court Judge Nancy Stark granted Mr. Ahearn's suppression motion and dismissed the charges against his client. (*Id.* at ¶ 11.) Just two weeks later, Defendant Ingrassia accosted Mr. Ahearn in the Martinez Detention Facility where the officer was apparently assigned to work. As Mr. Ahearn was meeting with a client, Defendant Ingrassia came up to Mr. Ahearn's visiting room and stared in the room at him in an intimidating manner. (*Id.* at ¶¶ 2-4, 12-14.) With nearly eight years of experience as a deputy public defender, Mr. Ahearn states that he has never before felt so intimidated by a deputy sheriff. (*Id.* at ¶ 15.)

In response to Ms. Garrido's request for an investigation into suspected harassment and intimidation of Plaintiff and Mr. Ha, the Sheriff's Department conducted an internal affairs investigation. (Garrido Aff. at ¶ 6.) During its investigation, the Sheriff's Department inappropriately focused its attention on Plaintiff as a suspect and not as the complainant. (Bhatnagar Aff. at ¶ 32.) In March of 2007, the Sheriff's Department completed its investigation after being advised of adverse findings of credibility against the officer by several different judges. (Huang Aff. at ¶ 23.) Despite such findings, the internal affairs investigation concluded with an "unfounded" finding. Specifically, the investigation found sufficient evidence to prove that the acts complained of did not occur as alleged. (Bhatnagar Aff. at 32.) Defendant Ingrassia

has since continued to harass and intimidate Plaintiff and Mr. Ha. (Ha Aff. at ¶¶ 17-24, 27; Bhatnagar Aff. at ¶¶ 12, 17, 28, 36.)

Both Plaintiff and Mr. Ha have been subjected to ongoing harassment and retaliation by Defendant Ingrassia for more than one year. (Ha Aff. at ¶ 28; Bhatnagar Aff. at ¶ 39.) As a result, both Plaintiff and Mr. Ha were alarmed to learn that Defendant Ingrassia intended to be present during both their depositions. (Ha Aff. at ¶ 31; Bhatnagar Aff. at ¶¶ 37-38.) Although Plaintiff agreed to be deposed in the presence of Defendant Ingrassia and was able to do so truthfully, he felt that the officer's presence interfered with his ability to testify freely and without fear and intimidation. (Bhatnagar Aff. at ¶¶ 38-41.) Specifically, Defendant Ingrassia's presence made Plaintiff feel very nervous, anxious, and emotionally stressed during his deposition. (Bhatnagar Aff. at ¶ 39.)

Defendants now seek to depose Mr. Ha. Based on Mr. Ha's ongoing and disturbing encounters with the police, Mr. Ha objects to the presence of Defendant Ingrassia at his deposition and requests that the officer agree not to attend his deposition. (Huang Aff. at ¶ 40.) Plaintiff does not object to the officer's presence during the scheduled depositions of other witnesses in this case. (*Id.* at ¶ 45.) Neither does Plaintiff object to the presence of Lieutenant Eric Navarro, the individual designated by Assistant County Counsel Gregory Harvey as the county's representative, at his deposition. (*Id.* at ¶ 34.) Efforts by Plaintiff's counsel to resolve this dispute with defendants' counsel without court intervention were unsuccessful. (*Id.* at ¶¶ 40-44.) Only after such efforts failed did Plaintiff bring the present motion, seeking a protective order pursuant to Fed. R. Civ. Pro., Rule 26(c) to prohibit Defendant Ingrassia from attending the deposition of Mr. Ha.

# ARGUMENT

## I. PURSUANT TO FED. R. CIV. PRO. 26(c), PLAINTIFF HAS GOOD CAUSE FOR ISSUANCE OF A PROTECTIVE ORDER TO PROHIBIT DEFENDANT INGRASSIA FROM ATTENDING THE DEPOSITION OF PLAINTIFF'S WITNESS.

Pursuant to the Federal Rules of Civil Procedure, this court has the authority to issue a protective order requiring "that discovery be conducted with no one present except persons designated by the court." (Fed. R. Civ. Pro., Rule 26(c)(5).)  Rule 26(c)(5) gives trial courts the power to prohibit a party from attending a deposition upon a showing of "good cause". (*Galella v. Onassis* (2nd Cir. 1973) 487 F.2d 986, 997 (good cause shown to exclude plaintiff "paparazzo" from attending deposition of defendant Jacqueline Onassis); *In re Shell Oil Refinery* (E.D. La. 1991) 136 F.R.D. 615, 617 (representative of corporate defendant excluded from plaintiff's deposition); *Beacon v. R.M. Jones Rentals* (N.D. Ohio 1978) 79 F.R.D. 141, 141-42 (defendants prohibited from attending co-defendant depositions).)

Rule 26(c) lists various types of protective orders that a federal court may issue upon motion by a party.  However, as the rule explicitly provides, district courts are authorized to issue "*any* order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense..." (Fed. R. Civ. Pro., Rule 26(c).)  It is well-established law that district courts enjoy wide latitude and discretion to fashion a protective order as justice may require. (*Seattle Times Co. v. Rhinehart* (1984) 467 U.S. 20, 36; *Phillips v. General Motors Corp., supra,* 307 F.3d at 1211-12 ("a court may be as inventive as the necessities of a particular case require in order to achieve the benign purposes of [Rule 26(c)]") (quoting Miller and Wright, *Federal Practice and Procedure*, Civil § 2036 at 489 (2d ed. 1994)).)

To establish good cause, the party seeking protection bears the burden of proving harm or prejudice that will result if the protective order is not granted. If prejudice is established, it must be weighed against the interests of the party against whom the protective order is sought to determine whether the protective order should issue. (*Rivera v. NIBCO, Inc.* (9th Cir. 2004) 364 F.3d 1057, 1063; *Phillips ex rel. Estates of Byrd v. General Motors Corp.* (9th Cir. 2002) 307 F.3d 1206, 1210-11.)

The court's authority to exclude a party from attending a deposition should be exercised only in extraordinary circumstances. (*Galella v. Onassis*, *supra*, 487 F.2d at 997; *Lee v. Denver Sheriff's Dept. et.al* (Dist. Colo. 1998) 181 F.R.D. 651, 653; *Hines v. Wilkinson* (S.D. Ohio 1995) 163 F.R.D. 262, 266.) Nevertheless, Defendant Ingrassia's conduct throughout the underlying proceedings and since the filing of this case has been nothing less than extraordinary. Based on the particularized and well-documented facts regarding the officer's history of harassment and retaliation against those who challenge the abuse of his authority, this court is authorized to issue the protective order requested herein.

A. <u>Plaintiff Will Be Severely Prejudiced in the Event that this Motion is Denied.</u>

In the event that Defendant Ingrassia is permitted to attend the deposition of Mr. Ha, Plaintiff will be severely prejudiced by the impact that this officer's presence will have on the testimony of this witness. In fact, Plaintiff has good reason to fear that Mr. Ha may refuse to be deposed if the officer is not excluded from his deposition. On at least two prior occasions, Mr. Ha has failed to appear as a witness regarding the events surrounding Plaintiff's arrest because he was afraid to testify against Defendant Ingrassia. In regards to Plaintiff's criminal case, Mr. Ha was served with a subpoena to appear as a witness on October 16, 2006. However, Mr. Ha failed to appear for that hearing because he was afraid to testify in court against the officer and

was concerned for his safety. (Garrido Aff. at ¶ 4; Ha Aff. at ¶ 12.) Mr. Ha eventually testified as a witness for Plaintiff on November 27, 2006, because he felt compelled to tell the truth about the circumstances surrounding Plaintiff's arrest. (Ha Aff. at ¶ 13.) In a separate case involving another motorist who was unlawfully arrested by Defendant Ingrassia, Mr. Ha was served with a subpoena to testify about Plaintiff's arrest. In that case, Mr. Ha also failed to appear as a witness because once again, he was afraid of testifying against the officer. (Ha Aff. at ¶ 25.) Although Mr. Ha has testified against Defendant Ingrassia on two prior occasions, he states that he would not have been agreeable to doing so if the officer had been present during his testimony. (Ha Aff. at ¶¶ 9, 14.) Because this witness has a prior history of refusing to testify out of fear of Defendant Ingrassia, Plaintiff has substantiated concerns that Mr. Ha will not agree to be deposed if the officer is allowed to attend his deposition. (Ha Aff. at ¶ 31; Bhatnagar Aff. at ¶ 43; Huang Aff. at ¶ 38.) In the absence of this court's intervention, there is a substantial risk that Plaintiff may be deprived of testimony from this critical witness.

Assuming that Mr. Ha is willing to be deposed with Defendant Ingrassia in attendance, this officer's mere presence will undoubtedly have a disruptive impact on the ability of the witness to testify freely and without fear or intimidation. District courts have granted protective orders excluding a party from attending the deposition of a witness who is intimidated by that party's mere presence. (*In re Shell Oil Refinery, supra,* 136 F.R.D. at 617 (corporate representatives with supervisory authority over deponents prohibited from attending employee depositions.)) For instance, in *In re Shell Oil Refinery,* plaintiff employees moved to exclude designated corporate representatives of defendant employer from the depositions of employees in a class action arising from an explosion at the employer's oil refinery. (136 F.R.D. at 617.) Plaintiffs claimed that the representatives tended to be supervisors with authority over the

deponents, whose presence therefore had an intimidating impact on the deponents.  Defendant, on the other hand, alleged that the presence of someone knowledgeable about the deponent's work was necessary due to the technical nature of the claims.  (*Id.* at 615-16.)  After noting that the deponent "might not testify as fully as he would otherwise" with the superior present, the court granted a protective order excluding from future depositions *any* Shell representative who had supervisory authority over the deponent. (*Id.* at 617.)

Similarly, in this case, the record provides ample evidence to show that if required to testify in the officer's presence, Mr. Ha would not testify freely and without fear or intimidation.  Mr. Ha's concerns about this officer are based on a well-documented history of numerous, disturbing encounters he has had with the police. (Ha Aff. at ¶¶ 7, 17-24, 27-29.)  Ever since Mr. Ha was identified as a witness to Plaintiff's arrest, Mr. Ha noticed an increased presence of the police at the gas station where he worked.  Mr. Ha recalls one officer in particular, who resembled Defendant Ingrassia, who frequently drove by the gas station and stared at Mr. Ha in an unfriendly manner.  (*Id.* at ¶ 7.)  Despite Mr. Ha's concerns for his own safety, he reluctantly testified as a witness for Plaintiff in both the criminal case and the DMV proceeding. (*Id.* at ¶¶ 8-16.)  Since his involvement as a witness, the harassment of Mr. Ha has intensified.  Within the first week after Plaintiff filed the present lawsuit, Mr. Ha had three disturbing encounters with the police at his workplace which made him feel intimidated and threatened.  With at least two of those incidents, Mr. Ha recalls seeing an officer who resembled Defendant Ingrassia. (*Id.* at ¶¶17-19.)  Just eight days after the Complaint in this action was filed, Mr. Ha had a terrifying experience when a police officer appeared at the home of the witness under the pretense that he was responding to a 911 call from the home. (*Id.* at ¶¶ 20-24.)  Mr. Ha believes that Defendant Ingrassia is responsible for this incident, and that the officer who came to his home may have

been Defendant Ingrassia himself. (*Id.* at ¶¶ 21-22.) In recent weeks, Mr. Ha has felt intimidated by a suspicious and increased presence of the police on the street where he resides. (*Id.* at ¶ 27.) Based on such well-documented and ongoing harassment by the police, Mr. Ha has good reason to feel intimidated by Defendant Ingrassia's presence at his deposition.

Mr. Ha's concerns about Defendant Ingrassia are further substantiated by this officer's hostile and retaliatory conduct towards other individuals who have challenged the officer's misconduct, including Plaintiff and Deputy Public Defenders Diana Garrido and Tim Ahearn. As detailed above, Defendant Ingrassia has engaged in uncurbed harassment and retaliation against Plaintiff. Soon after the internal affairs investigation against him was initiated, Defendant Ingrassia flagrantly abused his authority as a police officer by conducting a traffic stop of Plaintiff which was intended solely for the purpose of terrorizing and intimidating Mr. Bhatnagar. After threatening Plaintiff with physical violence, Defendant Ingrassia issued Plaintiff a false traffic citation, which was subsequently dismissed. (Bhatnagar Aff. at ¶¶ 21-24; Huang Aff. at ¶¶ 13, 16.) Throughout the various criminal and administrative proceedings that Plaintiff was required to defend against, Defendant Ingrassia repeatedly harassed and intimidated Plaintiff by staring at him in a threatening manner, sometimes along with other officers, and making strange comments or gestures at Plaintiff. (Bhatnagar Aff. at ¶¶ 8-12.) Plaintiff also believes that Defendant Ingrassia is responsible for the numerous threatening and harassing phone calls he received over a period of many months. (*Id.* at ¶ 19.)

The harassment reported by Mr. Ha is further substantiated by the harassing conduct reported by two deputy public defenders, both of whom successfully defended their clients and obtained negative credibility findings against Defendant Ingrassia from separate judges. For instance, just a few weeks after Ms. Garrido obtained a dismissal of criminal charges against

Plaintiff, Defendant Ingrassia stared at her in a hateful manner as they passed each other in the courthouse. (Garrido Aff. at ¶ 8.) Similarly, Deputy Public Defender Tim Ahearn was accosted by Defendant Ingrassia in the county jail just two weeks after he successfully argued a suppression motion against the officer in a separate matter before a different judge. (Ahearn Decl. at ¶¶ 5-9.) Notably, Mr. Ahearn states that he has never felt so intimidated by a deputy sheriff in over eight years working as a public defender. (Ahearn Decl. at ¶15.)

Based on this history of retaliatory conduct towards anyone who has challenged the officer's misconduct, Mr. Ha has legitimate reason to fear that the officer's mere presence during the deposition will have an intimidating effect on his ability to testify. Indeed, although Plaintiff ultimately agreed to be deposed with the officer in attendance, the officer's mere presence interfered with his ability to testify freely and without fear or intimidation. (Bhatnagar Aff. at ¶¶ 39-41; Huang Aff. at ¶¶ 35-36.) Of greater concern is the substantial risk that the officer's presence will have such an intimidating effect on Mr. Ha that he will not agree to be deposed. Because the testimony of Mr. Ha is so critical to Plaintiff's case, Plaintiff would be severely prejudiced if the instant motion is not granted.

B.  <u>Any Legitimate Interest That Defendant Ingrassia May Have in Attending the Deposition of Mr. Ha is Outweighed by the Prejudicial Impact on Plaintiff</u>

Upon a showing of prejudice, Rule 26(c) requires courts to balance the competing interests of the parties to determine whether the protective order should issue. (*Rivera v. NIBCO, Inc., supra,* 364 F.3d at 1066; *Phillips ex rel. Estates of Byrd v. General Motors Corp., supra,* 307 F.3d at 1211.) Any legitimate interest that Defendant Ingrassia may have in attending the deposition of Mr. Ha is minimal and is outweighed by the substantial prejudice to Plaintiff if the protective order is denied. Defendant Ingrassia will be represented at this deposition by his counsel, who will have the ability to consult with the officer during breaks by phone, if

necessary. Aside from Mr. Ha's deposition, Plaintiff does not object to the officer's presence during the scheduled depositions of other witnesses. (Huang Aff. at ¶ 45.) Moreover, Mr. Ha does not object to the presence of Lieutenant Eric Navarro at his deposition, who attended Plaintiff's deposition as the representative of Contra Costa County. As a result of his involvement with the internal affairs investigation of Defendant Ingrassia, Lieutenant Navarro is familiar with the details of this case and will be available to assist defense counsel, if needed. (Huang Aff. at ¶¶ 34, 47.)

It is also significant to note that Defendant Ingrassia has had ample opportunity to assist his counsel in preparing for the deposition of this witness. In addition to a written statement submitted to the DMV, Mr. Ha has provided testimony on two separate occasions regarding Plaintiff's arrest. Defendants and/or their counsel have been provided with a copy of Mr. Ha's written statement, as well as a transcript and an audio recording of the prior testimony of this witness. (Huang Aff. at ¶ 21.) Defendant Ingrassia, therefore, has had sufficient opportunity to assist his counsel in the questioning of this witness such that his presence at the actual deposition will add little, if any, value to any legitimate interests the officer may have in attending this deposition. Likewise, Mr. Ha's deposition testimony will be transcribed and presumably videotaped, providing Defendant Ingrassia with the opportunity to assist his counsel in the examination of this witness at trial.

In comparison to the substantial risk of harm to Plaintiff if a protective order does not issue, any legitimate interest Defendant Ingrassia may have in attending the deposition of Mr. Ha is nominal at best. In such circumstances, the prevailing interest in avoiding further harassment of a party will justify issuance of a protective order pursuant to Rule 26(c). (*Galella v. Onassis, supra,* 487 F.2d at 997; *M&M Medical Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc.* (4th

Cir. 1992) 981 F.2d 160, 163 (district court properly issued protective order barring plaintiff from contacting former patients of the defendant hospital, based on hospital's reports that plaintiff was harassing former patients).) Moreover, it is significant to note that the right to discovery may be subject to greater limitations in order to protect third parties from undue burden and harassment. (*Dart Industries Co. v. Westwood Chemical Co.* (9th Cir. 1980) 649 F.2d 646, 649 (the right to discovery can be more limited to protect third parties from harassment and inconvenience).) In the interest of protecting this non-party and neutral witness from further harassment and retaliation, this court should allow his deposition to proceed in the absence of Defendant Ingrassia.

## CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that this court issue a protective order as follows: (1) to prohibit Defendant Ingrassia from attending the deposition of Richard Ha, and (2) to order any further relief as this court may deem just and proper.

Date:   November 21, 2007
        Oakland, California

                             **JUSTICE FIRST, LLP**
                             Attorneys for Plaintiff Abhinav Bhatnagar
                             By:
                             _____/s/ Jenny Huang_____
                             Jenny C. Huang
                             2831 Telegraph Avenue
                             Oakland, CA  94609
                             Tel.: (510) 628-0695

Jenny C. Huang, SBN 223596
JUSTICE FIRST, LLP
2831 Telegraph Avenue
Oakland, CA 94609
Telephone: (510) 628-0695
Fax: (510) 272-0711
E-mail: jhuang@justicefirstllp.com

Attorney for Plaintiff Abhinav Bhatnagar

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABHINAV BHATNAGAR,<br>   Plaintiff,<br> vs.<br>JASON INGRASSIA, individually and in his official capacity; COUNTY OF CONTRA COSTA; and CITY OF SAN RAMON.<br><br>   Defendants. | Case No.: Case No. CV07-02669 (CRB)<br><br>**PROOF OF SERVICE** |

 I, Jenny Huang, hereby declare as follows:

 1. I am a citizen of the United States of America over the age of eighteen years. My business address is 2831 Telegraph Avenue, Oakland, California, 94609. I am not a party to this action.

 2. On November 21, 2007, I served by electronically filing a true and correct copy of the **Notice of Plaintiff's Motion for Protective Order, Memorandum of Points and Authorities in Support of Plaintiff's Motion for Protective Order, Affidavit of Richard Ha, Affidavit of Abhinav Bhatnagar, Affidavit of Jenny Huang, Affidavit of Diana Garrido, Declaration of Tim Ahearn,** and **Plaintiff's Proposed Order** to the following parties:

| | |
|---|---|
| Mr. Gregory Harvey<br>Asst. County Counsel<br>Contra Costa County<br>651 Pine Street, 9th Floor<br>Martinez, CA 94553 | Mr. James Fitzgerald, III<br>McNamara Dodge et al. LLP<br>P O Box 5288<br>Walnut Creek, CA 94596-1288 |

 I declare under penalty of perjury the foregoing is true and correct.

Date: November 21, 2007
   Oakland, California

                /s/ Jenny Huang
                JENNY C. HUANG