```
 1  A.    Uh-hum.
 2            THE COURT:  Is that "yes"?
 3            THE WITNESS:  Yes.
 4            THE COURT:  The court reporter needs you to say yes or
 5  no.
 6            THE WITNESS:  Yes.
 7
 8  By Mr. Graber:
 9  Q.    Okay.  And then a couple of minutes later you saw the
10  officer pull in?
11  A.    I think so, yes.  Yes.
12  Q.    Okay.  What were you doing between when you went out --
13  those two or three minutes between when you saw Mr. Bhatnagar
14  and when you saw the officer pull in?  Were your checking the
15  rest room at that full time, or what?
16  A.    Between the two minutes?
17  Q.    Yes.
18  A.    I smoking.
19  Q.    So you smoked a cigarette?
20  A.    Yes.
21  Q.    And that only took you two or three minutes?
22  A.    Yes.  One, two minutes.
23  Q.    Where were you when you were smoking that cigarette?
24  A.    In front of the main door.
25  Q.    So you were outside?
```

```
 1  A.    Outside.
 2  Q.    And that main door overlooks the gas pumps?
 3  A.    Yes.
 4  Q.    About how far away from Mr. Bhatnagar and the police
 5  officer were you when the officer started speaking with
 6  Mr. Bhatnagar?
 7  A.    How far?
 8  Q.    Yes.
 9  A.    About from here to here (indicating).
10  Q.    Okay.
11  A.    About five foot --
12  Q.    15, 20 feet maybe?
13  A.    15, 20 feet.
14          Mr. Graber:  The record should indicate that the
15  witness has indicated that the distance was from about the
16  witness stand to about defense counsel table.
17          THE COURT:  The record will so reflect.
18  By Mr. Graber:
19  Q.    Were you outside the entire time during this conversation,
20  or did you go back into the building?
21  A.    If I go back in the cashier?
22  Q.    Yes.
23  A.    I go back and I went out.  I go back, and I think after I
24  saw him, I go back -- and I went out when I saw him because I
25  saw him with the physical test -- you know -- I think the
```

1 police.

2 Q. When he was doing sobriety tests?

3 A. No, no. Physical tests.

4 Q. Having him walk in a straight line?

5 A. Yes, something like that. I saw that. I go out.

6 Q. Okay. So you had gone back inside between when the officer
7 first was speaking to Mr. Bhatnagar, and then when you came out
8 a second time?

9 A. Yes.

10 Q. Could you hear the conversation between the two of them
11 while you were inside?

12 A. Two of them?

13 Q. Between Mr. Bhatnagar and the police officer, when you were
14 inside the gas station?

15 A. No.

16 Q. Do you have an estimate as to about how long it was between
17 when the officer and -- the officer began speaking to Mr.
18 Bhatnagar and when you came back outside?

19 A. Not very long. Couple of minutes. Not that long.

20         Mr. Graber: Nothing further.

21         Ms. Garrido: Nothing further.

22         THE COURT: Is the witness excused?

23         Ms. Garrido: Yes.

24         THE COURT: Thank you, Mr. Ha. You may step down.
25 You're free to go.

1    THE WITNESS: Thank you very much.

2    Ms. Garrido: Defense calls Laurie Garrison.

3    THE CLERK: You do solemnly swear that the testimony
4  you shall give in the matter now pending before this Court,
5  shall be the truth, the whole truth, and nothing but the truth,
6  so help you God.

7    THE WITNESS: I do.

8

9             LAURIE GARRISON,
10 called as a witness by the defense, was duly sworn, and
11 testified as follows:

12   THE CLERK: Please be seated state and spell your first
13 and last name, for the record.

14   THE WITNESS: Laurie, L-a-u-r-i-e, Garrison,
15 G-a-r-r-i-s-o-n.

16   THE COURT: I see you're holding something which
17 appears to be a written statement. If you could please put it
18 down, face down.

19   THE WITNESS: Okay.

20

21                DIRECT EXAMINATION
22 By Ms. Garrido:
23 Q.    Good afternoon.
24 A.    Afternoon.
25 Q.    Are you employed?

```
 1  the People no notice about People versus Rodriguez. I had no
 2  opportunity to actually review the case. However, given the
 3  portion Miss Garrido read, it suggests that the purpose for the
 4  ruling was based -- was a stop based on race or a racial
 5  profiling stop, not simply any level of racial animus.
 6          I would note for the Court that the testimony from the
 7  defendant himself is that at the time of this incident he was
 8  facing away from the street speaking to an individual or walking
 9  into a building that would have required that he be facing away
10  from the street to walk into. The officer would have had no
11  means to observe the defendant's racial background from the
12  street as he was driving past at the speed limit and thus would
13  suggest that racial profiling would not and could not have been
14  the cause of the stop.
15          Submitted.
16          Ms. Garrido: Just briefly. Rodriguez does not have to
17  do with racial profiling. The issue was whether if an officer
18  fabricated the grounds for a stop, if there was subsequent
19  discovery, would warrant -- would the fabrication of the stop
20  still require suppression, and the court held that it did.
21          The court:   Submitted.
22          Ms. Garrido: Yes.
23          Mr. Graber: Yes.
24          THE COURT: 1538.5 motion is granted.
25          Do you have any other evidence?
```

1        Mr. Graber:  No, Your Honor.
2        THE COURT:  Case is dismissed.
3        Mr. Graber:  May I ask the court's reasoning for the
4 granting of the motion?
5        THE COURT:  I do not credit the officer's testimony.
6 It appears to me as most credible, that the officer was trolling
7 for drunk drivers across from the bar and picked on this
8 defendant because of his race.

```
STATE OF CALIFORNIA  )
                     )  ss.
CONTRA COSTA COUNTY  )
```

I, JUANITA GONZALEZ, do hereby certify;

That I am a Certified Shorthand Reporter of the State of California; that I was duly appointed shorthand reporter by the above-named Court in the foregoing entitled Court and cause;

That I fully, truly and correctly took down in shorthand writing all of the proceedings had and all of the testimony given in said Court and cause, at the hearing in said matter;

That I thereafter fully, truly and correctly transcribed the same into typewriting, that the foregoing is a full, true, and correct transcript of my shorthand notes taken at said hearing and at the time and place therein named.

IN WITNESS WHEREOF, I have hereunto set my hand this 27th day of December, 2006

*[signature: Juanita Gonzalez]*

JUANITA GONZALEZ

CSR NO. 3003