JAMES V. FITZGERALD, III (State Bar No. 55632)
NOAH G. BLECHMAN (State Bar No. 197167)
McNAMARA, DODGE, NEY, BEATTY, SLATTERY,
PFALZER, BORGES & BROTHERS LLP
1211 Newell Avenue
Post Office Box 5288
Walnut Creek, CA 94596
Telephone: (925) 939-5330
Facsimile:  (925) 939-0203

Attorneys for Defendant
JASON INGRASSIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABHINAV BHATNAGAR,<br><br>Plaintiff,<br><br>vs.<br><br>JASON INGRASSIA, individually and in his official capacity; COUNTY OF CONTRA COSTA; and CITY OF SAN RAMON,<br><br>Defendants. | Case No. C07-02669 CRB<br><br>**DEFENDANT INGRASSIA'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER**<br><br>Date:   December 7, 2007<br>Time:  10:00 a.m.<br>Judge: Hon. Charles R. Breyer |

Defendant JASON INGRASSIA ("Ingrassia") hereby submits his Opposition to Plaintiff ABHINAV BHATNAGAR's ("Plaintiff") motion for protective order to exclude Ingrassia from personally attending the deposition of Mr. RICHARD HA ("Ha"), a third-party witness in this case. Plaintiff's motion should be denied in its entirety because Plaintiff has not demonstrated good cause for the Court to take the extraordinary step of issuing a protective order under *Federal Rules of Civil Procedure* ("FRCP") 26 (c) (5) to bar a named party from attending the deposition of a third-party witness. Neither Plaintiff nor Ha would suffer any harm or undue prejudice by Ingrassia's presence at Ha's deposition. Plaintiff's hollow allegations of Ingrassia's harassing and intimidating conduct, which Ingrassia expressly denies, <u>are based on nothing more than unfounded subjective perceptions, paranoia and unsubstantiated conclusions.</u> Such groundless conclusions, directly contradicted by defense evidence submitted herein, does not suffice to

DEFENDANT INGRASSIA'S OPPOSITION TO
PLAINTIFF'S MOTION FOR A PROTECTIVE
ORDER – C07-02669 CRB

exclude Ingrassia from due process and personally attending the deposition of key witness Ha. As such, Plaintiff's motion should be denied in its entirety.

Ingrassia concedes that some of the arguments below appear somewhat duplicative. However, Plaintiff's motion included such redundant arguments so Ingrassia felt it was proper and appropriate to respond to each such argument.

Note that Ingrassia is also concurrently filing a motion to strike some proffered evidence submitted by the Plaintiff, including the affidavit of Mr. Ha, portions of the affidavit of Plaintiff's counsel Ms. Huang, the affidavit of Mr. Ahearn and the affidavit of Ms. Garrido. Though Plaintiff uses the terms "declaration" and "affidavit" in such exhibits, we will simply refer to such as affidavits herein to refer to Plaintiff's proferred evidence. As the Court will see in the motion to strike, Plaintiff's counsel Ms. Huang, Mr. Ahearn and Ms. Garrido were all subpoenaed for deposition as they identified themselves as percipient witnesses in affidavits in support of Plaintiff's motion. None of these three persons appeared for their deposition so this is one basis for Ingrassia's motion to strike their affidavits.

## I.   SUMMARY OF ARGUMENTS

1. Plaintiff has not met his burden of proving good cause for a protective order to issue to exclude Ingrassia from personally attending witness Ha's deposition. Plaintiff's and Ha's allegations of Ingrassia's harassing and intimidating conduct are wholly unfounded and unsupported.

2. Neither Plaintiff nor Ha would be harmed or unduly prejudiced by Ingrassia's presence at Ha's deposition;

3. Ingrassia's substantial and essential constitutional right and interest to attend Ha's deposition greatly outweighs Plaintiff's unfounded and unsupported fear of intimidation to witness Ha in excluding Ingrassia from said deposition.

## II.   STATEMENT OF FACTS

This litigation stems from two traffic arrests of the Plaintiff by Officer Ingrassia. One arrest occurred on May 20, 2006, and the other on September 29, 2006. On May 20, 2006, Ingrassia, who was working in a marked patrol vehicle, observed Plaintiff make an illegal u-turn

and followed Plaintiff into a Valero gas station in San Ramon to make a traffic stop. (See **Exh. 1**, Declaration of Ingrassia, ¶¶ 1-2).[1] During the traffic stop, Ingrassia saw indications that Plaintiff was under the influence of alcohol. After giving Plaintiff a sobriety test, Ingrassia arrested Plaintiff for driving under the influence of alcohol in violation of California Vehicle Code § 23152(a). As a consequence of the arrest, Plaintiff's car was towed, Plaintiff was taken into custody and then taken to the Martinez Detention Facility. (Exh. 1 ¶ 3).

On September 29, 2006, Ingrassia was again working in a marked patrol vehicle for the Sheriff's Office and observed Plaintiff make another illegal u-turn in San Ramon. Defendnat then pulled Plaintiff's vehicle over and issued Plaintiff a citation for the moving violation. (Exh. 1 ¶ 4).

As a result of a citizen complaint by Plaintiff against Ingrassia regarding alleged harassment, the Sheriff's Department conducted an investigation of the citizen complaint and determined, after its investigation, that <u>the complaint was "unfounded" and that the acts complained of "did not occur" as alleged.</u> (See Document 28-3 filed with Plaintiff's motion; **Exh. 2**, Declaration of Lt. Navarro ¶¶ 1, 3). Also, despite Plaintiff's affidavit to the contrary, Lt. Navarro received a telephone call from Plaintiff on September 14, 2006, after Plaintiff had attended his first DMV hearing and allegedly received the threatening phone calls, purportedly from Ingrassia, in which Plaintiff admitted that "everything was all right" and that Plaintiff did not believe that Ingrassia had been calling or harassing him. (Exh. 2 ¶ 2).

Ingrassia expressly denies any and all allegations about threatening, harassing, intimidating and retaliatory conduct towards the Plaintiff or others, including Mr. Ha, concerning Plaintiff's arrests and/or subsequent proceedings. (Exh. 1 ¶¶ 9-10). Though Ha declared in his affidavit that Ingrassia came to his gas station on May 22nd and 23rd of 2007 and gave him threatening looks (Ha Affidavit ¶¶ 17-18), it was **impossible** for Ingrassia to have been at Ha's gas station on those dates. On those two days, Ingrassia was attending full time and overnight firearm instructor training in Sloughhouse and Jackson, California, which is more than 100 miles

---

[1] All exhibits referenced herein, unless submitted by Plaintiff, are attached to the Declaration of James V. Fitzgerald, III, filed herein.

DEFENDANT INGRASSIA'S OPPOSITION TO   3
PLAINTIFF'S MOTION FOR A PROTECTIVE
ORDER – C07-02669 CRB

away from San Ramon. (Exh. 1 ¶¶ 5-6; **Exh. 3**, Declaration of Frank Lawrence ¶¶ 1-3; **Exh. 4**, Declaration of Rene Kenny ¶¶ 1-7). This training was from May 13th to 18th and May 20th to 25th of 2007, which required Ingrassia to stay overnight in Jackson, California, which is next to Sloughhouse. (Exh. 1 ¶¶ 5-6; Exh. 3 ¶¶ 1-3). There are also documents attached to these declarations which corroborate the information included in the declarations of defense witnesses and directly contradict Plaintiff and Ha's assertions. Ultimately, Ha's contentions that Ingrassia harassed him on May 22nd and May 23rd are unfounded and directly contradicted by the submitted defense evidence as Ingrassia was out of the area.

In addition, despite Ha's affidavit that Ingrassia was one of the officers that came to his house on May 29, 2007, in relation to a "911" call, Ingrassia was not involved in any way in that call for service and did not even know where Ha lived. (Exh. 1 ¶¶ 7-8). As a matter of fact, Officers Abraham Medina and Cary Goldberg of the Contra Costa County Sheriff's Department were dispatched to Ha's house on May 29, 2007, not Ingrassia. (See **Exh. 5**, Declaration of Erinn Evans ¶¶ 1-5; **Exh. 6**, Declaration of Travis Hilderbrand ¶¶ 1-8). The call for service at the Ha residence lasted only 17 minutes. (Exh. 6 ¶¶ 5-8). On May 29th, Ingrassia was assigned to the graveyard shift out of the Bay Station located in Richmond, California, which is over 20 miles away from San Ramon. (Exh. 4 ¶¶ 1-7; Exh. 1 ¶ 8). Once again, this evidence totally and directly contradicts Ha's affidavit, seriously undermining the credibility, if any, of Ha.

In essence, Plaintiff does not provide any probative and/or credible facts or proof of harassing, intimidating or retaliatory conduct on behalf of Ingrassia to justify the Court taking the extraordinary step of issuing a protective order under FRCP 26 (c)(5) to exclude Ingrassia from attending witness Ha's deposition. Plaintiff has not met his burden so this motion should be denied in total.

///

DEFENDANT INGRASSIA'S OPPOSITION TO
PLAINTIFF'S MOTION FOR A PROTECTIVE
ORDER – C07-02669 CRB

4

### III. LEGAL ANALYSIS

**A. No Good Cause Has Been Shown to Exclude Ingrassia From Attending Ha's Deposition Because Plaintiff's Allegations Of Ingrassia's Harassing and Intimidating Conduct Are Wholly Unfounded and Neither Plaintiff Nor Ha Would Be Harmed or Unduly Prejudiced By Ingrassia's Presence At Ha's Deposition**

No good cause exists in this matter to exclude Ingrassia from attending Ha's deposition pursuant to a protective order under FRCP 26 (c)(5). Rule 26 (c)(5) provides in part:

> "Upon motion by a party . . . and <u>for good cause shown</u>, the court . . <u>may</u> make any order which justice requires <u>to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense</u>, including one or more of the following:
>
> (5) that discovery be conducted with no one present except persons designated by the court." (emphasis added.)

A party's right to attend a deposition has a **constitutional dimension** and is therefore entitled to **special protection**. Hines v. Wilkinson, 163 F.R.D. 262, 266 (S.D. Ohio 1995.) (emphasis added). While Rule 26 (c)(5) can justify even the exclusion of a party from a deposition, such an **exclusion should be ordered under rare and extraordinary circumstances only**. Galella v. Onassis, 487 F.2d 986, 997 (2nd Cir. 1973); In re Shell Oil Refinery v. Shell Oil Company, 136 F.R.D. 615, 617 (E.D. Louisiana 1991.) (emphasis added). In Hines, the court denied plaintiff's exclusion from attending certain depositions because the moving party had failed to demonstrate <u>exceptional circumstances</u> for a Rule 26 protective order.[2] (emphasis added). The court further stated that "factors that might justify exclusion of non-parties from a deposition might not be sufficient to exclude a party because of the <u>parties' more substantial interest in being present</u>." Hines, at 266-267.

**The burden is upon the party seeking the order to show good cause by demonstrating harm or prejudice**. Rivera v. NIBCO, Inc., 364 F.3d 1057, 1063 (9th Cir. 2004); Phillips v. General Motors Corp., 307 F.3d 1206, 1210-1211 (9th Cir. 2002). (emphasis added). **"Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26 (c) test."** Phillips, Id. 1211, citing Beckman Indus., Inc. v.

---

[2] In Hines, Defendants failed to show that the plaintiff, a prisoner, posed a security risk or had been disruptive or antagonistic during the course of the lawsuit.

DEFENDANT INGRASSIA'S OPPOSITION TO PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER – C07-02669 CRB

5

International Ins. Co., 966 F.2d 470, 476 (9th Cir. 1992). (See also Bell v. Bd. of Educ., 225 F.R.D. 186, 195-196 (S.D. West Virginia 2004), holding that the "good cause" standard contemplates a particular and specific demonstration of fact as distinguished from conclusory statements. Issuance of a protective order without a particular and specific demonstration of fact constitutes an abuse of discretion.) (emphasis added).

Plaintiff has not met his burden of proving "good cause" for a protective order to issue under FRCP 26 (c) (5). Plaintiff has failed to prove the exceptional circumstances needed per a showing of specific, substantiated facts which would entitle him to such a protective order. Despite Plaintiff's broad and hollow allegations claiming Ingrassia's history of harassment and retaliation, Plaintiff did not provide any such probative facts based on "particularized and well-documented" facts. Instead, Plaintiff's contentions are merely based on hollow allegations, conjecture, unfounded subjective perceptions and unsubstantiated conclusions, all of which do not suffice for the Court to take the extraordinary step of issuing a protective order to prevent a party from attending a witness deposition. Further, Plainiff's purported evidence is directly contradicted by credible and probative evidence submitted by Ingrassia.

Ha's alleged fear to testify in front of Ingrassia is unfounded and not based on any legitimate or rational basis. Ingrassia expressly denies any harassing, intimidating or retaliatory conduct towards Ha or any other person involved in this matter. (Exh. 1 ¶¶ 9-10). Plaintiff has not provided any probative and/or credible proof to support his hollow allegations in support of this motion. Specifically, the numerous affidavits submitted by Plaintiff do not prove any harassing, intimidating or retaliatory conduct by Ingrassia upon which Plaintiff or Ha would be harmed or unduly prejudiced via Ingrassia's attendance at Ha's deposition. Overall, as Ingrassia has a substantial interest in attending depositions in this case and Plaintiff has not set forth credible evidence to support his motion, Plaintiff's motion should be summarily denied.

      1.    Ha's Affidavit Should Be Stricken In It's Entirety Because Plaintiff Failed To Lay A Proper Foundation

Initially, Ingrassia requests that this Court strikes Ha's affidavit in its entirety pursuant to N.D.L.R. 7-5. Local Rule 7-5 requires that an affidavit conforms to the requirements of FRCP

DEFENDANT INGRASSIA'S OPPOSITION TO  6
PLAINTIFF'S MOTION FOR A PROTECTIVE
ORDER – C07-02669 CRB

56(e) which states that affidavits shall be made on personal knowledge and shall set forth such facts as would be admissible in evidence. An affidavit or declaration not in compliance with this rule <u>may be stricken in whole or in part</u>.

Ha's affidavit does not conform to these requirements as Plaintiff failed to lay a proper foundation for Ha's affidavit. The affidavit was submitted and purportedly signed personally by Ha on November 7, 2007. The affidavit is written in English. However, in his affidavit, Ha, stated that he needed the assistance of a <u>Vietnamese interpreter</u> to review his prior testimony (Ha Affidavit ¶¶ 10, 15). Ha also requested the attendance of a Vietnamese interpreter for his upcoming deposition. (Declaration of James V. Fitzgerald, III, Esq., ¶ 2, filed herewith). Based on Ha's apparent lack of proficiency in the English language, the affidavit was clearly not written by him nor did he fill in the date of the signature, which is written in clear English. Nonetheless, the affidavit does not indicate who wrote it, if it was translated from English into Vietnamese or vice versa and if Ha fully understood the content of his affidavit before purportedly signing it. Plaintiff has failed to lay a proper foundation and/or authentication for Ha's affidavit to prove that Ha read and understood the contents of this English written affidavit prior to purportedly signing the affidavit. Pursuant to FRE 601-602, and 901, Plaintiff has failed to show sufficient personal knowledge by Ha to provide the foundation for the admission of the Ha affidavit. As such, Ingrassia moves to strike Ha's entire affidavit.

Further, any improper conclusions and arguments in Ha's affidavit should also be stricken pursuant to Local Rule 7-5 which expressly states that the affidavit "must avoid conclusions and argument." Examples of such conclusions and arguments in Ha's affidavit include Paragraphs 5, 6, 9, 14, 28, 29, and 31, as well as all the Paragraphs where Ha states that he saw officers that resembled Ingrassia (Paragraphs 17, 18, 20-24). Overall, Ha's affidavit lacks proper foundation, authenticity, and contains numerous improper conclusions and arguments, all of which render it subject to Ingrassia's motion to strike. Should the Court strike Ha's affidavit, as Ingrassia requests, Plaintiff's entire motion would then lack any foundation for issuance of a protective order and the motion should, therefore, be denied on that basis without further evaluation needed.

DEFENDANT INGRASSIA'S OPPOSITION TO PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER – C07-02669 CRB

7

2. <u>Plaintiff Has Not Shown, Let Alone Proven, Any Harassing Or Retaliatory Conduct of The Ingrassia Towards Deponent Ha And An Exclusion From Ha's Deposition Is Not Justified</u>

Even if the Court considers Ha's affidavit in support of Plaintiff's motion for a protective order, Ha's affidavit does not prove any harassing, intimidating or retaliatory conduct by Ingrassia. Ha's broad contention that he "fears continued harassment and retaliation by the police" (Ha Affidavit ¶ 6) lacks any foundation and legitimate reason. Rather, it appears that Ha's fear is based on nothing but his unfounded, subjective perceptions, paranoia and unsubstantiated personal conclusions.

For example, Ha states that he "felt" threatened and intimidated by an increased presence of the police at the gas station after Plaintiff's first arrest and that he noticed one particular officer, who "looked very similar" to Ingrassia who gave him "threatening looks." (Ha Affidavit ¶ 7). As a result, Ha was afraid to testify "out of concern for my own safety." (<u>Id</u>.) He also declared that on May 22nd and May 23rd officers came to the gas station, asked him questions, gave him threatening looks, one of which "looked like Officer Ingracia." (¶¶ 17-18). Other than the conclusory statement of "threatening looks," there is no indication of any objectively harassing or threatening behavior. Further, Ingrassia has proven that he was in full time overnight training 100 miles away during these dates, directly contradicting Ha's assertions.

Ha also contends that one of the officers that came to his home for the "911" call on May 29, 2007, "resembled Officer Ingrassia." (¶¶ 20-21). This is also directly contradicted by Ingrassia's evidence. He further stated that from June to August "many" police officers came by the gas station "more often than normal" and "looked at him in an unfriendly manner." (¶ 24) Ha's employment at the gas station ended by the end of August 2007 though Ha states that he noticed an increased presence of police patrol cars on his residential street in recent weeks. (¶¶ 26-27)

None of the vaguely described police conduct rises to the level of any harassment or retaliation towards Ha, nor is there any such connection to Ingrassia. The fact of the matter is that Ingrassia was far out of the county on May 22nd and 23rd in overnight training and was working in another City on May 29th, the date of the alleged "911" call. Two other officers went to Ha's

DEFENDANT INGRASSIA'S OPPOSITION TO
PLAINTIFF'S MOTION FOR A PROTECTIVE
ORDER – C07-02669 CRB

8

home for the "911" call and there is no connection whatsoever to Ingrassia in relation to that call for service. Ha's mere perception (and apparent paranoia) of an increased presence of the police and his subject belief that officers looked "unfriendly" and "threatening" is insufficient to deny Ingrassia of his constitutional special protection of being able to attend the deposition of an important third-party witness. Ingrassia expressly denies any harassing or retaliatory conduct towards Ha or others. Ha does not prove one single incident where a police officer approached Ha and actually objectively harassed and/or threatened him and certainly provides no evidence of any such behavior by Ingrassia. Ingrassia could not have physically participated in any of the allegations pertaining to May 22nd, 23rd or 29th of 2007 as Ingrassia was either out of the area or was preparing for his work shift in Richmond.

Ultimately, Ha has not and cannot state any facts which could rationally explain his unsubstantiated concern for his own safety in this case. Instead, Plaintiff's counsel is attempting to gain a tactical advantage by bringing this subject motion based on Ha's misguided perceptions and irrational paranoias.

The unexplained discrepancies strongly undermine Ha' credibility and ability to properly identify Ingrassia. While Ha states that he has seen Ingrassia at his gas station on prior occasions, he later admits that he looked at a photograph to identify Ingrassia. (Ha Affidavit ¶ 21) The photograph was shown to him by Plaintiff's attorney Jenny Huang, who came to his house after the "911" incident. (See Huang Affidavit, ¶ 26) This identification issue raises two concerns. First, Ingrassia's identification by Plaintiff's counsel showing Ha one photograph of only Ingrassia does not comport with proper and objective identification procedures and is obviously leading and suggestive, as Plaintiff's counsel should be aware. Second, Ingrassia's submitted evidence herein puts Ha's prior identifications of the police officer at the gas station who "looked like" or "resembled" Ingrassia in serious doubt. For Ingrassia to properly cross-examine Ha on these "sightings," **Ingrassia needs to be present at Ha's deposition so defense counsel can ask Ha pointed questions about identification issues and concurrently ask Ha if Ingrassia was the officer who he saw at the various alleged "sightings."** Having Ingrassia present, as opposed to only showing Ha a photograph of Ingrassia, will be the only sufficient way for

DEFENDANT INGRASSIA'S OPPOSITION TO
PLAINTIFF'S MOTION FOR A PROTECTIVE
ORDER – C07-02669 CRB

9

Ingrassia and his counsel to fully and substantially investigate these alleged "sighting" issues. Overall, Ha's speculative language in his affidavit that the officers "looked like" or "resembled" Ingrassia is wholly insufficient to support Plaintiff's allegations of Ingrassia's harassing and intimidating conduct towards Ha and is directly contradicted by Ingrassia's proffered evidence. As Ha's credibility is called into serious question, the alleged merits of and motive behind Plaintiff's motion are also seriously questioned.

Ha further states that Ingrassia was not present during his prior testimonies on October 11th and November 27th of 2006. Yet, although Ha has no prior experience in testifying in Ingrassia's presence, he states that he "does not think he would have been willing to testify" in Ingrassia's presence. (Ha Affidavit ¶¶ 8-9,13-14.) Ha further states that "because of his past encounters" with Ingrassia he is "concerned that he will feel intimidated" by Ingrassia's presence during his deposition. (¶ 31) Those statements, again, are wholly speculative, unfounded and lack any legitimate rational reason to fear that Ingrassia's mere presence at his deposition will have an intimidating effect in Ha's ability to testify. In sum, Plaintiff and Ha have not set forth any credible fact of actual harassing or intimidating conduct on behalf of Ingrassia or any other police officer for that matter. Ha has never testified in the presence of Ingrassia and has simply no legitimate reason to be afraid of Ingrassia. Without credible evidence to support this motion, the Court should not take the extraordinary step, reserved for rare cases, to preclude Ingrassia from attending witness Ha's deposition.

3. **Ha's Unfounded Subjective Perceptions And Unsubstantiated Conclusions That Ingrassia Has and Will Harass Him Does Not Suffice For A Protective Order**

Ha's mere unfounded subjective perception and unsubstantiated conclusion that Ingrassia will continue to harass Ha are not sufficient to exclude Ingrassia from attending Ha's deposition. (See Phillips and Bell.) If a party could exclude another party from attending a deposition simply by alleging that the deponent may refuse to testify because he <u>feels</u> intimidated, without any legitimate or rational reason to feel that way, such an unreasonable position would severely and unduly undermine and chill the parties' constitutional right to be present at a deposition. (See Hines, at 266; Galella, at 997; In re Shell Oil, at 617.) This is true especially in this case where it

DEFENDANT INGRASSIA'S OPPOSITION TO
PLAINTIFF'S MOTION FOR A PROTECTIVE
ORDER – C07-02669 CRB

10

is essential for Ingrassia, who is the only Ingrassia with personal knowledge of the arrests of Plaintiff, to attend the deposition of a key witness. Ingrassia is also entitled to assist his counsel to question Ha regarding his questionable "sightings" of Ingrassia by defense counsel personally being able to ask identification questions with Ingrassia present for comparison purposes.

Contrary to Plaintiff's notion, the District Court in In re Shell Oil did not grant a protective order simply because a witness was intimidated by a party's mere presence. Rather, the Court held that, "regardless" of whether the Shell Oil representative could harm the employee's job evaluation or whether the employee felt intimidated, Shell would have an unfair advantage over the plaintiffs because it could designate multiple corporate representatives who were also fact witnesses and, thus, "would in effect avoid the sequestration of witnesses rule" under FRE 615. Id., at 617-618. The District Court's reasoning was therefore not based on the potential intimidating presence of the Shell representative, but an unfair advantage for Shell by avoiding the sequestration of witnesses rule. Further, the facts underlying In re Shell Oil are distinguishable from the present case and do not warrant a protective order against Ingrassia Ingrassia's presence at Ha's deposition. Unlike In re Shell Oil, Ingrassia has a right to be present at Ha's deposition as he is a named party, both individually and as a police officer in his official capacity. (See Hines, at 266). Further, Ingrassia is the only individual with personal knowledge about the facts of the arrests at issue in this case. It is essential for Ingrassia to personally attend the deposition not only to assist his counsel in asking questions, but also for his defense counsel to be able to ask identification questions of Ha by comparing directly to the present Ingrassia. Due to Plaintiff's numerous factual allegations, to which only Ingrassia can respond, Ingrassia's presence is particularly necessary in this case and cannot simply be replaced by other means outside of personal presence.

Also, unlike in In re Shell Oil, deponent Ha and Ingrassia do not have the same employer and Ingrassia has no "supervisory" authority over Ha. Ha's perceived intimidation has no legitimate or rational support.

Though In re Shell Oil is distinguishable on its facts, Plaintiff here, like the plaintiff in that case, is trying to take unfair advantage of this process by seeking to exclude Ingrassia from a

DEFENDANT INGRASSIA'S OPPOSITION TO
PLAINTIFF'S MOTION FOR A PROTECTIVE
ORDER – C07-02669 CRB

11

key witness deposition. Such a tactic should be precluded.

Plaintiff's other case law citations are also not pertinent to the present case and cannot support Plaintiff's motion to exclude Ingrassia from attending Ha's deposition. In Galella, for example, the trial court excluded plaintiff, a "paparazzo," from attending Jacqueline Onassis' deposition because plaintiff had already been charged with a violation of a restraining order due to plaintiff's intrusive and dangerous conduct towards Onassis and her children. The court saw that as a reflection of an "irrepressible intent to continue the harassment of defendant" as well as plaintiff's "complete disregard for judicial process." Id., at 997. Those circumstances are clearly distinguishable from the present case where Ingrassia's alleged harassing behavior is not based on actual conduct, but mere subjective perceptions, paranoia and unsubstantiated conclusions.

Similarly, in Beacon, the court excluded certain persons from attending depositions in a Title VIII housing discrimination action to "permit the greatest opportunity for an evaluation of the testimony." The specific facts of that case are not disclosed in the court's order. Beacon v. R.M. Jones Apartment Rentals, 79 F.R.D. 141-142 (N.D. Ohio 1978.) The Court's reasoning in Beacon does not apply in the present case. Ha is alleged to be a key witness in Plaintiff's case and Plaintiff's allegations are directly pointed at Ingrassia's conduct. Only Ingrassia can properly respond to those allegation and needs to be present to assist in his defense in this action, as delineated above. As such, Ingrassia's only adequate opportunity to evaluate Ha's testimony and credibility is his personal attendance at Ha's deposition.

In Hines, the court denied the exclusion of a prisoner from attending a deposition because no extraordinary circumstances had been shown to prove harm or undue prejudice. Id. at 267. Finally, the two 9th Circuit cases cited by Plaintiff, Rivera and Phillips, do not address a parties' exclusion from attending a deposition. In sum, an exclusion of Ingrassia at Ha's deposition, an extraordinary step to be taken in only rare situations, based on Ha's incredible statements, is not justified on this record under FRCP 26 (c)(5).

4. **Plaintiff Has Not Proven Any Harassing Or Retaliatory Conduct of Ingrassia Towards Plaintiff Or Others Which Could Justify An Exclusion Of Ingrassia From Ha's Deposition**

No other credible evidence has been presented to warrant the exclusion of Ingrassia at

DEFENDANT INGRASSIA'S OPPOSITION TO  12
PLAINTIFF'S MOTION FOR A PROTECTIVE
ORDER – C07-02669 CRB

Ha's deposition. First, the affidavit submitted by Timothy Ahearn does not support any intimidation by Ingrassia. While Plaintiff appears to cite to the Ahearn affidavit regarding an "intimidating stare" in the Martinez Detention Facility (Plaintiff's MP&A, pg. 6:9-16), Ahearn's one-page signed affidavit does not include such a statement.[3] As stated in Footnote 4 below, Mr. Ahearn's affidavits should be disregarded in total as they contradict each other and the second one was filed too late.

As far as Diana Garrido's affidavit is concerned, it merely reflects Ms. Garrido's subjective perception of a "hateful stare" when Ingrassia walked past her in the Walnut Creek courthouse. (Garrido Decl. ¶ 8). This affidavit does not contain any facts supporting any harassing or retaliatory conduct towards Ms. Garrido, conduct which Ingrassia expressly denies. Moreover, Ms. Garrido's unfounded subjective perception of her encounter with the Ingrassia has no bearing on Ha's scheduled deposition and is irrelevant for Plaintiff's motion. Even if Plaintiff can prove this fact, which Ingrassia seriously doubts, this has nothing whatsoever to do with Mr. Ha's deposition. Even if such can be proven, a "stare" cannot be said to be harassment or to rise to the level to preclude Ingrassia from attending Ha's deposition, an extraordinary step to be used in only rare circumstances. <u>Gallella</u>, at 997.

The same is true for Plaintiff's lengthy description of alleged harassing and retaliatory conduct towards him. It is irrelevant in deciding the issue of Ingrassia's presence at Ha's deposition as to what alleged behavior Plaintiff subjectively contends related to Ingrassia. <u>Plaintiff is obviously biased and stands a tactical advantage if Ingrassia is precluded from personally attending Ha's deposition.</u> Such allegations are further unfounded and based merely on Plaintiff's subjective perception of events.

The internal affairs investigation of Plaintiff's complaints about misconduct by Ingrassia concluded that the acts "did not occur as alleged" and were "unfounded." (See Document 28-3

---

[3] On November 26th, only two days prior to the shortened deadline to file this opposition, we received a two page signed affidavit of Mr. Ahearn that included additional facts and assertions. The fact that there are two different signed affidavits of Mr. Ahearn make his assertions inherently non-believable and incredible. Mr. Ahearn's belated affidavit, filed November 26th, should be disregarded as untimely as a matter of course and inherently unreliable. Also, as stated in the concurrent motion to strike, Mr. Ahearn failed to appear for his properly subpoenaed deposition per his assertions in his affidavit, yet another reason to ignore his affidavit. Note that Ms. Garrido also failed to appear for her subpoenaed deposition, which is a basis for the exclusion of her affidavit.

DEFENDANT INGRASSIA'S OPPOSITION TO    13
PLAINTIFF'S MOTION FOR A PROTECTIVE
ORDER – C07-02669 CRB

filed with Plaintiff's motion; Exh. 2 ¶ 3). Plaintiff's allegations of harassing and retaliatory conduct concerning his two arrests by Ingrassia are strongly disputed by Ingrassia. Those allegations are the subject of this litigation and the very reason why Ingrassia's presence at Ha's deposition is crucial for the preparation of his defense in his case and to adequately cross-examine Ha.

Further, Plaintiff's **feeling** of harassment on behalf of Ingrassia throughout the DMV and criminal proceedings is based on nothing but Plaintiff's own unfounded subjective perceptions. For example, Plaintiff's perception that Ingrassia's friendly greeting at the DMV hearing "Hey, good evening, how are you doing?" (See Plaintiff's Affidavit ¶ 9) was harassing has absolutely no legitimate basis. Nothing in that statement indicates any rational basis for harassing or threatening conduct towards the Plaintiff. Plaintiff then complains that Ingrassia "sat near" him, "stared" at him and "made a bizarre gesture." (¶ 10) There is no elaboration as to what bizarre gesture he was referring to or how sitting near him or staring at him can be objectively considered harassment.

Likewise, Plaintiff further complains that Ingrassia and other police officers "looked" at him and that Ingrassia looked "very angry" as he reviewed some witness statements (¶¶ 11-13) does not prove any harassing, threatening or retaliatory conduct towards the Plaintiff. The same is true for Plaintiff's contention that Ingrassia "smiled," "smirked" and "laughed" at him during a traffic court proceeding. (Plaintiff's Affidavit ¶ 28; see also Huang Affidavit ¶ 15) Again, Ingrassia expressly denies any harassing, threatening or retaliatory conduct towards the Plaintiff at any time and Plaintiff's allegations do not amount to such behavior.

Ingrassia specifically denies, and strongly rejects, any alleged involvement in the threatening phone calls Plaintiff received. (Plaintiff affidavit ¶¶ 14-19)  Other than Plaintiff's unsubstantiated "belief" that Ingrassia is responsible for the phone calls, Plaintiff has <u>absolutely no proof</u> who was behind those phone calls. In fact, Plaintiff himself told Lt. Navarro during a telephone call on September 14, 2006, that Plaintiff did not believe that Ingrassia had been calling or harassing him. (Exh. 2 ¶ 2). Thus, Plaintiff's allegations are wholly unfounded and irrelevant for Plaintiff's subject motion.

DEFENDANT INGRASSIA'S OPPOSITION TO  14
PLAINTIFF'S MOTION FOR A PROTECTIVE
ORDER – C07-02669 CRB

Further, Plaintiff's "belief" that Ingrassia is responsible for the repeated harassment and retaliation of Ha (Plaintiff's Affidavit ¶ 45) is hearsay, lacks any personal knowledge and foundation and cannot constitute "good cause" for a protective order. Again, to the extent that Plaintiff's affidavit includes conclusions and arguments, such statements should be stricken pursuant to Local Rule 7-5. Such conclusions and arguments, which should be stricken, are included in Paragraphs 5-7, 8, 13, 19, 23-24, 32, 35, 41-45 of Plaintiff's affidavit.

<u>Most importantly, Plaintiff does not allege any acts of intimidation or interference on behalf of Ingrassia during Plaintiff's own deposition.</u> (Plaintiff Affidavit ¶¶ 37–41, see also Huang Affidavit ¶¶ 29-37) Plainiff's deposition was videotaped and any alleged misconduct on the part of Ingrassia could have been submitted to the Court, had it existed. Thus, Plaintiff's conclusion that he "believes" a protective order is necessary to prevent Ingrassia from "further interfering and intimidating" Ha (Plantiff's Affidavit ¶ 45) lacks any foundation whatsoever. Again, excluding Ingrassia from this essential deposition simply because the deponent may feel intimidated, without any legitimate or rational basis for such a feeling, would unduly undermine Ingrassia's constitutional right to be present at a key witness deposition.

<u>Plaintiff admits that he does not oppose Ingrassia attending any other depositions</u> which is a position that casts serious doubt on the alleged disruptive and/or harassing potential of Ingrassia. (Plaintiff's MP&A, pg. 7:18-19). This is yet another insight into the fact that Plainiff is attempting to preclude Ingrassia from attending Ha's deposition as a tactical litigation advantage in this matter. Such a tactic should not be condoned by the Court.

In sum, Plaintiff has not presented any credible facts of harassing or retaliatory conduct on behalf of Ingrassia to warrant the extraordinary step of preventing Ingrassia from attending a third-party witness deposition. As stated above, the unfounded subjective perceptions and unsubstantiated conclusions of intimidation do not suffice for an exclusion of Ingrassia from Ha's deposition. Therefore, Plaintiff has not demonstrated any "good cause" as to why Ingrassia's presence at Ha's deposition would cause any harm or undue prejudice to him or deponent Ha. As such, Plaintiff's motion for protective order under FRCP 26 (c) (5) should be denied in full.

B.   **Ingrassia's Substantial Right And Interest To Personally Attend Ha's Deposition Greatly Outweighs Plaintiff's Interest For A Protective Order**

Even if this Court would consider Ha's subjective perceptions of alleged intimidation, a protective order should be denied because Ingrassia's significant constitutional interest in attending Ha's deposition greatly outweighs Plaintiff's interest in excluding him from said deposition. If a court finds particularized harm will result, then it balances the interests to decide whether a protective order is necessary. Rivera, at 1063; Phillips, at 1211. Assuming the Court can find particularized harm here, which we vigorously doubt, it is Ingrassia that would be unduly prejudiced if a protective order is allowed.

Here, contrary to Plaintiff's downplayed notion, Ingrassia's interest in attending Ha's deposition is not "minimal." Rather, Ingrassia's personal attendance is essential for a fair and due process for Ingrassia who is the only Ingrassia with personal knowledge regarding the factual allegations made by Plaintiff and Plaintiff's alleged key witness, deponent Ha. Unlike in In re Shell Oil, Ingrassia cannot send another party with the same knowledge on his behalf. Id., at 617. For example, Lt. Navarro has no 'first-hand' personal knowledge and cannot properly replace Ingrassia. Further, Ha's deposition will likely be completed within a only a few hours so we are not talking about a lengthy process. Unlike the court's holding in In re Shell Oil, Ingrassia will not be able to review the transcript during an evening recess to follow up on some questions the next day as this deposition will take only a few hours. Id., at 618. Ingrassia should not be excluded from attending Ha's deposition on this record.

Further, Plaintiff's argument that Ingrassia will be represented by counsel who can consult with Ingrassia during breaks by phone does not suffice. Even though Ha has previously testified, the current subpoenaed deposition of Ha will likely include different and new lines of questions. It is essential to have Ingrassia personally present during the deposition to evaluate Ha's answers and to immediately respond to any questions or concerns that may arise during Ha's deposition. Ingrassia is entitled to personally participate in his own defense, a constitutionally protected special protection in civil cases. Hines, at 266.

Further, as Ha makes many allegations in his affidavit about seeing or being confronted by

DEFENDANT INGRASSIA'S OPPOSITION TO PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER – C07-02669 CRB

16

Ingrassia, defense counsel needs Ingrassia to personally appear for the deposition to be able to ask specific and pointed identification questions to Ha regarding such alleged "sightings." <u>In that vein, Ingrassia's personal attendance at deposition is **necessary, indispensable and cannot be substituted**</u>.

Like the District Court in <u>Phillips</u> found, "it would be, at a minimum, more convenient and efficient to have [Defendant] personally present during the questioning than to have counsel interrupt the deposition for occasional conferences with [Defendant,] during which counsel would be forced to summarize the testimony and seek guidance from [Defendant] as to additional areas of inquiry." The District Court further presumed that "such a procedure would increase the risk that relevant lines of questioning would not be pursued because of the qualitative difference between [Defendant's] ability to acquire and to process information through personal attendance at the deposition and his ability to respond to counsel's summary of that information." <u>Id.</u>, at 265

Plaintiff, on the other hand, does not face a "substantial risk of harm" if Ingrassia personally attends Ha's deposition. As stated above, Ha's fear of intimidation is based merely on his unfounded subjective perception and paranoia of events, not actual harassing or retaliatory conduct on behalf of Ingrassia. The unfounded nature of Ha's fear is exemplified in Plaintiff's deposition, which was attended by Ingrassia, without any alleged harassing or intimidating conduct. The Court should not allow Plaintiff to disguise this motion for a protective order to protect Mr. Ha when such an order would act simply as a tactical advantage to Plaintiff.

Ultimately, Ha has been properly subpoenaed by Ingrassia for deposition and if he does not show up for his deposition, he is subject to sanctions for contempt. Also, as Ha has testified previously in Court several times, testifying in a more relaxed office setting, even if Ingrassia is present, seems much less daunting and intrusive.

In sum, Ingrassia's essential constitutional and special right to attend the deposition of an alleged key third party witness in his case, coupled with Ingrassia's essential individual interest in personally attending the deposition of Ha for a fair process, greatly outweighs Plaintiff's and Ha's unfounded and unsupported "belief" of intimidation and/or harassment. No credible information has been presented to warrant the Court to issue such a protective order, an extraordinary step by

DEFENDANT INGRASSIA'S OPPOSITION TO    17
PLAINTIFF'S MOTION FOR A PROTECTIVE
ORDER – C07-02669 CRB

the Court to be taken in only rare circumstances not present here.  As such, Plaintiff's motion for protective order should be denied in total.

### IV.   CONCLUSION

Plaintiff's motion should be denied in its entirety because no good cause exists for such a protective order under FRCP 26 (c)(5).  Neither Plaintiff nor Ha would suffer any harm or undue prejudice by Ingrassia's presence at Ha's deposition.  Plaintiff's hollow allegations of Ingrassia's harassing and intimidating conduct are based on nothing more than unfounded subjective perceptions and unsubstantiated conclusions, which do not suffice to exclude Ingrassia from personally attending the deposition of Ha.  Even if this Court should consider Ha's subjective perception of intimidation, a protective order should be denied because Ingrassia would be unduly prejudiced and his significant interest in attending Ha's deposition greatly outweighs Plaintiff's limited and unsupported interest in excluding him from said deposition.  Plaintiff's motion for a protective order should be summarily denied in its entirety.

Dated: November 28, 2007

McNAMARA, DODGE, NEY, BEATTY, SLATTERY,
PFALZER, BORGES & BROTHERS LLP

By: _____
James V. Fitzgerald, III / Noah G. Blechman
Attorneys for Defendant
JASON INGRASSIA