JUSTICE FIRST, LLP
Jenny C. Huang, SBN 223596
Michael Solis, SBN 252912
2831 Telegraph Avenue
Oakland, CA 94609
Telephone: (510) 628-0695
Fax: (510) 272-0711
E-mail: jhuang@justicefirstllp.com
E-mail: msolis@justicefirstllp.com

JIVAKA CANDAPPA, SBN 225919
5111 Telegraph Avenue, #215
Oakland, CA 94609
Telephone: (510) 654-4129
Fax: (510) 594-9610
E-mail: jcandappa@sbcglobal.net

Attorneys for Plaintiff Abhinav Bhatnagar

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABHINAV BHATNAGAR,<br><br>        Plaintiff,<br><br>  vs.<br><br>JASON INGRASSIA, individually and in his official capacity; COUNTY OF CONTRA COSTA; and CITY OF SAN RAMON.<br><br>        Defendants. | Case No.: Case No. CV07-02669 (CRB)<br><br>**NOTICE OF PLAINTIFF'S MOTION *IN LIMINE***<br><br>Date: April 25, 2007<br>Time: 10:00am<br>Honorable Charles R. Breyer |

TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

      PLEASE TAKE NOTICE that on April 25, 2008, at 10:00 a.m., in the Courtroom of the Honorable Charles R. Breyer, Federal District Judge of the Northern District of California, Courtroom 8, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff Abhinav Bhatnagar will move the Court for an *in limine* ruling, seeking to admit evidence of the

1  following: (1) Contra Costa County Superior Court Judge Charles Treat's decision on November
2  27, 2006, in *People v. Bhatnagar*, Case No. 127484-4, granting Mr. Bhatnagar's motion to
3  suppress and dismissing his criminal charges for driving under the influence of alcohol; (2)
4  Contra Costa County Commissioner Joel Golub's decision on March 14, 2007 in *People v.*
5  *Abhinav Bhatnagar*, Case No. 968674-2, finding Mr. Bhatnagar not guilty of the traffic citation
6  issued by Defendant Ingrassia on September 29, 2006; (3) the decision of Department of Motor
7  Vehicles ("DMV") Hearing Officer J. Beireis-Molnar dated March 30, 2007, setting aside the
8  suspension of Mr. Bhatnagar's driver's license; (4) the decision of Contra Costa County Superior
9  Court Judge William Kolin on August 8, 2007 in *People v. Raymond Eli*, Case No. 128472-8,
10 granting Mr. Eli's motion to suppress and dismissing the criminal charges against Mr. Eli, which
11 resulted from the arrest by Defendant Ingrassia; (5) the decision of Contra Costa County
12 Superior Court Judge Nancy Stark on August 8, 2007 in *People v. Richard Smith*, Case No. 5-
13 070257-1, granting Mr. Smith's motion to suppress and dismissing the criminal charges against
14 Mr. Smith, which resulted from the arrest by Defendant Ingrassia; (6) the DMV's Notice of
15 Failure to File Criminal Charges, signed by Deputy District Attorney Douglas Foley on January
16 5, 2007 under penalty of perjury, and to order any further relief as this court may deem just and
17 proper.
18
19        This motion is based upon the accompanying memorandum of points of authorities, the
20 affidavit of Abhinav Bhatnagar, the affidavit of Plaintiff's counsel, Jenny Huang, and all exhibits
21 attached thereto.
22 Dated: March 14, 2008
           Oakland, California
23
24                                              **JUSTICE FIRST, LLP**
                                                Attorneys for Plaintiff Abhinav Bhatnagar
25                                              By:
26                                                   /s/ Jenny Huang
                                                Jenny C. Huang
27                                              2831 Telegraph Avenue
                                                Oakland, CA  94609
28                                              Tel.: (510) 628-0695

JUSTICE FIRST, LLP
Jenny C. Huang, SBN 223596
Michael Solis, SBN 252912
2831 Telegraph Avenue
Oakland, CA 94609
Telephone: (510) 628-0695
Fax: (510) 272-0711
E-mail: jhuang@justicefirstllp.com

JIVAKA CANDAPPA, SBN 225919
5111 Telegraph Avenue, #215
Oakland, CA 94609
Telephone: (510) 654-4129
Fax: (510) 594-9610
E-mail: jcandappa@sbcglobal.net

Attorneys for Plaintiff Abhinav Bhatnagar

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABHINAV BHATNAGAR,<br>        Plaintiff,<br><br>vs.<br><br>JASON INGRASSIA, individually and in his official capacity; COUNTY OF CONTRA COSTA; and CITY OF SAN RAMON.<br><br>        Defendants. | Case No.: Case No. CV07-02669 (CRB)<br><br>**NOTICE OF PLAINTIFF'S MOTION *IN LIMINE***<br><br>Date: April 25, 2007<br>Time: 10:00am<br>Honorable Charles R. Breyer |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S MOTION *IN LIMINE***

**TABLE OF CONTENTS**

Page(s)

TABLE OF CONTENTS ................................................................................... ii

TABLE OF AUTHORITIES ............................................................................. iii

BACKGROUND .................................................................................................1

SUMMARY OF ARGUMENT ...........................................................................1

STATEMENT OF FACTS ............................................................................. 1-7

ARGUMENT ................................................................................................. 7-15

I.  THE PRIOR FINDINGS CONSTITUTE ADMISSIBLE EVIDENCE
    AGAINST THE MUNICIPAL DEFENDANTS ..................................... 7-8

    A. The Prior Findings are Admissible for the Purpose of Proving
       that the Sheriff's Dept. Had Notice of Defendant Ingrassia's
       Misconduct and Acted Unconstitutionally By Failing to Discipline
       the Deputy, Thereby Giving Rise to Municipal Liability ................ 7-8

    B. The Prior Findings are Admissible for the Purpose of Proving that
       the Municipal Defendants Maintained a Policy or Custom of Ignoring
       Misconduct by Defendant Ingrassia.................................................. 8-9

II. THE PRIOR FINDINGS CONSTITUTE ADMISSIBLE EVIDENCE
    AGAINST DEFENDANT INGRASSIA............................................. 9-10

III. THIS COURT SHOULD GIVE PRECLUSIVE EFFECT TO THE
     PRIOR JUDICIAL AND ADMINISTRATIVE FINDINGS THAT
     HAVE BEEN FULLY LITIGATED AND ALREADY DECIDED
     IN THE PROCEEDINGS UNDERLYING THIS CASE.................... 10-15

    A. The Issues Decided in the Prior Proceedings are Identical to
       Central Issues Disputed in This Case............................................ 11-12

    B. These Identical Issues Were Actually Litigated and Necessarily
       Decided in the Prior Proceedings.................................................. 12-13

    C. The Findings in the Prior Proceedings are Final Decisions,
       Made on the Merits ............................................................................13

    D. The Defendants in This Action Were In Privity With the
       Parties in the Prior Proceedings .................................................... 13-15

CONCLUSION...................................................................................................15

**BACKGROUND**

On February 15, 2008, the parties in this case appeared for a case management conference before the Honorable Charles Breyer. At the request of Assistant County Counsel, Gregory Harvey, the parties agreed to submit the present motion for the purpose of facilitating an early settlement of this case. In the interim, Judge Breyer ordered the parties to refrain from conducting any formal discovery.

**SUMMARY OF ARGUMENT**

Plaintiff seeks to admit evidence of prior judicial and administrative findings made in proceedings underlying this case and in the cases of other motorists. Such findings are admissible against the municipal defendants pursuant to *Grandstaff v. City of Borger, Tex.* (5th Cir. 1985) 767 F.2d 161 and *Henry v. County of Shasta* (9th Cir. 1993) 132 F.3d 512. These findings are also admissible against Defendant Ingrassia pursuant to Fed.R.Evid. 608(b) and *Ismail v. Cohen* (2nd Cir. 1990) 899 F.2d 183. Plaintiff further argues that collateral estoppel should apply to the findings made in proceedings underlying this case. (28 U.S.C. § 1738; *Allen v. McCurry* (1980) 449 U.S. 90, 95-96; *Red Fox v. Red Fox* (9th Cir. 1977) 564 F.2d 361, 364-65.)

**STATEMENT OF FACTS**

In the early morning hours on May 20, 2006, Plaintiff Abhinav Bhatnagar was getting gas at the Valero Gas Station in San Ramon when he was first approached by Contra Costa Deputy Sheriff Jason Ingrassia. (Affidavit of Abhinav Bhatnagar ("Bhatnagar Aff.") at ¶ 2-3.) Defendant Ingrassia targeted Plaintiff on the basis of his actual or perceived race and started interrogating him without reasonable suspicion to believe that he had committed any crime. Without probable cause, Defendant Ingrassia arrested Plaintiff for driving under the influence of alcohol. ("DUI"). (*Id.* at ¶ 4.) At the police station, Defendant Ingrassia repeatedly called Plaintiff a "terrorist" and made other racially offensive remarks to him about Asians. (Bhatnagar Aff. at ¶ 5.) Plaintiff's friend, Laurie Garrison, overheard Defendant Ingrassia making these derogatory remarks to Plaintiff. (Huang Aff., Exh. 1 at 34-37; Exh. 4 at 80-81.)

In an effort to cover-up his discriminatory conduct, Defendant Ingrassia falsified evidence by claiming that he saw Plaintiff driving, that he saw Plaintiff make an illegal u-turn, and that he pulled

Plaintiff over at the gas station for a traffic violation. In addition to making such false statements in his police report, Defendant Ingrassia gave false testimony under oath during Plaintiff's hearing before the Department of Motor Vehicles ("DMV") and during the suppression hearing in his criminal case. (Huang Aff., Exh. 3 at 5-25, Exh. 4 at 7-47.)

Two months after his arrest, Plaintiff and his family began receiving numerous threatening and harassing phone calls. The caller was extremely abusive and told Plaintiff, among other things, "watch your back," "watch your family," "you don't belong here," "I'm going to fuck your mom," and "I'm going to destroy your family." (Bhatnagar Aff. at ¶¶ 13-18.) Plaintiff believes that Defendant Ingrassia is responsible for these threatening phone calls that have terrorized him and his family for nearly one year. (*Id.* at ¶ 18.)

In August of 2006, Plaintiff's public defender advised the Contra Costa County Sheriff's Department ("Sheriff's Dept.") of the numerous threatening phone calls received by Plaintiff, as well as possible police intimidation of Richard Ha, a witness who was working at the gas station at the time of the arrest. Deputy Public Defender Diana Garrido requested that the Sheriff's Dept. investigate these allegations to determine whether Defendant Ingrassia was responsible for the harassment of Plaintiff and Mr. Ha. (Huang Aff. at ¶ 14.) On September 13, 2006, the Sheriff's Dept. advised Ms. Garrido that the allegations of misconduct against Defendant Ingrassia were referred to its Professional Standards Unit/Internal Affairs ("IA") for investigation. (*Id.* at ¶ 15.)

Within weeks after the IA investigation of Defendant Ingrassia was initiated and still pending, Defendant Ingrassia initiated a traffic stop on Plaintiff while he was driving in San Ramon on September 29, 2006. When the deputy sheriff first approached Plaintiff, he asked, "Do you remember me?" Defendant Ingrassia then threatened Plaintiff with physical violence, told him never to return to San Ramon again, and assured Plaintiff that his attorneys could not do anything to him. (Bhatnagar Aff. at ¶¶ 20-24.) Defendant Ingrassia then issued Plaintiff a false traffic citation based on the repeated allegation that Plaintiff made an illegal u-turn. (*Id.* at ¶ 25.) Later that same day, Ms. Garrido immediately advised IA of Defendant Ingrassia's threatening and retaliatory misconduct. (Huang Aff. at ¶ 16.)

1  During its investigation, the Sheriff's Dept. inappropriately focused its attention on Plaintiff
2  as a suspect and not as the complainant. (Bhatnagar Aff. at ¶ 30.) In March of 2007, the Sheriff's
3  Dept. completed its investigation after being advised of adverse findings of credibility against the
4  officer by several different judges. (Huang Aff. at ¶¶ 16, 23.) Despite such findings, the internal
5  affairs investigation concluded with an "unfounded" finding. Specifically, the investigation found
6  sufficient evidence to prove that the acts complained of did not occur as alleged. (Bhatnagar Aff. at
7  Exh. 1.)

Prior Findings:

A. <u>Plaintiff's suppression hearing</u> – In defense of his criminal charges for DUI, Plaintiff moved to suppress all evidence against him, asserting that (1) the evidence was obtained as the result of an unreasonable search and seizure, (2) Defendant Ingrassia fabricated the reason for stopping Plaintiff, and (3) Defendant Ingrassia targeted Plaintiff because of his race. (Huang Aff., Exhibit 2 at 4-5; Huang Aff., Exhibit 3 at 53-54.) During the suppression hearing, Defendant Ingrassia testified that he saw Plaintiff driving his vehicle, he saw him make an illegal u-turn, and then he pulled Plaintiff over at the gas station for a traffic violation. (Huang Aff., Exh. 3 at 5-6, 8-9, 11.) Defendant Ingrassia further testified that he turned on his emergency lights during the alleged traffic stop and he denied that Plaintiff was standing outside of his vehicle when the deputy first approached him. (*Id.* at 9, 13, 14, 16.)

The focus of the suppression motion was to show that Defendant Ingrassia targeted Plaintiff on the basis of his race and then fabricated evidence of the traffic stop to cover up his discriminatory conduct. (*Id.* at 52-54.) In support of this theory, Plaintiff presented testimony from various witnesses who directly contradicted the deputy's testimony. For instance, a gas station attendant named Richard Ha testified that Defendant Ingrassia first approached Plaintiff at the gas station while he was getting gas. (*Id.* at 28.) Mr. Ha also testified that he did not see the emergency lights on Defendant Ingrassia's patrol car turned on that night. (*Id.* at 29.) In a similar vein, Plaintiff also denied that the emergency lights on the deputy's patrol car were turned on that night and testified that he was standing outside of his car when Defendant Ingrassia first approached him. (*Id.* at 40-41.) Plaintiff further testified that Defendant Ingrassia called him a terrorist and accused him of stealing

jobs in this country. (*Id.* at 43.)  This testimony was corroborated by Laurie Garrison, a friend of Plaintiff's, who testified that she overheard the deputy calling Plaintiff a terrorist and making derogatory remarks about Asians. (*Id.* at 37.)

In opposition to the suppression motion, the prosecution defended the deputy's credibility and argued that Defendant Ingrassia had reasonable suspicion to stop Plaintiff because he observed him making an illegal u-turn.  (Huang Aff., Exh. 2 at 3-4; Huang Aff., Exh. 3 at 57.)  Defendant Ingrassia's credibility was squarely at issue in this suppression motion and it served as the entire basis of Plaintiff's motion.  After conducting a full and fair hearing this motion, the Honorable Charles Treat granted Plaintiff's suppression motion and dismissed the case against him.  Specifically, Judge Treat concluded, "I do not credit the officer's testimony.  It appears to me as most credible, that the officer was trolling for drunk drivers across from the bar and picked on this defendant because of his race." (Huang Aff., Exh. 3 at 60-61.)  Ms. Garrido immediately advised IA of the findings by Judge Treat and provided the IA investigators with a copy of the transcript from the suppression hearing, which included the falsified testimony by Defendant Ingrassia. (Huang Aff. at ¶ 22; Huang Aff. at ¶ 17.)

B.  <u>Plaintiff's DMV Proceedings</u> - As a result of his arrest, Plaintiff was also required to defend himself against proceedings to suspend his license.  Similar to his testimony in Plaintiff's criminal case, Defendant Ingrassia testified under oath before the DMV that he saw Plaintiff driving, that he saw Plaintiff make an illegal u-turn, and that he pulled Plaintiff over at the gas station for a traffic violation. (Huang Aff., Exh. 4 at 16:14-16, 25:11-18.)  Defendant Ingrassia also admitted that during the arrest, he had some conversation with Plaintiff about Plaintiff's ethnicity, but the officer did not recall the specifics of that conversation. (*Id.* at 47:7-13.)  Richard Ha also testified before the DMV, stating that when he first saw Plaintiff, he was parked at a gas pump getting gas and that there was no police car in front or behind Plaintiff's car. (*Id.* at 62:2-11.)  Contrary to the officer's testimony, Mr. Ha stated that Plaintiff was standing outside of his car when Defendant Ingrassia first approached Plaintiff and started questioning him and was not sitting in his vehicle at that time as the deputy had claimed. (*Id.* at 68:6-11, 27:5-10.)  Mr. Ha also testified that it did not look to him as

though Defendant Ingrassia had followed Plaintiff into the gas station and he did not see the emergency lights on the deputy's patrol car turned on that night. (*Id.* at 66:3-13, 17-22, 69:4-22.)

Other witnesses at the DMV hearing included Plaintiff (*Id.* at 98-127), Laurie Garrison (*Id.* at 74-86), and a toxicologist. (*Id.* at 86-98.) On October 16, 2006, the DMV hearing officer concluded that suspension of Plaintiff's driver's license was warranted and would remain in effect for an additional four months. However, upon the dismissal of Plaintiff's criminal charges, the district attorney filed an official record with the DMV, which included a sworn statement that "probable cause for the stop was insufficient." (Huang Aff. at ¶ 7.) This record was received into evidence during the March 2007 rehearing before the DMV on Plaintiff's license suspension. (*Id.,* Exh. 6 at 9-10, 12.) In March of 2007, a DMV hearing officer found upon rehearing that Defendant Ingrassia had no reasonable cause to believe Plaintiff was driving under the influence and that he unlawfully arrested Plaintiff. The hearing officer concluded that Defendant Ingrassia lacked credibility and that "he was less than truthful when completing documents submitted to the department." (Huang Aff., Exh. 7.)

C. <u>Plaintiff's Traffic Court Hearing</u> – On September 29, 2006, Defendant Ingrassia issued Plaintiff a traffic citation, again claiming that he saw Plaintiff make an illegal u-turn. (Bhatnagar Aff. at ¶ 25.) On March 5, 2007, Contra Costa County Commissioner Joel Golub conducted a hearing on the traffic citation, during which Defendant Ingrassia and Plaintiff both testified. (Huang Aff., Exh. 8.) Specifically, Defendant Ingrassia testified that on September 29, 2006, he saw Plaintiff make an illegal u-turn. (*Id.* at 5.) By order dated March 14, 2007, Commissioner Golub found Plaintiff not guilty of the traffic violation and dismissed the citation against him. (Huang Aff. at ¶ 11.)

D. <u>Raymond Eli's Suppression Hearing</u> – On September 15, 2006, an African American motorist, Raymond Eli, was arrested by Defendant Ingrassia. (Huang Aff., Exh. 10 at 15.) Mr. Eli moved to suppress evidence, based on the argument that Defendant Ingrassia fabricated the reason for stopping him. During the suppression hearing, Defendant Ingrassia testified that he stopped Mr. Eli because Mr. Eli failed to stop at a red light before turning. (*Id.* at 8.) Mr. Eli, however, testified that he made a complete stop at the red light, that the deputy did not pull him over for ten blocks after making that turn, and that the deputy initially told him that he was pulled over for speeding. (*Id.*

at 20.) Mr. Eli's public defender, Diana Garrido, argued that Defendant Ingrassia stopped Mr. Eli because of his race and then fabricated the basis for stopping him. (*Id.* at 23-24.) After taking judicial notice of the findings by Judge Treat in Plaintiff's criminal case, Contra Costa County Superior Court Judge William Kolin granted Mr. Eli's suppression motion and dismissed his criminal case. (*Id.* at 16.) Specifically, Judge Kolin ruled that "in terms of credibility, I'll find that the motion should be granted." (*Id.* at 25.)

While the internal affairs investigation was still pending, Plaintiff's counsel advised the Sheriff's Department of the findings in Mr. Eli's case. Specifically, Plaintiff's counsel stated that Judge Kolin's decision was based upon negative findings of credibility against Defendant Ingrassia. (Huang Aff. at ¶ 23)

E. <u>Richard Smith's Suppression Hearing</u> – On June 21, 2006, a Caucasian motorist, Richard Smith, was arrested by Defendant Ingrassia. (Huang Aff., Exh. 11 at 6.) Mr. Smith moved to suppress evidence, based on the argument that Defendant Ingrassia fabricated the basis for stopping him. (*Id.* at 65-66.) During the suppression hearing, Defendant Ingrassia testified that he stopped Mr. Smith because his rear license plate was not illuminated. (*Id.* at 7.) On cross-examination, Defendant Ingrassia was questioned about his prior arrests of Plaintiff and Mr. Eli. (*Id.* at 17-24.) Plaintiff was served with a subpoena to testify in Mr. Smith's suppression hearing and against the objections of his counsel, he was required to testify as a witness. (*Id.* at 29-46.) Mr. Eli also testified as a witness at Mr. Smith's suppression hearing. (*Id.* at 46-54.) Finally, Mr. Smith testified that he checked the lights on his vehicle a few hours before he was arrested and they were in working condition. Mr. Smith also testified that while sitting in Defendant Ingrassia's patrol car, he saw that the light on his rear license plate was illuminated. (*Id.* at 55-56.) At the close of the hearing, Contra Costa County Superior Court Judge Nancy Stark stated that the suppression motion turned on the credibility of Defendant Ingrassia. (*Id.* at 62.) The prosecution argued that weighing the credibility of Defendant Ingrassia against the credibility of the witnesses, the deputy was a more credible witness. (*Id.* at 63-64.) Judge Stark concluded that Plaintiff was the most credible witness and subsequently granted the suppression motion and dismissed the case against Mr. Smith. Specifically,

Judge Stark stated, "[C]redibility is so much an issue here. A big shadow is cast over [Ingrassia's] believability in this particular case that I would have to grant the motion to suppress." (*Id.* at 67.)

## ARGUMENT

### I. THE PRIOR FINDINGS CONSTITUTE ADMISSIBLE EVIDENCE AGAINST THE MUNICIPAL DEFENDANTS.

A central part of Plaintiff's case includes claims against the municipal defendants pursuant to 42 U.S.C. § 1983. For instance, Plaintiff alleges that Contra Costa County and the City of San Ramon failed to properly investigate and discipline Defendant Ingrassia's misconduct, they failed to prevent further harassment of Plaintiff by Defendant Ingrassia, they had a policy and custom of condoning gross misconduct by their deputies, and they inadequately hired, trained and supervised Defendant Ingrassia. (Complaint, dated 5/21/07, at ¶ 43-48.) To establish these claims, Plaintiff should be allowed to introduce evidence of the prior findings in the proceedings underlying this case and other related cases.

A. <u>The Prior Findings are Admissible for the Purpose of Proving that the Sheriff's Dept. Had Notice of Defendant Ingrassia's Misconduct and Acted Unconstitutionally By Failing to Discipline the Deputy, Thereby Giving Rise to Municipal Liability.</u>

As a final policymaker for the municipal defendants in the area of law enforcement, the actions, policies, and customs of the Sheriff's Dept. can be a basis of municipal liability. (*Colle v. Brazos County* (5th Cir. 1993) 981 F.2d 237, 244 (sheriff was county's final policymaker in the area of law enforcement such that his policies would subject county to liability).) To establish that the Sheriff's Dept.'s failed to properly investigate and discipline Defendant Ingrassia for his misconduct, Plaintiff is entitled to introduce evidence of the prior findings for the purpose of showing the impropriety of the Department's inaction. This is especially true because the Sheriff's Dept. had notice of and was advised of the prior findings by Plaintiff's civil and criminal attorneys. (Huang Aff. at ¶¶ 17, 22-23.) Despite notice of Defendant Ingrassia's repeated and ongoing acts of misconduct, the Sheriff's Dept. failed to recommend any discipline of Defendant Ingrassia, thereby failing to prevent further harassment and retaliation of Plaintiff by this deputy. Moreover, the Department's failure to take disciplinary action is evidence of its disposition as a policymaker of the

municipalities, thereby giving rise to liability. (*Grandstaff v. City of Borger, Tex.* (5th Cir. 1985) 767 F.2d 161, 171.)

B. <u>The Prior Findings are Admissible for the Purpose of Proving that the Municipal Defendants Maintained a Policy or Custom of Ignoring Misconduct by Defendant Ingrassia</u>

Pursuant to § 1983, a municipality may be held liable for maintaining a policy of deliberate indifference to the constitutional rights of its inhabitants. (*Henry v. County of Shasta* (9th Cir. 1993) 132 F.3d 512, 517.)  To prove the existence of such a policy, Plaintiff is entitled to introduce evidence of other incidents involving similar conduct for the purpose of showing that the municipality maintained a policy of ignoring misconduct by Defendant Ingrassia. (*Henry v. County of Shasta, supra,* 132 F. 3d at 519 (declarations of other motorists who described treatment identical to plaintiff's after being arrested for minor traffic infractions was admissible to prove existence of a municipality's policy or custom; *Fiacco v. City of Rensselaer, N.Y.* (2nd Cir. 1986) 783 F.2d 319, 327-28 (trial court did not abuse discretion in admitting evidence of 3rd party claims against the city for purpose of proving a policy of condoning excessive use of force).)  The judicial findings in the criminal cases of Raymond Eli and Richard Smith are admissible as evidence to show that the municipal defendants maintained a policy of condoning and ignoring Defendant Ingrassia's misconduct.  In both of those cases, the defendants won suppression motions based on the similar claim that Defendant Ingrassia fabricated his reason for stopping them.  Although the arrests of Mr. Eli and Mr. Smith occurred after the arrest of Plaintiff, post-event evidence is admissible as probative evidence of the municipalities' policy of ignoring such incidents of misconduct, prior to the date of Plaintiff's arrest. (*Henry v. County of Shasta, supra,* 132 F. 3d at 519; *Foley v. City of Lowell* (1st Cir. 1991) 948 F.2d 10, 14; *Bordanaro v. McLeod* (1st Cir. 1989) 871 F.2d 1151, 1166.)  Moreover, the close proximity in time between Plaintiff's arrest and the arrest of Mr. Smith (less than 1 month) and the arrest of Mr. Eli (less than 4 months), is further evidence that Plaintiff's treatment was not an isolated event and was pursuant to municipal custom. (*Henry v. County of Shasta, supra,* 132 F. 3d at 519.)

Likewise, the prior findings in Plaintiff's underlying proceedings are also admissible as evidence that the municipal defendants maintained a policy or custom of ignoring misconduct by Defendant Ingrassia.  (*Henry v. County of Shasta, supra,* 132 F. 3d at 519 (evidence of prior incident in which plaintiff was similarly mistreated is admissible evidence to show county policy).)  Thus, the

prior findings from Plaintiff's suppression hearing, the DMV proceedings, and his traffic court hearing are all admissible to show that the existence of a municipal custom of ignoring misconduct by Defendant Ingrassia.

## II. THE PRIOR FINDINGS CONSTITUTE ADMISSIBLE EVIDENCE AGAINST DEFENDANT INGRASSIA.

In large part, the civil claims asserted against Defendant Ingrassia in this case are based on matters that were already litigated below. For instance, Plaintiff asserts state and federal claims against the deputy for unreasonable stop, search and seizure, unlawful arrest, false imprisonment, and malicious prosecution. (Complaint, dated 5/21/07, at ¶ 39-42, 58-66.) In some respects, Plaintiff's claims have not been litigated below, as is the case with Plaintiff's allegations of harassing conduct and threatening phone calls by the deputy. (Bhatnagar Aff. at ¶¶ 8-19.) To the extent that Plaintiff's civil claims have been litigated below, he is entitled to present evidence of the prior findings for the purpose of establishing liability against the deputy.

Pursuant to Fed.R.Evid. 608(b), the prior findings in Plaintiff's underlying proceedings are admissible as evidence that is probative of the deputy's character for truthfulness or untruthfulness. (Fed.R.Evid. 608(b).) Such evidence is especially probative in this case because Defendant Ingrassia falsely asserts in this action, as he falsely testified on three prior occasions, that he saw Plaintiff make an illegal u-turn on May 20, 2006 and on September 29, 2006. (Answer of Defendant Ingrassia, at ¶¶ 4-5.) Because this testimony was repeatedly rejected on every occasion that he so testified, Plaintiff is entitled to cross-examine Defendant Ingrassia pursuant to Rule 608(b) about the prior findings. (*Hynes v. Coughlin* (2nd Cir. 1996) 79 F.3d 285, 293-95 (false claims and reports are admissible on the credibility of correction officer); *U.S. v. Fortes* (1st Cir. 1980) 619 F.2d 108, 118 (cross-examination as to whether witness told the truth on a prior occasion is probative of character for truthfulness pursuant to Rule 608).) Given that this case turns significantly on the deputy's credibility, broad cross-examination should be permitted to show that the deputy's similar testimony in prior proceedings was repeatedly found to be not credible.

Pursuant to Rule 403 & 404(b), the prior findings from the suppression hearings of Raymond Eli and Richard Smith are not admissible for the purpose of proving propensity. They are, however, admissible for the purpose of showing pattern, intent, motive, and absence of mistake. Although the

arrests of these two individuals occurred after Plaintiff's arrest, they are nevertheless admissible for the purpose of showing that Defendant Ingrassia had pattern, intent, and absence of mistake in fabricating the basis for stopping Plaintiff. (*Ismail v. Cohen* (2nd Cir. 1990) 899 F.2d 183, 188-89 (no error in the admission of evidence that defendant police officer had committed misconduct similar to that alleged in the case in an incident that occurred shortly after the incident at issue).) This evidence is especially probative because of the close proximity of time between Plaintiff's arrest and the arrests of Mr. Smith (less than 1 month) and Mr. Eli (less than 4 months.)

### III. THIS COURT SHOULD GIVE PRECLUSIVE EFFECT TO THE PRIOR JUDICIAL AND ADMINISTRATIVE FINDINGS THAT HAVE BEEN FULLY LITIGATED AND ALREADY DECIDED IN THE PROCEEDINGS UNDERLYING THIS CASE

Several significant issues presented in this lawsuit have already been fully litigated and decided in Plaintiff's favor by prior state court and administrative findings. Pursuant to the Full Faith and Credit Clause, federal courts are required to give preclusive effect to issues previously decided by state courts. (28 U.S.C. § 1738; *Allen v. McCurry* (1980) 449 U.S. 90, 95-96; *Red Fox v. Red Fox* (9th Cir. 1977) 564 F.2d 361, 364-65.) In the context of actions brought pursuant to 42 U.S.C. § 1983, federal courts give collateral estoppel effect to state court judgments in the interest of conserving judicial resources, relieving parties of the cost of multiple lawsuits, preventing inconsistent decisions, and encouraging reliance on prior adjudications. (*Allen v. McCurry, supra,* 449 U.S. at 94-95.) Consequently, any issue that was necessarily decided in a prior criminal proceeding is given collateral estoppel effect if the same issue arises in a subsequent civil action between the same parties or parties who are in privity with the parties in the prior proceeding. (*Teitelbaum Furs, Inc. v. Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601, 607.)

In § 1983 actions, it is clearly established that state law that governs whether collateral estoppel is applied to a prior state court judgment.[1] (*Allen v. McCurry, supra,* 449 U.S. at 96; *Ayers v. City of Richmond* (9th Cir. 1990) 895 F.2d 1267, 1270.) Under California law, there are five requirements that must be satisfied for collateral estoppel to bar relitigation of an issue decided in a prior case: (1) the issue is identical to that decided in a former proceeding, (2) the issue was actually litigated, (3) the issue was necessarily decided, (4) the former decision is final and was made on the merits, and (5) the doctrine is asserted against a party to the former action or one who was in privity with such a party. (*Schmidlin v. City of Palo Alto* (6th Dist. 2007) 157 Cal.App.4th 728, 767.) Based on these factors, the defendants in this action should be collaterally estopped from relitigating matters already decided in the prior state court proceedings.

A. The Issues Decided in the Prior Proceedings are Identical to Central Issues Disputed in This Case.

The illegality of Defendant Ingrassia's search and seizure of Plaintiff on May 20, 2006 was the sole basis for the suppression motion in Plaintiff's criminal case. (Huang Aff., Exh. 1 at 1-2.) Specifically, Plaintiff directly challenged Defendant Ingrassia's credibility by arguing that the deputy fabricated the basis for the stop, in an effort to cover up his discriminatory conduct. (*Id.*, Exh. 3 at 50-54.) This issue is identical to disputed issues in the present action, in which Plaintiff asserts claims against the defendants for unreasonable search, seizure, and detention, false arrest, and malicious prosecution. (*Ayers v. City of Richmond* (9th Cir. 1990) 895 F.2d 1267, 1270 (denial of suppression motion addressed issues identical to plaintiff's 4th Amendment claims.)  Likewise, Plaintiff's equal protection claims in the present action are identical to the issue raised and decided in his suppression motion as to whether Defendant Ingrassia targeted Plaintiff on the basis of his race.

---

[1] Because it is well-established that state law governs the application of collateral estoppel, this court should disregard the decision in *Davis v. Eide*, (9th Cir. 1971) 439 F.2d 1077. In *Davis,* the Ninth Circuit concluded that defendant police officers were not in privity with state criminal proceedings. (*Id.* at 1078.) However, *Davis* was not decided in accordance with California law and as such, it should be disregarded.

Similarly, the DMV conducted thorough proceedings to determine whether Defendant Ingrassia had reasonable suspicion to believe that Plaintiff was driving under the influence of alcohol on May 20, 2006 and whether the deputy had probable cause to arrest Plaintiff. (Huang Aff., Exhs. 6-7.) These issues are identical to the issues raised by Plaintiff's state and federal claims in this lawsuit. Plaintiff's claims for retaliation and harassment that arise from the deputy's traffic stop of Plaintiff on September 29, 2006 raise precisely the same issue that was already decided below in Plaintiff's traffic court hearing. As a result of that hearing, Commissioner Golub found that Plaintiff was not guilty of making an illegal u-turn, as alleged in the traffic citation dated September 29, 2006. (Huang Aff., Exh. 8, 9.) And finally, the deputy's credibility and the believability of his claimed basis for stopping Plaintiff on May 20, 2006 and on September 29, 2006 are identical to issues raise in this case, in which Defendant Ingrassia again false asserts that he stopped Plaintiff on both dates for making an illegal u-turn.

B.  These Identical Issues Were Actually Litigated and Necessarily Decided in the Prior Proceedings.

As evidenced by the voluminous records submitted in support of the present motion, these identical issues were actually litigated and necessarily decided in the prior proceedings. With regard to Judge Treat's finding, the legality of the search and the allegation of racial profiling were matters that were litigated and necessarily decided below. (Huang Aff., Exh. 3 at 50-54; Exh. 1 at 3-4.) Similarly, the legality of the deputy's search and arrest of Plaintiff were fully litigated and necessarily decided by the DMV. (Huang Aff., Exh. 4, 6, 7.) Finally, the issue of whether Plaintiff made an illegal u-turn on September 29, 2006 was the entire basis of Plaintiff's traffic court hearing, after which Commissioner Golub found Plaintiff was not guilty of the traffic citation.

Moreover, the credibility of Defendant Ingrassia and the believability of the officer's claimed basis for stopping Plaintiff on May 20, 2006 and on September 29, 2006 were matters that were actually litigated and necessarily decided in the prior criminal proceedings. On three separate occasions, Defendant Ingrassia testified during the suppression hearing, the traffic court hearing, and the DMV proceeding, claiming that on both dates, he stopped Plaintiff for making an illegal u-turn. (Huang Aff., Exh. 3 at 5-6; Exh. 8 at 5; Exh. 4 at 16.) In all three proceedings, Defendant Ingrassia's testimony was directly contradicted by the testimony of Plaintiff and in two of those matters, the

officer's testimony was further contradicted by the testimony of witnesses. In all three proceedings, negative findings of credibility against this officer were either explicitly made or were necessarily decided upon.

Such prior findings of credibility against Defendant Ingrassia are entitled to preclusive effect on the issue of whether the deputy saw Plaintiff make illegal u-turns on May 20, 2006 and again on September 29, 2006. This is especially true because the deputy's credibility is central to Plaintiff's claims in this lawsuit. (*Schmidlin v. City of Palo Alto, supra,* 157 Cal.App.4th at 769 (parties agreed that a prior determination on a suppression motion could have preclusive effect in a later 1983 action if the officer's credibility was directly at issue was adversely decided against the officer.)

C. The Findings in the Prior Proceedings are Final Decisions, Made on the Merits.

Finally, the prior criminal and administrative proceedings constituted final decisions that were made on the merits. After conducting a full and fair proceeding in which Defendant Ingrassia's credibility was directly challenged, Judge Treat issued a decision granting the motion based on the conclusion that the officer's testimony was not credible. The district attorney chose not to exercise its right to appeal Judge Treat's decision, after which time the ruling on the suppression motion became final for purposes of collateral estoppel. (*Ayers v. City of Richmond, supra,* 895 F.2d at 1271-72; *Schmidlin*, *supra*, 157 Cal.App.4th at 773-775.)

Similarly, adverse findings by the DMV hearing officer are also entitled to preclusive effect. (*University of Tennessee v. Elliott*, 478 U.S. 788, 799 (federal common-law preclusion rule for § 1983 action requires that when a state administrative agency acts in a judicial capacity, federal courts must give agency's factfinding the same preclusive effect to which it would be entitled in state's courts) (*Rymer v. Hagler*, (5th Dist. 1989) 211 Cal.App.3d 1171, 1178 (under California law, collateral estoppel applies to final decisions by administrative agencies acting in a judicial capacity.)

D.      The Defendants in This Action Were In Privity With the Parties in the Prior Proceedings.

Although the defendants in this action were not named parties to the prior proceedings, they may be bound by the findings in the prior proceedings if this court determines that they were in privity with the parties below. (*Ayers v. City of Richmond, supra,* 895 F.2d at 1271.) The California Supreme Court has recognized that privity is not a concept that is capable of uniform definition.

(*Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865, 875; *Citizens for Open Access to Sand and Tide, Inc. v. Seadrift Association et al.*, ("*Seadrift* ") (1st Dist 1998) 60 Cal.App.4th 1053, 1070.) This is especially true because under California law, the question of privity requires a fact-specific inquiry into the practical circumstances of each case to determine whether a non-party was sufficiently close to the original case to justify the application of collateral estoppel. (*Miller v. Superior Court of Los Angeles County* (2d Dist. 1985) 168 Cal.App.3d 376, 383-85; *Seadrift*, *supra*, 60 Cal.App.4th at 1070.) In California, it is an unsettled area of law as to whether a police officer or municipality is in privity with the prosecution in a criminal case. (*Dimidowich v. Bell & Howell* (9th Cir. 1986) 803 F.2d 1473, 1482 ("Where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state's highest court would resolve it.").

The defendants in this case had every reason to fully litigate the legality of Defendant Ingrassia's actions during the underlying proceedings, particularly when the deputy's conduct was under investigation by the Sheriff's Dept. As for Defendant Ingrassia, he shared with the prosecution a common interest in defending his credibility. Defendant Ingrassia had the full opportunity to participate in the suppression hearing and he fully testified as to his version of the events. Indeed, the officer's interests were more than adequately represented by the district attorney, a representative of the County, in the criminal proceeding. The district attorney aggressively opposed the suppression motion and defended the deputy's credibility in doing so. (Huang Aff., Exh. 2; Exh. 3 at 57-58.) Moreover, as an investigator for the prosecution, Defendant Ingrassia served as an agent for the prosecution in executing his law enforcement duties: he gathered evidence for the prosecution, testified as a witness for the prosecution, and freely shared information with the prosecution for the common interest in securing a conviction. Particularly when the officer's credibility is directly at issue, both the individual officer and the prosecution share the common interest in defending the officer's credibility for the purpose of obtaining a conviction. Consequently, although Defendant Ingrassia was not a named party in the suppression hearing, his interests were sufficiently close to the

prosecution to warrant the application of collateral estoppel. (*Patzner v. Burkett* (8th Cir. 1985) 779 F.2d 1363, 1369 (deputy sheriffs were estopped from defending a 4th Amendment claim where plaintiff previously prevailed on that issue in motion to suppress in a state criminal trial in which the sheriffs were found to be in privity with the state court prosecution.)

With regard to the municipal defendants, California courts have held that agents of the same government are in privity with each other, since they represent the right of the government, as opposed to their own rights. (*People v. Sims* (1982) 32 Cal.3d 468, 487.)  Both municipal defendants in this action, as well as the district attorney in the underlying action, are county agencies that represent the interests of the government at their respective proceedings.  Consequently, the parties are sufficiently close to warrant application of collateral estoppel against Contra Costa County and the City of San Ramon. (*Id.* at 487-88 (the County and district attorney were in privity with each other in controlling welfare fraud as both are county agencies representing the interests of the state); *Miller v. Superior Court of Los Angeles County, supra,* 168 Cal.App.3d at 384 (city was in privity with the prosecutor and the People of the State of California such that it was collaterally estopped from relitigating issue of police officer's misconduct which was previously decided in prior prosecution).)

## CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that this court issue an order granting his motion *in limine* in its entirety.

Date:   March 14, 2008
        Oakland, California

                                    **JUSTICE FIRST, LLP**
                                    Attorneys for Plaintiff Abhinav Bhatnagar
                                    By:
                                    _____/s/ Jenny Huang_____
                                    Jenny C. Huang
                                    2831 Telegraph Avenue
                                    Oakland, CA  94609
                                    Tel.: (510) 628-0695