1

IN THE APPELLATE DIVISION OF THE SUPERIOR COURT

IN AND FOR THE COUNTY OF CONTRA COSTA

--oOo--

THE PEOPLE OF THE STATE OF CALIFORNIA,    )

Plaintiff,    )

vs.    )No. 128472-8

RAYMOND ANTHONY ELI,    )

Defendant.    )

_____)

REPORTER'S TRANSCRIPT OF PROCEEDINGS ON APPEAL

WALNUT CREEK JUDICIAL DISTRICT OF CONTRA COSTA COUNTY

JUDGE WILLIAM M. KOLIN, PRESIDING

DEPARTMENT NO. 18

FEBRUARY 5, 2007

A P P E A R A N C E S

FOR THE PEOPLE AND APPELLANT:

ROBERT J. KOCHLY

DISTRICT ATTORNEY

BY:    _____

Deputy District Attorney

Contra Costa County

FOR THE DEFENDANT AND RESPONDENT:

_____

_____

_____

_____

REPORTED BY:    DINA M. THOMPSON, C.S.R. NO. 9693

2

INDEX OF WITNESSES

C H R O N O L O G I C A L L Y

FOR THE PEOPLE:

E X A M I N A T I O N

| | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| JASON INGRASSIA | 7 | 10 | 17 | -- |

---o0o---

3

1                          INDEX OF WITNESSES

2                     C H R O N O L O G I C A L L Y

3      FOR THE DEFENDANT:

4                                      E X A M I N A T I O N

5                           DIRECT  CROSS  REDIRECT  RECROSS

6      RAYMOND ELI              18     --        --       --

7                             ---oOo---

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

1                    INDEX OF EXHIBITS

2    FOR THE PEOPLE:

3                                   I.D.  EVIDENCE

4    None in this volume.

5                    ---oOo---

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5

INDEX OF EXHIBITS

FOR THE DEFENDANT:

|  | I.D. | EVIDENCE |
|---|---|---|
| A -- Transcript | 22 | 22 |

---oOo---

```
 1    FEBRUARY 5, 2007                    AFTERNOON SESSION⁶
```

 1    FEBRUARY 5, 2007                    AFTERNOON SESSION[6]

 2                    P R O C E E D I N G S

 3                       ---oOo---

 4

 5         THE COURT:  All right.  Let's call Raymond

 6    Anthony Eli, 128472-8.

 7         Appearances for the record.

 8         MS. LICHT:  Jaime Licht for the People.

 9         MS. GARRIDO:  Diana Garrido for Mr. Eli.

10         THE COURT:  Okay.  Both parties ready to go?

11         MS. LICHT:  Yes, your Honor.

12         MS. GARRIDO:  Yes.

13         MS. LICHT:  People would request though, before

14    we begin, to know the scope of the defense motion as

15    it was not provided in their actual moving papers.

16         THE COURT:  How far do they need to go?

17         MS. GARRIDO:  Yes.  We were challenging only

18    reasonable suspicion for the stop.

19         MS. LICHT:  Okay.

20         THE COURT:  Okay.  Call your first witness.

21         MS. LICHT:  People call Officer Ingrassia.

22         THE COURT:  Over here, Officer.  Watch your

23    step as you step up.  Remain standing when you get to

24    the witness chair.  Face my clerk.  Raise your right

25    hand to be sworn.

26                    JASON INGRASSIA,

27       called as a witness by the People, being first

28       duly sworn by the Clerk, testified as follows:

7

```
1          THE CLERK:  Please be seated.  Please state
2     your name for the record and spell your name.
3          THE WITNESS:  My name is Deputy Jason
4     Ingrassia, J-a-s-o-n, last name I-n-g-r-a-s-s-i-a.
5          THE COURT:  Proceed.
6                    DIRECT EXAMINATION
7     BY MS. LICHT:
8          Q.    Good afternoon, Officer Ingrassia.
9          A.    Good afternoon.
10         Q.    Where are you employed currently?
11         A.    With Contra Costa County Office of the
12    Sheriff.
13         Q.    And on the night of or the early morning
14    rather of September 15th, 2006, were you working that
15    evening, early morning?
16         A.    Yes.
17         Q.    Where were you assigned?
18         A.    I was assigned to the contract city of
19    San Ramon.
20         Q.    Okay.  Is that in Contra Costa County?
21         A.    Yes.
22         Q.    Did you make any traffic stops that
23    morning?
24         A.    Yes.
25         Q.    What -- did you make a traffic stop at
26    approximately 1:20 a.m.?
27         A.    Yes.
28         Q.    Can you tell us the circumstances of that
```

8

1    stop, please?

2         A.    Yes.   I was traveling westbound on Crow

3    Canyon Road near the intersection of San Ramon Valley

4    Boulevard.  I had a green light.  While I was

5    approaching, I noticed a Ford Mustang coming from

6    southbound San Ramon Valley Boulevard make a right

7    turn onto Crow Canyon Road without stopping at the

8    light.  The light, like I said, from my traffic was

9    green, so I presumed that the light or the vehicle was

10   red.

11        Q.    Did you effectuate a traffic stop at that

12   time?

13        A.    I did.

14        Q.    And did you approach the Mustang at that

15   point?

16        A.    I did.

17        Q.    Do you recall what the driver looked like

18   in that car?

19        A.    I do.

20        Q.    Do you see the driver of that car in the

21   courtroom today?

22        A.    Yes.

23        Q.    Can you please identify him for this

24   Court?

25        A.    Gentleman in the yellow shirt at the

26   defense table.

27        THE COURT:  Record reflect he's identified the

28   defendant.

9

```
 1          MS. LICHT:
 2          Q.    Upon contacting the defendant, did you ask
 3    for a driver's license, or what was your procedure?
 4          A.    I asked him to identify -- for
 5    identification.
 6          Q.    Did he have a driver's license?
 7          A.    He gave me a California identification
 8    card.
 9          Q.    Okay.  Did you then ask the defendant if
10    he had a California driver's license?
11          A.    I did.
12          Q.    What did he tell you?
13          A.    He told me it may be in the back of his
14    car.
15          Q.    Was he able to locate that license?
16          A.    I didn't ask him to actually locate it at
17    that point.
18          Q.    What did you do next?
19          A.    I asked him if he was -- if his license
20    was suspended, and that's why he actually gave me an
21    identification card.
22          Q.    How did he respond to that?
23          MS. GARRIDO:  Objection.  Relevance.
24          THE COURT:  Overruled.
25          MS. GARRIDO:  Exceeds the scope of the hearing.
26          THE COURT:  All right.  I'll sustain it because
27    I think in fairness you asked her how far she was
28    going to go, and she indicated only to the point of
```

1    reasonable suspicion.  I think that's what you said, [10]

2    Ms. Garrido.  All right.  Sustained.

3           MS. LICHT:  Okay, your Honor.

4           Q.    Moving back to the circumstances of the

5    stop.  Was the defendant's failure to stop prior to

6    making the right turn a violation of a Vehicle Code

7    section?

8           A.    Yes.

9           Q.    Which section was that?

10          A.    21453(a).

11          Q.    What does that Code section say?

12          A.    It says you must stop --

13          Q.    You can paraphrase that if necessary.

14          A.    Okay.  Thanks.  It says you need to stop

15   at a red light before proceeding through an

16   intersection.

17          Q.    What speed would you estimate the

18   defendant's car traveled through the right turn?

19          A.    It was approximately seven to ten miles an

20   hour.

21          MS. LICHT:  Nothing further at this time.

22          THE COURT:  Cross?

23                      CROSS-EXAMINATION

24   BY MS. GARRIDO:

25          Q.    Good afternoon, Officer.

26          A.    Hello.

27          Q.    So you first saw Mr. Eli on San Ramon

28   Valley and Crow Canyon Road, correct?

11

1          A.    Yes.

2          Q.    And you were traveling westbound on Crow

3    Canyon?

4          A.    Yes.

5          Q.    And did you see -- could you see the

6    driver at that point?

7          A.    No.  I couldn't make out -- I assume there

8    was a driver, but I didn't focus on the driver.

9          Q.    Okay.  And according to your testimony, he

10   made a right turn without stopping, correct?

11         A.    Correct.

12         Q.    And he was about 100 to 150 feet in front

13   of you when that happened?

14         A.    Correct.

15         Q.    And you caught up with him on Crow

16   Canyon/Bollinger Canyon Road, correct?

17         A.    No.  That's where I made the traffic stop.

18         Q.    Right.  So that's where you eventually

19   stopped him?

20         A.    That's correct.

21         Q.    And so you were behind him actually for

22   about a mile before you pulled him over?

23         A.    That sounds about right.

24         Q.    You contacted Mr. Turner -- you contacted

25   him through the window, correct?

26         A.    Mr. Who?

27         Q.    I'm sorry.  Mr. Eli.

28         A.    What was the question?

12

1      Q.    You contacted him through the window of
2    his vehicle?
3      A.    Yes.
4      Q.    And he asked you what you were pulling him
5    over for, didn't he?
6      A.    I don't remember.
7      Q.    And you said you were pulling him over for
8    speeding, didn't you?
9      A.    I don't remember that.
10      Q.    And do you remember him telling you he
11    couldn't have been speeding?
12      A.    No.
13      MS. LICHT:  Objection.  Misstates testimony.
14      THE COURT:  Overruled.
15      MS. GARRIDO:
16      Q.    And then you said, "Well, you didn't stop
17    when you made that turn," correct?
18      A.    I don't remember telling him.
19      Q.    You don't remember telling him?
20      A.    I don't remember the conversation at that
21    point.
22      Q.    Do you remember telling him what you were
23    pulling him over for?
24      A.    I don't remember specifically.
25      Q.    Do you remember saying anything to him
26    when you initially stopped him?
27      A.    I don't remember the specific words of
28    conversation that I had at the window.

13

1        Q.    Okay.  Do you recall him telling you that

2   the light was red, so he must have stopped before

3   making that turn?

4        A.    I don't remember.

5        Q.    Do you recall having seen him smoking a

6   cigar?

7        A.    I can't remember if I saw him smoking it

8   or if he told me that he had smoked it.  I'm not sure

9   if I remember seeing him smoke one.

10       Q.    Do you recall asking him what he was

11  smoking?

12       A.    No.

13        MS. LICHT:  Objection, your Honor.  Goes beyond

14  the scope of defense motion.

15        THE COURT:  No.  Overruled.

16        MS. GARRIDO:

17       Q.    Isn't it true that you've lied under oath

18  before, Officer?

19        MS. LICHT:  Objection.

20        THE COURT:  I think that's going a little bit

21  far afield.  Do you have a good faith belief that

22  there is a basis for this?  In other words, do you

23  have a transcript?

24        MS. GARRIDO:  Yes, your Honor, I do.

25        THE COURT:  All right.  Let's show it to the

26  other side, and let me see it.

27        MS. LICHT:  Your Honor, the People move to

28  exclude this line of questioning as irrelevant to this

14

```
 1   particular case.
 2           THE COURT:  All right.  Let me take a look at
 3   this.  I've been handed a reporter's transcript of
 4   proceedings November 27th, 2006 of a 1538 that date
 5   before Judge Treat, so is there a page number?
 6           MS. GARRIDO:  Your Honor, there are multiple
 7   aspects throughout that hearing where the officer's
 8   credibility was in question, so perhaps it might be
 9   easiest to move to argument and judge's finding.
10           THE COURT:  Okay.  Where does the argument
11   begin?
12           MS. GARRIDO:  I apologize.  I don't have the
13   page number.  I might be able to flip through it more
14   quickly if you would like me to.
15           THE COURT:  Let me just take a look.
16              (Court reviews document.)
17           THE COURT:  All right.  Back on the record.
18   Page 61 at lines 5 through 8, is that what you're
19   referring to, the last paragraph of the transcript?
20           MS. GARRIDO:  That was the judge's finding,
21   your Honor.
22           THE COURT:  Did you see -- do you have a copy
23   of it?
24           MS. LICHT:  I do, your Honor.
25           THE COURT:  Page 61, lines 5 through 8.
26           MS. LICHT:  I see that.
27           THE COURT:  So what's the objection?
28           MS. LICHT:  The objection is that it's not
```

15

1    relevant to this particular proceeding given the

2    reasoning behind the Court's statement that the

3    officer was trolling for drunk drivers.  I believe

4    that has nothing to do with the issue at hand in this

5    case in this particular matter.

6         THE COURT:  Well, you left out the last clause

7    of the sentence.

8         MS. LICHT:  That he was picked on, this

9    defendant, because of his race.

10        THE COURT:  Right.  The defendant in the

11   current case is black.

12        MS. LICHT:  I see that, your Honor.  But I

13   believe that the officer's made a valid traffic stop

14   and stops people of all races, I'm sure, on a regular

15   basis, and the People have shown that it's for a valid

16   Vehicle Code violation and not as a result of the

17   defendant's race.  As Officer Ingrassia has testified,

18   he couldn't even see the actual defendant in the car

19   when he pulled him over.

20        THE COURT:  Well, the issue is, can Ms. Garrido

21   ask him -- you can ask him questions based on the

22   transcript within the limited area of establishing

23   attacks on his credibility, but I think the last

24   question was improper the way that it was stated.

25        So Derrik, would you give Ms. Garrido back her

26   transcript.

27        So the objection by the D.A. is overruled.

28        Continue, Ms. Garrido.

16

1          MS. GARRIDO:  Thank you, your Honor.

2          Q.    Officer, isn't it true that you have

3    engaged in racial profiling in the course of your

4    duties in the past?

5          A.    No.

6          MS. LICHT:  Objection.

7          THE COURT:  And there was a very small

8    objection that was made by the D.A., which I'm going

9    to sustain.  The issue about the credibility is one

10   that I'm willing to let you get into, but now we're

11   expanding it, and I understand the reason based on the

12   part of the transcript, but I think under 352 I'm

13   going to allow you to get into the specific issue of

14   the finding in that case as it relates to the

15   credibility of this witness.

16          So proceed.  I will take judicial notice of

17   Judge Treat's finding and ruling in that case.

18          MS. GARRIDO:  Thank you, your Honor.  You want

19   me to only question the witness regarding

20   Judge Treat's finding in that case?

21          THE COURT:  Well, okay.  It's 20 minutes to

22   3:00.  I think you made your point, Ms. Garrido, about

23   attempting to impeach this witness.  You gave me the

24   transcript.  I reviewed the transcript.  I reviewed

25   the Court's ruling, and I've taken judicial notice of

26   it.  So how much further do you want to go?

27          MS. GARRIDO:  No further questions, your Honor.

28          THE COURT:  All right.  Anything further of

17

1    this witness?

2            MS. LICHT:  Yes, your Honor.

3                    REDIRECT EXAMINATION

4    BY MS. LICHT:

5        Q.    Can you just tell this Court again,

6    Officer Ingrassia, why you pulled the defendant over?

7        A.    I pulled him over because he committed a

8    violation of Vehicle Code Section 21453(a).

9        Q.    Do you pull over -- do you pull people

10   over for multiple traffic violations on occasion?

11       A.    Yes.

12       Q.    Do you always detail every specific

13   violation in your reports?  Say, for example, if --

14           MS. GARRIDO:  Objection.  Relevance.

15           THE COURT:  No.  Overruled.  It goes to the

16   issue of credibility.  Go ahead.

17           MS. LICHT:

18       Q.    Just to clarify that question, defense

19   counsel referenced speeding and indicated you may have

20   pulled the defendant over for speeding or may have

21   told him that.  If that was true, is it possible that

22   you would have neglected or decided not to include

23   that in your report, that violation?

24       A.    Well, I may have thought he was speeding

25   but didn't have enough proof to put it in the report

26   because of a no radar.

27           MS. GARRIDO:  Objection.  This is purely

28   speculative, your Honor.

18

 1          THE COURT:  I'm going to sustain it again under
 2   352.  We need to move on.  So if you have any redirect
 3   that references the cross, proceed.
 4          MS. LICHT:  Nothing further, your Honor.
 5          THE COURT:  Okay.  Anything else?
 6          MS. GARRIDO:  Nothing, your Honor.
 7          THE COURT:  All right.  You can step down,
 8   Officer.
 9          All right.  Any other witnesses or evidence?
10          MS. LICHT:  No, your Honor.
11          THE COURT:  Defense?
12          MS. GARRIDO:  Defense calls Mr. Eli to the
13   stand.
14          THE COURT:  Okay.  Mr. Eli, if you'd step
15   forward to be sworn.  When you get to the chair, if
16   you'd just raise your right hand to be sworn, sir.
17
18                       RAYMOND ELI,
19        called as a witness by the Defense being first
20        duly sworn by the Clerk, testified as follows:
21
22          THE CLERK:  Please be seated.  Please state
23   your name for the record, and please spell your name.
24          THE WITNESS:  Raymond Eli, R-a-y-m-o-n-d E-l-i.
25          THE COURT:  All right.  Proceed.
26                    DIRECT EXAMINATION
27   BY MS. GARRIDO:
28          Q.    Good afternoon, Mr. Eli.

19

```
1          A.    How are you doing?

2          Q.    So September 15th, 2006 at about 1:20 in

3     the morning, where were you?

4          A.    Leaving the Sierra Hotel visiting my

5     cousin that was here on business.

6          Q.    And were you in San Ramon?

7          A.    Yes.

8          Q.    And did you notice a police officer?

9          A.    No, I did not.

10         Q.    And what were you doing as you were

11    driving?

12         A.    I proceeded out the hotel, made a right.

13    I came to the stop at San Ramon and Crow Canyon.  This

14    is a big street, so I definitely had to make a stop

15    before I made the right turn.  I proceeded to make the

16    right turn.  I didn't notice the police officer at

17    least five blocks down until I seen him behind me.

18    Initially, I lit a cigar in my car.  Then I --

19         Q.    Let's try and take this a little bit by

20    little bit.  When did you light the cigar?

21         MS. LICHT:  Objection.  Relevance.

22         THE COURT:  No.  Overruled.

23         MS. GARRIDO:

24         Q.    Was it prior to making a turn?

25         A.    No, it was not.  It was after.

26         Q.    Okay.  So right after or how shortly

27    thereafter?

28         A.    About five blocks down.
```

20

1    Q.    And that's when you also noticed the

2    police officer?

3    A.    Yes.

4    Q.    Had you stopped fully before turning

5    through the intersection?

6    A.    Yes.

7    Q.    And is that because the light was red?

8    A.    Yes.

9    Q.    How long after you noticed the police

10   officer behind you until he pulled you over?

11   A.    I noticed him at least five blocks down,

12   and I wasn't actually stopped until about ten blocks

13   down from the initial turning.  If it was the fact

14   that I made the turn, didn't stop at the red light, I

15   should have been stopped within one or two blocks.

16   MS. LICHT:  Objection.  Nonresponsive.

17   THE COURT:  Overruled.  Ask your next question.

18   MS. GARRIDO:

19   Q.    And after he pulled you over, did you ask

20   the officer anything?

21   A.    I asked him why I was being pulled over.

22   Q.    What did he tell you?

23   A.    He told me I was speeding.

24   Q.    Did you respond to that?

25   A.    I told him I was not.

26   Q.    And then what did he say?

27   A.    He asked me for my license and

28   registration, which is true, I did tell him they may

21

1    be in the trunk.  Gave him the California ID along

2    with my insurance.

3        Q.    Did he give you another alternate

4    justifying for stopping you after you told him that

5    you weren't speeding?

6        A.    Not at that point.  He was gathering the

7    information.  Then I asked him again that I was not

8    speeding, and he said, "Well, you didn't stop at the

9    red light."  And I told him I did.

10        Q.    Okay.  And how are you so sure that you

11    did?

12        A.    Because at Crow Canyon, that's a large

13    intersection.  I mean, it's 1:00 o'clock, 2:00 o'clock

14    in the morning, of course, being.  It's a major

15    highway, I mean major street, so it's not one of those

16    small two-lane streets.  It's two, you know, two cars

17    on one side and two on the other, so it's a large

18    intersection.  Common sense would say stop before you

19    make that right turn.

20        Q.    Okay.  Now, did the officer ask you about

21    your cigar?

22        A.    He did.

23        Q.    What did he say?

24        A.    He asked me what did I light.  I told him

25    it was a Black and Mild.  He told me that it smelled

26    good before he walked away.

27        Q.    Did he ask you -- so initially, did he ask

28    you what you were smoking?

22

1    A.    He did.

2    MS. GARRIDO:  Nothing further.

3    THE COURT:  Cross?

4    MS. LICHT:  Nothing, your Honor.

5    THE COURT:  All right.  You can step down, sir.

6    THE DEFENDANT:  Thank you.

7    THE COURT:  Any other evidence from the

8    defense?

9    MS. GARRIDO:  No, your Honor.

10    THE COURT:  All right.  Argument?

11    MS. LICHT:  Your Honor, Officer Ingrassia

12    testified that he --

13    MS. GARRIDO:  I apologize, your Honor.  I'm

14    sorry.  Before we get -- I would like to move this

15    transcript into evidence.

16    THE COURT:  Well, is it certified?

17    MS. GARRIDO:  It has been.  It is a copy, your

18    Honor, and it has been certified by Juanita Gonzalez,

19    the court reporter.

20    THE COURT:  We'll mark it and admit it.

21    Certainly as it relates to anything that I've heard on

22    the last page, the Court has considered taking

23    judicial notice of it as the Court's ruling.  I'm

24    sorry, go ahead.

25    (Defense Exhibit A was marked for

26    identification and admitted into evidence.)

27    MS. LICHT:  That's okay.  Officer Ingrassia

28    testified that he saw the defendant roll through a

23

1  right turn.  Didn't make a complete stop.  He was

2  going seven to ten miles per hour, and he presumably

3  pulled him over at a point which was safe to pull the

4  defendant over.  Officer Ingrassia testified that he

5  could not see the actual defendant in the car at the

6  time he pulled him over or the time that he's on

7  Vehicle Code Section 21453 subdivision (a).

8          The People would request that the Court take

9  notice this was a valid stop and all evidence obtained

10 pursuant to that stop be admissible.

11         THE COURT:  Thank you.

12         MS. GARRIDO:  Your Honor, it's the defense

13 contention that Mr. Eli did in fact stop at this red

14 light prior to making a turn.  His reasons for doing

15 so made perfect sense.  I believe he has testified

16 credibly here before the Court.  It doesn't make much

17 sense that the officer would pull Mr. Eli over and

18 then proceed to follow him for about a mile before

19 deciding then to pull him over for the traffic

20 violation at 1:30 in the morning when it would have

21 been very easy to pull him over directly after

22 observing him supposedly make this Vehicle Code

23 violation.

24         This officer has in the past been found by

25 Judge Treat to have engaged in racial profiling in the

26 course of his duties.  Under Penal Code Section

27 13519.4, this is clearly illegal and impermissible

28 basis on which to stop somebody.  And in fact, it

24

1    seems that the officer may have just been following

2    behind Mr. Eli trying to see what he was doing,

3    wondering what he was smoking, and then pulled him

4    over to investigate further potentially based on his

5    race.

6         Also, in the Bhatnagar case, the one which the

7    Court has taken judicial notice of Judge Treat's

8    ruling, implicit in that ruling was that the officer

9    falsified the reason for the stop.  Again, here this

10   is the defense contention that the officer has

11   falsified the reason for stopping Mr. Eli.

12        And under People v. Rodriguez, a 2006 case 143

13   Cal.App.4th 1137, wherever an officer invents a reason

14   for a stop, all subsequent evidence deriving from that

15   stop must be suppressed regardless of whether the

16   officer found other subsequent reasons to detain the

17   suspect.

18        For those reasons, I would ask that the motion

19   to suppress be granted.

20        THE COURT:  I'm familiar with the case.  Give

21   me the transcript again, would you, Jennifer.

22        All right.  I've heard the officer testify.  I

23   don't recall if he's testified in my court before.  If

24   he did, I don't remember.  Certainly, Mr. Eli

25   testified credibly as well and if all things were

26   equal, obviously, it would be difficult enough as it

27   is, but given the fact that Mr. Eli is

28   African-American and at page 61 of the transcript,

1   Judge Treat where he indicates, "I do not credit the[25]

2   officer's testimony.  It appears to me as most

3   credible, that the officer was trolling for drunk

4   driving across from a bar and picked on this defendant

5   because of his race."

6          Now, I don't know what the race was of the

7   person involved in case 127484-4, but that's a pretty

8   significant finding.

9          I don't agree with your general comment,

10  Ms. Garrido, that he made a specific finding about

11  racial profiling.  I didn't see it, but regardless in

12  terms of credibility, I'll find that the motion should

13  be granted.  The motion is granted.  Case is dismissed

14  on the Court's own motion.

15               (Whereupon, the proceedings were concluded.)

16                        ---oOo---

17

18

19

20

21

22

23

24

25

26

27

28

26

STATE OF CALIFORNIA        )

                           )  ss.

COUNTY OF CONTRA COSTA )


        I, DINA THOMPSON, do hereby certify:

        That I am a Certified Shorthand Reporter of the

State of California; that I was duly appointed

shorthand reporter by the above-named Court in the

foregoing entitled Court and cause;

        That on the 5th day of February, 2007, I fully,

truly, and correctly took down in shorthand writing

all of the proceedings had and all of the testimony

given in said Court and cause at the hearing in said

matter;

        That I thereafter fully, truly and correctly

transcribed the same into typewriting; that the

foregoing pages 1 through 25 is a full, true and

correct transcript of my shorthand notes taken at said

hearing and at the time and place therein named.

        IN WITNESS WHEREOF, I have hereunto set my hand

this __9th__ day of _February_, 2007.




                           _Dina Thompson_____

                           DINA M. THOMPSON, CSR NO. 9693