SILVANO B. MARCHESI (SBN 42965)
County Counsel
GREGORY C. HARVEY(SBN 47974)
Assistant County Counsel
COUNTY OF CONTRA COSTA
651 Pine Street, 9th Floor
Martinez, California 94553
Telephone:  (925) 335-1800
Facsimile:   (925) 335-1866
Electronic mail: gharv@cc.cccounty.us

Attorneys for Defendants
COUNTY OF CONTRA COSTA
and CITY OF SAN RAMON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABHINAV BHATNAGAR,<br><br>            Plaintiff<br><br>v.<br><br>JASON INGRASSIA, COUNTY OF CONTRA COSTA, and CITY OF SAN RAMON,<br><br>            Defendants. | Case No. CV07-02669 CRB<br><br>DEFENDANTS CONTRA COSTA COUNTY AND CITY OF SAN RAMON'S OPPOSITION TO PLAINTIFF'S MOTIONS IN LIMINE (1) TO ADMIT EVIDENCE OF THE FINDINGS OF CERTAIN STATE COURT PROCEEDINGS AND (2) TO FIND THAT DEFENDANTS ARE COLLATERALLY ESTOPPED BY THE FINDINGS IN THE STATE COURT PROCEEDINGS. |

1

TABLE OF CONTENTS

2

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

TABLE OF DECLARATIONS AND EXHIBITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  THE FINDINGS IN THE STATE PROCEEDINGS ARE NOT APPROPRIATE FOR
     THE APPLICATION OF COLLATERAL ESTOPPEL BECAUSE THE
     DEFENDANTS WERE NOT PARTIES NOR IN PRIVITY WITH PARTIES TO
     THOSE PROCEEDINGS UNDER THE LAW AND DID NOT HAVE A FULL AND
     FAIR OPPORTUNITY TO LITIGATE THE ISSUES. . . . . . . . . . . . . . . . . . . . . . . 5

IV.  THE COURT SHOULD EXCLUDE THE FINDINGS FROM THE STATE COURT
     ACTIONS AND THE LETTER FROM THE DISTRICT ATTORNEY. . . . . . . . . . 12

VI.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

SUMMARY OF ARGUMENT

2    The plaintiff moves that this court apply the doctrine of collateral estoppel to findings

3 made by a number of courts granting a number of motions to suppress, dismissing a traffic

4 violation, and on a drivers license reinstatement petition in an Administrative Per Se hearing

5 before the Department of Motor Vehicles.  The plaintiff also moves for admission of those

6 findings as evidence either on direct examination or for impeachment purposes.

7    Defendants County of Contra Costa and City of San Ramon object to the plaintiff's

8 request for application of collateral estoppel against Officer Ingrassia, the County and City on

9 the grounds that none of these defendants were a party to, or in privity with a party to, any of

10 the underlying actions, and did not have a full and fair opportunity to litigate as required by

11 due process.  See *Lucido v. Superior Court*, 51 Cal.3d 335, 341 (1990); *Blonder-Tongue*

12 *Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 329 (1971).

13    The County's relationship to the district attorney is not sufficient to constitute a basis

14 for privity because when the district attorney files and prosecutes criminal cases, he or she acts

15 as an agent of the State, not as that of the County or the City.    Thus application of the

16 doctrine would result in a denial of due process.  *Pitts v. County of Kern.* 17 Cal.4th 340, 352-

17 62 (1998) and *Weiner v. San Diego County,* 210 F.3d1025, 1029 (9th Cir. 2001).

18    Court findings made on the granting of a motion to suppress are not binding on the

19 arresting officer in the subsequent civil rights action because the officer is not a party in privity

20 with the state and does not have an opportunity to fully and fairly litigate in the criminal

21 proceeding.  *Davis v. Eide*, 439 F.2d 1077, 1078 (9th Cir. 1971) (recently discussed in the

22 opinion of Judge Thelton Henderson in *Yesek v. Mitchell*, 2007 U.S.Dist.LEXIS 778

23 (N.D.Cal.), and other cases discussed in the brief).  The cases cited by plaintiff are

24 distinguished in the memorandum in opposition.

25    Defendants County of Contra Costa and City of San Ramon object to the plaintiff's

26 motion to admit as evidence the findings from the hearings listed in the motion and a notice to

27 DMV by the district attorney.   Such evidence is inadmissible hearsay which should be barred

28 under Federal Rules of Evidence because it is both hearsay and highly prejudicial.  See Rules

103(c), 802, and 403 as more fully set forth in *United States v. Boulware*, 384 F.3d 794, 806 (9th Cir. 2004) and *United States v. Sine*, 493 F.2d 1021, 1032-34 and 1036-37 and fns. 12 and 13 (9th Cir.2007); see also *Nipper v. Snipes*, 7 F.3d 415, 418 (4th Cir. 1993).

In addition to the above reasons, the motions should be denied and plaintiff instructed not to introduce such evidence directly or indirectly on cross-examination because there is significant documentary and other evidence that indicates that the findings are wrong both in the facts and on the legal effect of the evidence before the courts that made them.

TABLE OF DECLARATIONS AND EXHIBITS

| DECLARATIONS | |
|---|---|
| **NO.** | |
| 1. | DECLARATION OF TED ANDERSON |
| 2. | DECLARATION OF BARBARA HOULIHAN |
| 3. | DECLARATION OF STEPHANIE WILLIAMS |
| 4. | DECLARATION OF GREGORY HARVEY |

| EXHIBITS | | |
|---|---|---|
| **EXH.** | **DESCRIPTION** | **FOUNDATION CITATION** |
| A. | Hearing Officer Lee's findings on DMV hearing for suspension of Bhatnagar's drivers license dated October 16, 2006. | Declaration of Harvey, ¶¶ 3-4 |
| B. | Communications dispatch logs for Officers Ingrassia and Jones for May 20, 2006. | Declaration of Houlihan, ¶¶ 5-6 Declaration of Anderson, ¶¶ 23a-23d |
| C. | Police report for the arrest of Abhinav Bhatnagar for May 20, 2006. | Declaration of Ted Anderson, ¶ 23g |
| D. | Excerpts from the deposition of Abhinav Bhatnagar taken on October 17, 2007 (Sub-exhibits D-1 through D-9). | Declaration of Harvey, ¶¶ 6a-6f |
| E. | Excerpts and dxhibits from the deposition of Jonathon Young taken on January 22, 2008 (Sub-exhibits E-1 through E-6). | Declaration of Harvey, ¶¶ 5a-5h |
| F. | Blood Alcohol Report on blood of Abhinav Bhatnagar from May 20, 2006. | Declaration of Williams, ¶ 13 |
| G. | Photograph and aerial map depicting the location of the Valero Gas Station, Central Park and the intersection of Bollinger Canyon Road and Bishop Ranch East. (Sub-Exhibits G1 and G2). | Declaration of Harvey, ¶¶ 7a-7b |
| H. | Proof of Service of the Complaint in this action dated August 8, 2007. | Declaration of Harvey, ¶ 8 |
| I. | Collation of First Page of Arrest Reports by Jason Ingrassia showing race of arrestees for DUI and Locations. (Sub-exhibits I-1 and I-2). | Declaration of Anderson, ¶¶ 4-7 |
| J | Telephone bill for Abhinav Bhatnagar showing times of calls for relevant periods on May 19-20, 2006. | Declaration of Anderson, ¶ 8 |

| EXH. | DESCRIPTION | FOUNDATION CITATION |
|------|-------------|---------------------|
| K. | Transmission envelope showing chain of custody of sealed vials containing blood of Abhinav Bhatnagar from the arrest of May 20, 2006. | Declaration of Williams ¶ 14 |
| L. | Excerpts of deposition testimony of Marcus Compagna taken December 4, 2007 (Sub Exhibits L-1 through L-8). | Declaration of Harvey ¶¶ 12a-12l |
| M. | Statement of Compagna provided by Bhatnagar. | Declaration of Anderson ¶ 9 |
| N. | Statement of Garrison provided by Bhatnagar. | Declaration of Anderson ¶ 9 |

1
TABLE OF AUTHORITIES

2
CASES

3   *Allen v. McCurry,* 449 U.S. 90 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

4   *Blonder-Tongue v. University Foundation*, 402 U.S. 313 (1971) . . . . . . . . . . . . . . . . . . . . . . 5

5   *Booker v. Ward*, 94 F.3d 1052 (7th Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-11

6   *Citizens for Open Access,* 60 Cal.App.4th 1053 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

7   *Clemmer v. Hartford Insurance,* 22 Cal.3d 865 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

8   *Davis v. Eide*, 439 F.2d 1077 (9th Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

9   *Duncan v. Clements*, 744 F.2d 48 (8th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

10  *Faulkner v. County of Kern,* 2006 U.S.Dist. LEXIS 44151 (US Dist Court, E.D. Cal.) . . . . . . 8

11  *Gikas v. Zolin*, 6 Cal.4th 841 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

12  *Hardesty v. Hamburg TWP*, 461 F.3d 646 (6th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

13  *Hernandez v. City of Los Angeles*, 624 F.2d 935 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . 7

14  *Kremer v. Chemical Construction Corp.*, 456 U.S. 461(1982) . . . . . . . . . . . . . . . . . . . . . . . . 1

15  *Lucido v. Superior Court*, 51 Cal. 3d 335 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

16  *McCoy v. Hernandez*, 203 F.3d 371 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

17  *Migra v. Warren City Sch.Dist.*, 465 U.S. 75 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9

18  *Montana v. United States*, 440 U.S. 147 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

19  *Nipper v. Snipes*, 7 F.3d 415 (4th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

20  *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

21  *Patzner v. Burkett,* 779 F.2d 1363 (8th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

22  *Pennsylvania Bd. of Probation & Parole v. Scott*, 524 U.S. 357 (1998) . . . . . . . . . . . . . . . . 12

23  *People v. Sims,* 32 Cal.3d 468 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

24  *Pitts v. County of Kern,* 17 Cal.4th 340 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

25  *Townes v. City of New York*, 176 F.3d 138 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 12

26  *Tropman v. Valverde,* 40 Cal.4th 1121(2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

27  *Turpin v. The County of Rock, Nebraska*, 262 F.3d 779 (8th Cir. 2001) . . . . . . . . . . . . . . . . 10

28  *United States v. Boulware*, 384 F.3d 794 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

1   *United States v. Calandra*, 414 U.S. 338 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

2   *United States v. Geophysical Corp.*, 732 F.2d 693 (9th Cir. 1984) . . . . . . . . . . . . . . . 6, 14, 15

3   *United States v. Sine*, 493 F.3d 1021 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

4   *Weiner v. San Diego County*, 210 F.3d 1025 (9th Cir.2001) . . . . . . . . . . . . . . . . . . . . . . . . . 8

5   *Williams v. Kobel*, 789 F.2d 463 (7th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

6   *Willis v. Mullins,* 2005 U.S.Dist. LEXIS 39888 pp., 14-28 (E.D. Cal. 2005) . . . . . . . . . . . . 9

7   *Yezek v. Mitchell*, 2007 U.S.Dist.LEXIS 778 (N.D. Cal. 2007)        . . . . . . . . . . . . . . . 8, 9

8

9   STATUTES AND RULES

10  California Vehicle Code, section 40300.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

11  California Welfare & Institutions Code, section 10001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

12  California Welfare & Institutions Code, section 10053 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

13  California Welfare & Institutions Code, section 10531 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

14  California Welfare & Institutions Code, section 10532 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

15  California Welfare & Institutions Code, section 10600 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

16  California Welfare & Institutions Code, sections 10950-10967 . . . . . . . . . . . . . . . . . . . . . . . 7

17  Federal Rules of Evidence, Rule 103 (c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

18  Federal Rules of Evidence, Rule 403  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

19  Federal Rules of Evidence, Rule 801 (c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

20  Federal Rules of Evidence, Rule 802 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

21  Federal Rules of Evidence, Rule 802  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

22

23

24

25

26

27

28

1

## I. INTRODUCTION

2

3        An essential element of constitutional due process is that before a person can be bound

4    by findings of law or fact arising from a judicial proceeding or administrative hearing, he or

5    she must have been afforded a full and fair opportunity to litigate the issue in that proceeding

6    or hearing. *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 480-81 (1982). This

7    principle underlies the requirement of privity in the application of the doctrine of collateral

8    estoppel. Plaintiff urges the court to ignore binding California, Ninth Circuit and United

9    States Supreme Court authority relative to the concept of privity and to rule that the findings of

10    state superior court criminal proceedings and California Department of Motor Vehicle

11    licensing hearings are binding on defendants County, City and Ingrassia under the doctrine of

12    collateral estoppel. The court should deny this motion because said defendants were not

13    parties and not in privity with parties in those proceedings.[1]

14        Plaintiff also moves to admit evidence and to be allowed to cross examine witnesses on

15    the findings made by the superior court and administrative law judges in these hearings. The

16    plaintiff's request is contrary to applicable Ninth Circuit authority holding that such findings

17    are inadmissible hearsay and should not be referred to, even in examination. The District

18    Attorney's Administrative Per Se notice (Pltf. Mtn., Exh. 5) is also inadmissible hearsay.

19        In presenting these motions before this court (just as they failed to do in the proceedings

20

21        [1] Two of the proceedings do not even involve Mr. Bhatnagar, but rather a Raymond Anthony

22    Eli and Richard Eugene Smith. In *People v. Eli*, Ms. Diane Garrido, who was also Mr. Bhatnagar's
    public defender, used the findings of Judge Treat in the motion to suppress in *People v. Bhatnagar*,

23    127484-4 to influence the finder of fact. (See Exhibit 10 to plaintiff's motion,13:17-16:17 and 23:12-
    25:14.) In *People v. Smith*, the same tactic was used by defense counsel. (See Exhibit 11 to plaintiff's

24    motion, 11:26-13:3.) On the same day that Officer Ingrassia was to testify in *Smith*, shortly before he
    was called, the officer was served with this federal civil rights lawsuit at the courthouse by Mr.

25    Bhatnagar's current counsel, Jenny Huang. (See Pltf. Mtn., Exh. 11, 66:3-9 and Def. Opp. Exh. H.,
    indicating that he was served at the Superior Court.) The effect on the trier of the fact was clear (see

26    Exhibit 11, 66:10-21), and the court dismissed the case against Mr. Smith for insufficient evidence.
    Judge Treat's ruling was again used in the DMV hearing before Hearing Officer Beireis-Molnar

27    (Exhibit 6 to plaintiff's motion, 3:13-4:6). In the proceeding before Commissioner Golub, Ms. Huang
    had the court take judicial notice of the transcript of the proceedings before Judge Treat and his

28    findings, and argued the findings. (Exhibit 8 to plaintiff's motion, 9:13-11:13 and 30:2-4.)

1    before the superior courts referred to in plaintiff's motion), neither Mr. Bhatnagar nor his

2    counsel have informed the court of the findings in the *first* hearing relating to the legality of

3    Mr. Bhatnagar's arrest.  DMV Hearing Officer Lee, after hearing two days of evidence (see

4    Exhibit 4 to plaintiff's motion) came to exactly the opposite conclusion in his opinion on

5    October 16, 2006 from the findings that Judge Treat was to reach on November 27, 2006.  In

6    extensive written findings, Administrative Law Judge Lee found that Officer Ingrassia, who

7    testified at this October 16, 2006 hearing, was credible, and Mr. Bhatnagar and his witnesses

8    had credibility problems.  He found the stop legal, the arrest valid and the charge supported by

9    valid evidence, and formally suspended Mr. Bhatnagar's license.  (Def. Opp., Exh. A.)

10                                              II.  FACTS

11        On May 20, 2006 at approximately 1:08 a.m., Officer Jason Ingrassia was headed

12   westbound on Bollinger Canyon Road.  He had just checked out San Ramon's Central Park[2]

13   across from the Valero Gas Station.[3]  He observed Mr.  Bhatnagar making an illegal U-turn at

14   the intersection of Bishop Ranch East and saw him as he turned into the gas station. (Pltf.

15   Mtn., Exh.10, 6:6-20.)   He radioed dispatch that he was making a traffic stop. (Def.Opp.

16   Exh.B.)

17        When Ingrassia made contact with the vehicle's driver at the gas station, Abhinav

18   Bhatnagar has indicated that he wasn't aware that it was a traffic stop.  (Pltf. Mtn., Exh. 4,

19   109:15-24, 110:2-24.)   Bhatnagar had an odor of alcohol on his breath and his eyes were red.

20   (Def. Opp., Exh. C, p. CC101.)  Bhatnagar admitted that he had been drinking.  (Def. Opp.,

21   Exh. D-1, 299:16-24.)  He also admitted that he had just driven into the gas station to buy gas.

22

23   _____

24        [2]  Although the officer did not recall where he was or what he was doing when he first saw
     Bhatnagar at the time he testified before Judge Treat, the dispatch log from that night documents what
     he was doing just prior to contacting Mr. Bhatnagar for a traffic stop.  It also documents that the officer
25   had been responding to calls throughout the City of San Ramon that evening – not hanging out at a gas
     station waiting for non Caucasians to come in to charge with drunk driving, as erroneously found by
26   the superior court.  Unfortunately neither the officer nor the superior court had the log available at the
     time of Mr. Bhatnagar's motion to suppress.  (See Def. Opp., Exh. B and Decl. of Anderson, ¶¶ 23a-
27   d.)

28        [3]  See the aerial photograph of the location of the park, Def. Opp., Exh. H.

1  (Def. Opp., Exh., D-1, 299:16-24.)  Bhatnagar told the officer that he had only had two drinks,

2  but had been drinking cough medicine all day (Def. Opp., Ex. D-2, 293:18-294:20) and that

3  his red and watery eyes were because his contacts were bothering him. (Pltf. Mtn., Exh. 4,

4  110:2-8.)  Bhatnagar wanted to cooperate with Officer Ingrassia's investigation because he had

5  a relative that had been killed by a drunk driver and he wanted to do anything he could to keep

6  drunk drivers off the road.  (Def. Opp., Exh. D-3, 291:21-293:22.)  Bhatnagar agreed to take a

7  field sobriety test.  He recalls parts of it, and he believes he did well – even though he is

8  unqualified to say so because he does not know what officers are trained to look for. (Def.

9  Opp. Exh. D-4 through D-5, 167:11-168:3, 310:5-311:7.)  Mr. Bhatnagar was then asked to

10  blow into a preliminary alcohol screening device (PAS) and did so several times (Def. Opp.

11  Exhs. D-6 and D-, 168:8-18; 311:8-312:8).  He blew a blood alcohol level of .095% and a

12  repeat level of .096% on a preliminary screening device on the scene just prior to his arrest.

13  (Def. Opp., Exh. C, p. CC102.)  He was then placed under arrest.  (Def. Opp., Exh. D-8,

14  169:20-170:17.)  Mr. Bhatnagar was taken to the police station where his blood was taken at

15  2:30 a.m. by phlebotomist Jonathon Young, who sealed the vial  marked with the number

16  34644. This is the same number that is on the Blood Alcohol Content (BAC) Report  (Pltf.

17  Mtn., Exh. 4; Def. Opp., Exhs. E1-E6, 25:11-26:12; 31:15-36:25, 38:1-39:3 and Exhibits 2, 3

18  and 4 to the deposition of Jonathan Young.)  When tested using scientifically recognized

19  techniques at the crime lab by certified forensic alcohol analyst Stephanie Williams, the blood

20  yielded a blood alcohol result of 0.09%.  (Def. Opp., Exhs. F and K; Decl. of Stephanie

21  Williams, ¶¶ 1-14.)

22        The legal limit for driving in California is 0.08%.  Cal. Veh. Code § 23152.  There are

23  only two elements to the offense: (1) driving (2) with a blood alcohol over 0.08%.  *Id.*  The

24  officer does not have to observe the driving to take the individual into custody to perform a

25  blood alcohol test to preserve evidence if the officer has reasonable cause to believe the

26  offense has been committed.  *Tropman v. Valverde*, 40 Cal.4th 1121, 1136, fn 11 (2007); Cal.

27  Veh. Code § 40300.5, subd. (e).

28        Faced with this indisputable evidence and a charge of driving under the influence, Mr.

1  Bhatnagar and his public defender counsel chose to attack the officer as a liar and a racist in a

2  hearing on a pretrial motion to suppress the evidence of his DUI.  (Pltf. Mtn, Exh.3.)  After

3  Mr. Bhatnagar and his lawyers were successful in this attack, members of the public

4  defender's office and the alternate defender's office then used Mr. Bhatnagar's testimony and

5  the findings of Judge Treat on the motion to suppress in two subsequent unrelated criminal

6  proceedings involving other defendants, *People v. Eli* and *People v. Smith,* as Ms. Huang did

7  in Bhatnagar's citation hearing in front of Commissioner Golub, claiming that the officer had

8  manufactured the reason for the stop in each case.  (See fn.1, *supra*.)   In each of these superior

9  court proceedings the parties were the People of the State of California and the individual

10  defendant, not the County, the City of San Ramon or Officer Ingrassia.  Ingrassia appeared

11  only as a witness to the events as the arresting officer.

12    With the evidence of the blood alcohol of 0.09%, the red and watery eyes, alcoholic

13  breath and the PAS results excluded, the District attorney abandoned the case and requested

14  the superior court to dismiss the misdemeanor drunk driving charge.[4] (Pltf. Mtn., Exh. 5.)  This

15  led Mr. Bhatnagar to petition the DMV to reinstate his license on the ground that he had been

16  exonerated.  In this proceeding the parties were the State of California Department of Motor

17  Vehicles and Mr. Bhatnagar.  (Pltf. Mtn., Exh. 6 and 7.)[5]

18    Neither the County nor the City had notice that their individual interests might be

19  directly affected by the hearings, did not have counsel present to protect their interests, and

20  even if they had been informed that their liability interests might have been affected by an

21  _____

22    [4]  The court will note from the transcript in Exhibit 3 to the plaintiff's motion shows that Jason
Ingrassia was called as the first witness.  His simple factual testimony relating to his stop of Mr.

23  Bhatnagar in response to the questions from the District attorney does not address any purported
charges of racism or selective prosecution. (Exhibit 3, 5:1-10:12.) Ms. Garrido then cross-examined

24  (Exhibit 3, 10:15-25:23) and redirected (Exhibit 3, 31:1-35:7.)   Officer Ingrassia left the courtroom
after his testimony because witnesses were excluded. (See 3:3-6, 26:15.)  The only question relating to

25  selective prosecution was a question of why he did not do a DUI investigation of the intoxicated white
woman in the gas station.   He responded simply that he had not observed her driving.  (Exhibit 17:9-

26  20.)

27    [5]A dismissal of a criminal complaint following a motion to suppress does not collaterally estop
the DMV Proceeding.  *Gikas v. Zolin,* 6 Cal.4th 841, 857 (1993).  The exclusionary rule does not apply

28  to certain administrative proceedings under California law.  *Id*., at 859.

1    adverse finding, there is no provision for a non-party in a criminal trial to appear and/or

2    participate by presentation of evidence on its behalf or by cross-examining the evidence

3    presented by the criminal defendant or licensee.   The defendants did not have an opportunity

4    to call or cross-examine witnesses, present evidence such as the dispatch log and other

5    evidence, to appeal the decision, or to even argue their own interests.

6        III.  THE FINDINGS IN THE STATE PROCEEDINGS ARE NOT APPROPRIATE
     FOR THE APPLICATION OF COLLATERAL ESTOPPEL BECAUSE THE
7    DEFENDANTS WERE NOT PARTIES NOR IN PRIVITY WITH PARTIES TO THOSE
     PROCEEDINGS UNDER THE LAW AND DID NOT HAVE A FULL AND FAIR
8    OPPORTUNITY TO LITIGATE THE ISSUES.

9        The findings in the state criminal and administrative proceedings are not binding on

10   Officer Ingrassia, the County or the City because none of them were parties, none of them

11   were in privity with any party, and none of them had a full and fair opportunity to litigate the

12   issues below.  The conclusive effect of a state court judgment must be determined by that

13   state's rules of preclusion.  *Migra v. Warren City Sch.Dist.*, 465 U.S. 75, 81 (1984).   The

14   California Supreme Court stated in *Lucido v. Superior Court* that courts are to apply the

15   doctrine of collateral estoppel or issue preclusion:

16       only if several threshold requirements are fulfilled. First, the issue sought to be
         precluded from relitigation must be identical to that decided in a former proceeding.
17       Second, this issue must have been actually litigated in the former proceeding. Third, it
         must have been necessarily decided in the former proceeding. Fourth, the decision in
18       the former proceeding must be final and on the merits. Finally, the party against whom
         preclusion is sought must be the same as, or in privity with, the party to the former
19       proceeding. The party asserting collateral estoppel bears the burden of establishing
         these requirements.
20
         *Lucido v. Superior Court,* 51 Cal. 3d 335, 341(1990), internal citations omitted.
21
     Regardless of state law, the requirement of identity of parties or privity is a requirement of due
22
     process of law.  *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402
23
     U.S. 313, 329 (1971).  *Lucido* holds that even if the requirements are met, collateral estoppel
24
     still may not apply.  The rule is not to be applied hypertechnically, "but with realism and
25
     rationality."  Policy considerations may limit its use and the final decision is based on whether
26
     its application in the particular circumstances "would be fair to the parties and constitute sound
27
     judicial policy."  See *Lucido* at 342-43.
28

1      Traditionally, privity referred to an interest in the subject matter of litigation acquired

2 after rendition of the judgment through or under one of the parties by inheritance, succession

3 or purchase. Privity has also been found where there is a mutual or successive relationship to

4 the same rights of property, or to such an identification of interest of one person to another as

5 to represent the same legal rights. Privity also refers to a relationship between the party to be

6 estopped and the unsuccessful party in the prior litigation which is sufficiently close so as to

7 justify the application of the doctrine of collateral estoppel. *Clemmer v. Hartford Insurance*,

8 22 Cal.3d 865, 875 (1978).

9      *Clemmer* also recognizes that collateral estoppel can be applied only if due process

10 requirements are satisfied. "In the context of collateral estoppel, due process requires that the

11 party to be estopped must have had an identity or community of interest with, and adequate

12 representation by, the losing party in the first action as well as that the circumstances must

13 have been such that the party to be estopped should reasonably have expected to be bound by

14 the prior litigation." *Clemmer, supra,* at 875. A party is "adequately represented" for

15 purposes of the privity rule "if his or her interests are so similar to a party's interest that the

16 latter was the former's virtual representative in the earlier action." *Citizens for Open Access,*

17 60 Cal.App.4th 1053, 1070 (1998); *United States v. Geophysical Corp*., 732 F.2d 693, 697 (9th

18 Cir. 1984). The primary safeguard against a violation of due process by the application of the

19 doctrine of collateral estoppel is the requirement of determining whether the party against

20 whom estoppel is asserted had a full and fair opportunity to litigate in the earlier proceeding.

21 *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 328 (1979).

22      The plaintiff cites *People v. Sims,* 32 Cal.3d 468 (1982) as authority that the County has

23 sufficient identity of interests with the State for privity purposes. However, *Sims* involves the

24 specialized area of welfare benefits under state law. In *Sims*, a criminal defendant in a welfare

25 fraud prosecution sought to collaterally estop the state based on the findings of a state hearing

26 officer in a welfare fraud appeal that no welfare fraud was committed. As the California

27 Supreme Court noted, their only concern in that case was "whether a DSS [State Department

28 of Social Services] hearing has binding effect in a collateral criminal prosecution." *Sims*,

1  *supra*, at p. 477.  Welfare is part of a state program of grants in aid to the needy under the

2  supervision of the state director of social services and administered locally by county social

3  service departments.  Cal. Welf. & Inst. Code §§ 10001, 10053, 10531, 10532, 10600.  Thus

4  the parties are the same in the criminal and administrative proceedings and the state has the

5  ability through its agent administering the program to fully litigate the rationale for the denial

6  of benefits.  The administrative hearing provided by the state legislature is the *only* way that a

7  recipient may challenge a denial of benefits. See Cal. Welf & Inst. Code §§ 10950-10967.  The

8  court ruled that public policy demanded that such administrative proceedings be subject to

9  preclusive effect in welfare fraud prosecutions – pointing out that welfare recipients generally

10 have the least financial ability to litigate repetitively.   The Supreme Court has subsequently

11 explained that *Sims* was a decision informed by "unique statutory scheme" of the welfare

12 system.  *Gikas v. Zolin,* 6 Cal.4th 841, 851(1993).  *Sims* clearly is distinguishable from cases

13 involving an arresting officer testifying in suppression hearing.

14      "A court properly applies collateral estoppel to bar a *party* from relitigating an issue

15 actually and necessarily decided in a prior proceeding based on the same or a different cause

16 of action."  See *Hernandez v. City of Los Angeles*, 624 F.2d 935, 937 (9th Cir. 1980) citing

17 *Montana v. United States*, 440 U.S. 147, 153 (1979).   *Montana* held that the doctrine of

18 collateral estoppel can also be applied "when nonparties assume control over litigation in

19 which they have a direct financial or proprietary interest and then seek to redetermine issues

20 previously resolved."  *Montana*, *supra*, at p.154.  In *Montana,* a federal contractor attacked a

21 Montana tax as unconstitutional in the Montana state courts. The federal government had a key

22 financial interest in, directed, paid for, and made key decisions in the litigation.  It was

23 undisputed in the case that the United States exercised control over the contractor's action

24 while it was pending in the Montana court.  See *Id.* at p.155.  The court held that the findings

25 of the Montana court bound the United States in a subsequent claim in federal court by the

26 United States asserting that the state tax was unconstitutional.  As the court noted, one of the

27 key aims of collateral estoppel is to preclude parties from relitigating issues in a subsequent

28 proceeding that they have had a *full and fair opportunity to litigate* in a prior proceeding.  *Id.*

1     at 153-54.

2         Ignoring relevant state and federal law, the plaintiff contends that the district attorney in

3     the underlying state prosecutions was a county employee and controlled the presentation of the

4     criminal proceedings.   Under California law, when the District attorney brings and prosecutes

5     criminal matters, he acts as an agent of the state, and not that of the County.  *Pitts v. County of*

6     *Kern,* 17 Cal.4th 340, 362 (1998) (see the extensive rationale of the California Supreme Court

7     at pp. 352-362.).   The Ninth Circuit has also adopted the Supreme Court of California's

8     analysis holding that the District attorney does not act on behalf of a county when bringing and

9     prosecuting a state criminal action.  See *Weiner v. San Diego County*, 210 F.3d 1025, 1029 (9th

10    Cir. 2001) (citing *Pitts*) and *Faulkner v. County of Kern,* 2006 U.S.Dist. LEXIS 44151, pp 49-

11    52 (US Dist Court, E.D. Cal.).   The District attorney is essentially representing the state's

12    interest in enforcing the state's criminal law and is immune from county control as noted in the

13    cited decisions when acting in the capacity of a prosecutor.  The plaintiff has offered no

14    evidence to support a claim that either the County or the City was aware of, or participated in,

15    this litigation other than by having Officer Ingrassia appear as a witness.  Nor is there any

16    evidence that the County or City had any financial or proprietary interest in the outcome of

17    either Mr. Bhatnagar's criminal proceedings or administrative hearings.

18        As to Officer Ingrassia, the plaintiff would have this court ignore binding Ninth Circuit

19    precedent holding that an arresting officer who appears as a witness in a criminal proceeding is

20    not a party and is not in privity with a party for collateral estoppel purposes.  A police officer

21    not employed by the state is not a party in privity with the state in a criminal prosecution and is

22    not subject to the doctrine of collateral estoppel in a subsequent civil rights case.  See *Davis v.*

23    *Eide*, 439 F.2d 1077, 1078 (9th Cir. 1971). This rule was applied and thoroughly analyzed last

24    year in a well reasoned opinion by Judge Thelton Henderson of this court in  *Yezek v. Mitchell*,

25    2007 U.S.Dist.LEXIS 778 (N.D. Cal.).  The plaintiffs were cited for speeding, and because

26    they were wearing Hell's Angels garb, their photos were taken.  In the hearing, the defendants

27    contested the citation by alleging that they were not speeding and the only purpose for the stop

28    was to conduct an investigation of their gang connections.  Judge Henderson found that the

1   decision of the commissioner was not collateral estoppel or issue preclusion that could be used

2   against the officer in the subsequent civil rights case because the officer was not a party to or

3   in privity with any party to the criminal proceeding.  The court cited *Davis v. Eide, supra,* and

4   *Hardesty v. Hamburg TWP*, 461 F.3d 646, 651 (6th Cir. 2006) for the proposition that "police

5   officer defendants in a §1983 case are not in privity with the prosecution of a related criminal

6   case and do not have a personal stake in the outcome of a criminal case."  The court

7   recognized that the officer neither had control of the case or nor had a full and fair opportunity

8   to litigate any issue in the criminal proceedings. The court also noted that *McCoy v.*

9   *Hernandez*, 203 F.3d 371, 375 (5th Cir. 2000) and *Duncan v. Clements*, 744 F.2d 48, 51-2 (8th

10  Cir. 1984) reached similar results.  See *Yezek*, at page 13.   The mere fact that the officers were

11  interested in proving a state of facts which were presented in criminal proceedings did not

12  establish that the officers were in privity with any of the parties in the prior action. *Yezek,*

13  *supra*, at p. 13 citing *Booker v. Ward*, 94 F.3d 1052, 1057 (7th Cir.1996); see also an

14  independent analysis reaching the same conclusions by Judge Anthony Ishii in *Willis v.*

15  *Mullins,* 2005 U.S.Dist. LEXIS 39888 pp, 14-28 (E.D. Cal. 2005) with its extensive analysis

16  of how California law applies to the issue of officers testifying in criminal courts.

17      Urging this court to ignore the Ninth Circuit precedent, the plaintiff relies on *Patzner v.*

18  *Burkett,* 779 F.2d 1363 (8th Cir. 1985),  in which the Eighth Circuit independently decided that

19  the need to preserve evidence for a misdemeanor DUI was not a sufficient exigent

20  circumstance to make a warrantless entry into a legless, intoxicated Vietnam veteran's home to

21  arrest him and to drag him down the steps to the station for a blood alcohol test.  *Id.* at 1368-69

22  (relying on the special protection given to residences under the Fourth Amendment.).  In

23  footnote 7, without any analysis of whether the arresting officers had either control of the

24  litigation or a full and fair opportunity to litigate the issue in the suppression hearing, the court

25  indicated that "We therefore need not solely rely on the alternative basis for decision on this

26  issue that the deputies were precluded under North Dakota principles of res judicata*."*  In the

27  footnote, the *Patzner* court cites two easily distinguishable cases. First, *Allen v. McCurry,* 449

28  U.S. 90, 96-105 (1980), held collateral estoppel could be applied *against* a civil rights plaintiff

1  where his motion to suppress was denied in the underlying criminal action because he was a

2  party.  The second case,  *Migra v. Warren City School District*, 465 U.S. 75, 84,  held that a

3  teacher was  barred from relitigating in federal court certain employment issues which he had

4  lost in state court. These federal cases and the North Dakota cases cited in the *Patzner* footnote

5  have absolutely nothing to do with the question of whether *an arresting officer* is estopped by

6  findings *granting* a suppression motion.

7      *Patzner* failed to discuss *Duncan v. Clements*, 744 F.2d 48 (8th Cir. 1984) which does

8  address whether collateral estoppel should be applied against an officer following the granting

9  of a motion to suppress.  The *Duncan* court recognized that under *Allen v. McCurry*, collateral

10  estoppel could be applied to prevent a civil rights *plaintiff* from relitigating the issues raised on

11  suppression motion decided against him in state criminal proceedings to which he was a party.

12  The Eighth Circuit then distinguished that line of cases from cases where a civil rights plaintiff

13  seeks to apply the doctrine against *an arresting officer defendant* following the *granting* of a

14  motion to suppress in the underlying criminal matter.  The court held that the arresting officer

15  was not collaterally estopped under those circumstances because (1) the officer has no privity

16  with the parties in the underlying case and (2) the officer has not had a full and fair

17  opportunity to litigate because he neither controls nor substantially participates in the control

18  of the state's presentation of its case.  *Id.*, at p. 52.   In *Turpin v. The County of Rock,*

19  *Nebraska*, 262 F.3d 779, 782-783 (8th Cir. 2001), the Eighth Circuit reiterated that collateral

20  estoppel cannot be used where the officers "were neither parties nor in privity with the State in

21  the criminal action and did not have a full and fair opportunity to litigate the issue."  The

22  interests of the state in the criminal proceedings are not identical to the personal interests of

23  the officer and he has no control over the criminal proceeding.  *Id.* at 782.

24      In *Booker v. Ward*,  94 F.3d 1052 (7th Cir. 1996), the plaintiff was charged with a

25  murder to which he confessed.  He got the confession thrown out following a motion to

26  suppress on the grounds that it was the product of an unlawful arrest.  After the District

27  attorney decided not to prosecute, Booker sued the police for unlawful arrest and prosecuting

28  him for a crime that the officers "knew he did not commit."  The court refused to apply

collateral estoppel or issue preclusion because the officers were not parties to the state court proceeding and did not have a full and fair opportunity to litigate the issue of whether they had probable cause to arrest the plaintiff.   The court then went on to independently determine the probable cause issue against Booker.  *Id.* at 1057-58.  The court held that to succeed on the false arrest claim, the plaintiff must prove that the officers arrested him without probable cause.  "A law enforcement officer has probable cause when the facts and circumstances within his knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed or was committing the offense.  *Id.*, at 1057.  There is a good discussion about when the "arrest" actually occurred.  Because the plaintiff voluntarily agreed to the interview and to a polygraph he was not under arrest during that questioning.  Summary judgment for the officers was appropriate because at the time they placed Booker under arrest, they had sufficient evidence to convince a prudent person that there was probable cause to believe that he committed the murder.

In *Williams v. Kobel*, 789 F.2d 463 (7th Cir. 1986), despite evidence that Williams had been seen by the arresting officer buying more gas than his car would hold and apparently filling containers in the trunk at a gas station shortly before the fire, that he owned the property burned, and that he had not seemed remorseful at the scene, plus a significant amount of other evidence indicating that the fire was caused by arson using gasoline, the state criminal court had found that there was insufficient evidence of probable cause on a motion to suppress.  In the subsequent civil rights action, the federal court denied plaintiff's request to apply issue preclusion to the state court finding of no probable cause because the state court applied the incorrect standard and the officers did not have the opportunity to litigate the issue of whether they had probable cause to arrest.   The state attorney presented only minimal evidence at the hearing.  *Id.* at 469-70.   The officers were in no position to question the state attorney's efforts on the case.  The court noted that the officers did not receive their full panoply of rights in that they were given no opportunity to challenge the testimony or present any evidence on their own behalf.   The court then reviewed whether under the appropriate standard there was probable cause to arrest for arson.  "Proof of the actual existence of probable cause is an

1  absolute bar to the 1983 action regardless of the lack of good faith of the arresting police

2  officer." *Id.* at 470. Probable cause is to be viewed from the vantage point of the officer on

3  the scene at the time of the arrest guided by his experience. Applying this standard, the

4  officers had probable cause and the case was dismissed.

5      Finally, and most importantly, in this civil rights case, the exclusionary rule will not bar

6  the evidence of probable cause that the officer had available to him at the time of the arrest, i.e.

7  Bhatnagar's admissions that he had been drinking and that he had been driving and his red

8  eyes, the odor of alcohol, the results of the field sobriety test, the preliminary alcohol

9  screening tests, and finally the blood alcohol. The rationale for application of the exclusionary

10  rule in the criminal proceedings does not warrant application of the rule in the civil

11  proceeding. See *Pennsylvania Bd. of Probation & Parole v. Scott*, 524 U.S. 357, 365 and n.4

12  (1998) (noting that the exclusionary rule generally has been held to apply only in criminal

13  proceedings); *United States v. Calandra*, 414 U.S. 338, 347-48 (1974) (stating that the

14  exclusionary rule is a remedial device intended to deter future unlawful police conduct rather

15  than a personal constitutional right, and that "standing to invoke the exclusionary rule has been

16  confined to situations where the Government seeks to incriminate the victim of the unlawful

17  search."); see also *Townes v. City of New York*, 176 F.3d 138, 149 (2d Cir. 1999) (holding, in a

18  civil rights action, that the absence of probable cause for a stop and search did not vitiate the

19  probable cause to arrest plaintiff upon discovery of handguns in the car in which he was

20  riding.). Thus the plaintiff will not be able to exclude the blood alcohol evidence and PAS

21  findings or the confirming blood alcohol test in order to prevent the finding of probable cause

22  which existed at the time of the arrest and prosecution of Mr. Bhatnagar for driving under the

23  influence.

24      For the foregoing reasons, the doctrine of collateral estoppel should not be applied to
the findings of the criminal and administrative proceedings listed in the motion.

25

26      IV.  THE COURT SHOULD EXCLUDE THE FINDINGS FROM THE STATE
COURT ACTIONS AND THE LETTER FROM THE DISTRICT ATTORNEY.

27      If this court properly denies the application of collateral estoppel to the underlying

28  findings, as it should under the law cited in the previous section, the admission of the findings

---

DEFENDANTS CONTRA COSTA COUNTY AND CITY OF SAN RAMON'S OPPOSITION TO
PLAINTIFFS MOTIONS IN LIMINE -  CV07-02669 CRB                                              12

1  as evidence is simply an indirect method of obtaining a jury-imposed collateral estoppel. There

2  is a significant danger that introduction of the evidence proffered by plaintiff will invite the

3  jury to give the findings collateral estoppel effect simply because they are the "findings" of a

4  judge or hearing officer.  Such a result is not justified under the law because of the absence of

5  the ability of the officer or the agency defendants to fully and fairly litigate the issues in the

6  criminal or administrative proceedings in which they had no proprietary, legal or fiscal

7  interest.[6]

8      The County and City object to the introduction of, or reference to, or examination based

9  on,  any of the "findings" on the grounds of the following provisions of the Federal Rules of

10 Evidence.  Rule 103 (c) provides "In jury cases, proceedings shall be conducted, to the extent

11 practicable, so as to prevent inadmissible evidence from being suggested to the jury by any

12 means, such as making statements or offers of proof or asking questions in the hearing of the

13 jury."  Rule 802 provides, "Hearsay is not admissible except as provided by these rules or by

14 other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of

15 Congress."  Rule 403 provides, "Although relevant, evidence may be excluded if its probative

16 value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or

17 misleading the jury, or by considerations of undue delay, waste of time, or needless

18 presentation of cumulative evidence."

19     A court judgment is hearsay "to the extent that it is offered to prove the truth of the

20 matters asserted in the judgment.  *United States v. Boulware*, 384 F.3d 794, 806 (9th Cir.

21 2004); *United States v. Sine*, 493 F.3d 1021, 1036 (9th Cir. 2007).   Use of the inadmissible

22 hearsay evidence from a judge's findings in an earlier proceeding in questions on cross or

23 direct examination introduces such evidence *indirectly* in violation of Rule 103 (c) and

24 unfairly prejudices the party against whom it is offered and tends to confuse or mislead the

25

26     [6]  Plaintiff cites *Hynes v. Coughlin*, 79 F.3d 285 for the proposition that false claims and
   reports are admissible on the credibility of the officers.   A reading of that case, however, indicates that
27 what the court determined was whether the disciplinary record of a *prisoner* was relevant to the issue
   of who started an altercation between him and the prison guard.

28

1   jury contrary to Rule 403 of the Federal Rules of Evidence.  *United States v. Sine, supra*, 1021

2   F.3d at 1032-34.  Where the evidence from the prior judgment reflects a judge's opinion on the

3   motivations and truthfulness of the defendant in the second  proceeding, implicating his overall

4   credibility, the nature of the facts found "heavily weighs on the unfair prejudice side" of the

5   403 balancing test.  *United States v. Sine, supra*, 493 F.3d at 1034.  The plaintiff has other less

6   prejudicial means of introducing the evidence to support his theory that probable cause was

7   lacking,  i.e.,  presenting factual evidence through witnesses with personal knowledge of the

8   events.

9        Neither the exceptions to the hearsay rule for judgments found in Federal Rules of

10  Evidence, Rules 803(22) and 803(23),  nor the exception for factual findings from

11  investigations by public officers and agencies found in Federal Rules of Evidence, Rule 803

12  (8),  apply under the circumstances of this case to allow introduction of the hearsay comments

13  in the facts found in the underlying state proceedings.  See *United States v. Sine, supra*, at

14  1036-37.  In *Nipper v. Snipes*, 7 F.3d 415, 418 (4th Cir. 1993), cited in *Sine*, the court held that

15  judicial findings of fact do not fall within the official investigation exception of Federal Rule

16  of Evidence 803(8), and should be excluded under Federal Rules of Evidence, Rule 403

17  because of the serious danger that the findings made by a judge would likely be given undue

18  weight by the jury, and the difficulty of weighing a judgment against whatever contrary

19  evidence a party might want to present in the current suit.

20       Using the conclusions of the earlier finder of fact that the officer was less "credible"

21  than Mr. Bhatnagar invades the province of the federal jury in determining the credibility of

22  the witnesses in this proceeding.  This is especially dangerous when the earlier trier of fact did

23  not have the benefit of any cross-examination by persons with the interest and motivation of

24  the parties presently before this court, and the officer did not have the opportunity to present

25  evidence in his own defense, because he was not the one charged.

26       *Sine* also addresses the use of judicial findings in cross-examination for the purposes of

27  impeachment in footnotes 12 and 13 on page 1036.  The court held that the findings could not

28  be used to show that the witnesses were not fully informed.  The findings proffered by plaintiff

1   cannot be supported as a non-hearsay determination of the rights of the parties to the various

2   proceedings because such findings determine no rights relative to defendants Ingrassia, the

3   County or the City – they related only to Bhatnagar's rights against the state under the criminal

4   law and the driving statutes.  The use of the findings on cross-examination to impeach for

5   mendacity was also rejected by the Ninth Circuit in *Sine* because it implied the truth of the

6   findings and constituted hearsay.  The Court held that such references should not have been

7   allowed.  *Id*., at 1036.  There was no exception to the hearsay rule.  *Id., at* 1036-37.

8   　　　*The Findings and the district attorney's letter are hearsay:*  The findings from the state

9   court proceeding in the criminal matters listed in the motion and the letter from the District

10  attorney indicating to the DMV that the charges were being dropped are clearly hearsay, i.e.

11  out-of-court statements offered to prove the truth of the matters stated therein.  Fed.R.Evid. 801

12  (c).  This hearsay is not admissible.  Fed.R.Evid. 802.

13  　　　　　　　　　　　　　　　VI.  CONCLUSION

14  　　　　The plaintiff's motions should be denied because they are not supportable under the

15  foregoing authorities.  But, there is significant evidence that the findings are inaccurate.  The

16  evidence detailed in the declarations of Ted Anderson, Barbara Houlihan, Stephanie Williams

17  and Gregory Harvey was not presented to the trier of fact below because none of the

18  defendants had control of the lawsuit.  Officer Ingrassia was engaged in a routine patrol right

19  up to the moment that he saw Mr. Bhatnagar proceeding westbound on Bollinger Canyon

20  Road.  He observed signs of intoxication and learned that he had been drinking and driving

21  from Bhatnagar. He did a field sobriety test. The Preliminary Alcohol Screening findings over

22  the legal limit were confirmed by blood alcohol done by a qualified technician.  The officer

23  had no history of any pattern of racial arrests either before or after this event.  Compagna

24  contradicts Mr. Bhatnagar's claims of racial statements being made on the phone at 2:02 a.m

25  and the amount of alcohol that Mr. Bhatnagar admits to.  Ms. Garrison's claims of racial

26  discriminatory statements by Ingrassia are inconsistent with documentary evidence.

27  (Anderson Dec., ¶¶ 3-23, Houlihan Dec. ¶¶2-7 k.; Williams Dec., ¶¶2-24, Harvey Dec, ¶¶ 3-

28  12g; and Exhibits A-N.)

1      An injustice has been done, by carrying these erroneous findings from one court to

2  another to influence other triers of fact.  In the interest of due process, it should stop here.

3

4                                          Respectfully submitted.

5  DATED:  April 3, 2008                        SILVANO B. MARCHESI, County Counsel

6

7                                                /S/

8                                          By:_____
                                              GREGORY C. HARVEY
9                                              Assistant County Counsel
                                              Attorneys for Defendants
10                                             COUNTY OF CONTRA COSTA
                                              AND CITY OF SAN RAMON

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28