SILVANO B. MARCHESI (SBN 42965)
County Counsel
GREGORY C. HARVEY (SBN 47974)
Assistant County Counsel
COUNTY OF CONTRA COSTA
651 Pine Street, 9th Floor
Martinez, California 94553
Telephone: (925) 335-1800
Facsimile: (925) 335-1866
email: gharv@cc.cccounty.us

Attorneys for Defendants
COUNTY OF CONTRA COSTA
and CITY OF SAN RAMON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABHINAV BHATNAGAR,<br><br>Plaintiff<br><br>v.<br><br>JASON INGRASSIA, COUNTY OF CONTRA COSTA, and CITY OF SAN RAMON,<br><br>Defendants. | Case No. CV07-02669 CRB<br><br>DECLARATION OF TED ANDERSON |

I, Ted Anderson, declare:

1.  I make this declaration on the basis of my own personal knowledge and, if called to testify, I would be competent to state the facts set forth below. The facts stated below, although true and correct, are not intended to be a complete summary of my investigation into complaints by Abhinav Bhatnagar against Jason Ingrassia.

2.  I am a Sergeant in the Contra Costa Sheriff's Department. I have been a peace officer employed by the Contra Costa Sheriff's Department since 1986. From January of 2007

DECLARATION OF TED ANDERSON

Case No. CV07-02669 CRB                                                                                                                  1

1   to September of 2007, I was assigned to the Internal Affairs Division.

3.  In January of 2007, I was requested to initiate an investigation into complaints by Abhinav Bhatnagar against Officer Jason Ingrassia, a deputy sheriff assigned to provide police services to the City of San Ramon.

4.  As part of that investigation, I pulled copies of the first page of all arrest reports filed by Officer Ingrassia for driving under the influence from May 21, 2006 to January 1, 2007. A true and correct copy of all such first pages of the DUI arrest reports are attached and marked as exhibit I-1. These reports showed the race of the arrestee and location. I have since reviewed the first pages of the DUI arrest reports from August of 2005 to May 20 of 2006.

5.  During my investigation of Mr. Bhatnagar's claim of racial profiling, I investigated all of Officer Ingrassia's DUI arrests from May 21, 2006 through January 1, 2007. In that period of time, Officer Ingrassia arrested a total of 13 persons for DUI. Of those 12 persons other than Mr. Bhatnagar for DUI, 7 were Caucasians, 1 African American, 3 Hispanics and 2 other racial groups. . Thus, more Caucasians were arrested than any other racial groups combined. (See I-1, CC543-557.)

6.  In evaluating Officer Ingrassia for equality of enforcement, I also looked at Officer Ingrassia's arrests for DUI, in the period leading up to Mr. Bhatnagar's arrest on May 20, 2006. In the period from August 2005 to May 20, 2006, Officer Ingrassia's arrest records for DUI included the following arrests. He arrested 9 persons for DUI. Of these, 5 were Caucasian, none were African American, 2 were Hispanic, and 2 were members of other racial groups. In the period before Mr. Bhatnagar's arrest, Officer Ingrassia's arrests for DUI were predominantly Caucasian. More Caucasians were arrested for DUI than all other groups combined. (See Exhibit I-2, pp. CC 558-566)

DECLARATION OF TED ANDERSON

Case No. CV07-02669 CRB                                                                                              2

7. The locations of the arrests cover various geographical areas with no particular limitation to a particular location. In exhibit I-1 there are only two locations near the location where Bhatnagar was arrested and these were 5 to 6 months after his arrest. In group I-2 from before Mr. Bhatnagar's arrest for DUI, there had been no arrests by Ingrassia for DUI near Bollinger and Market Place.

8. As part of that investigation, I was provided a copy of the cell phone bill from Abhinav Bhatnagar covering the night of May 19-20, 2006. A true and correct copy of the bill that I received is attached as exhibit J. Exhibit J shows the calls to and from Mr. Bhatnagar's cell phone# 510 449-4543 from May 19, 2006 (7:08 p.m.) to May 20, 2006 (11:19 p.m.).

9. I also received copies of two written statements pertaining to the events of the night of May 19-20, 2006. One statement was from Mr. Marcus Compagna. The statement from Marcus Compagna is attached and marked as exhibit M. The second statement was from Laurie Garrison. The statement from Laurie Garrison is attached and marked as Exhibit N.

10. On January 25, 2007, I called Marcus Compagna. Compagna stated that a couple of months after the arrest, Abhi brought a statement over around midnight. He stated that Mr. Bhatnagar had prepared the statement for his signature and that he, Compagna, had not read it before he signed it. Compagna told me, "To tell you the truth, I didn't see or hear of any person in law, especially the police officer, treating him bad. I didn't see one thing. I didn't hear anything that would be disgruntled or anything. I heard words between then. But I didn't hear anything. I asked him if he heard any racial comments and he said, "No. Abhi was bringing up something the next day, but I didn't hear anything." Marcus Compagna went on to say. "I didn't hear one thing or one word

DECLARATION OF TED ANDERSON

Case No. CV07-02669 CRB                                                                 3

that would jeopardize that officer's job." Compagna stated that he had not kept a copy of the statement. I asked him if what was in the statement was true. Compagna stated, "This is the bad thing, I really didn't read it over prior to signing it."

11. On January 31, 2007 at 9:45 a.m., I called Mr. Bhatnagar to ask him if he had received each declaration from Laurie and Marcus. He stated that Laurie and Marcus had each written their own statement. I pointed out that each declaration had the same final format and he stated that is what Mr. Toguchi had told him it had to be. I asked if he had helped Laurie or Marcus write their declarations and he stated that they had written them when he was not there.

12. On January 25, 2007, I called Ms. Laurie Garrison on two occasions at the number at the bottom of her statement. On the first occasion, she refused to speak with me until I contacted the public defender Diane Garrido and requested that I call her back the next day. On January 26, I contacted Ms. Garrison again. She was reluctant to speak with me and did not want answer any of my questions via phone. She indicated that she would call me back on Tuesday, January 30, 2007. She refused to give me a reason why she didn't want to talk to me. I never heard from her again.

13. Ms. Garrison's statement suggested that she had heard a comment, "We are leaving NOW, get going you terrorist." The statement goes on to state that Bhatnagar explained to Garrison that they were leaving for the Martinez jail. (See exhibit N) This statement which is alleged have occurred during a phone call between herself and Mr. Bhatnagar does not appear to fit the context of events.

14. Mr. Bhatnagar had elected to have a blood test. The dispatch log indicates that Officer Ingrassia had radioed for a technician to draw Mr. Bhatnagar's blood to comply with Mr. Bhatnagar's election. Ingrassia's request at 01:39:46 was for the technician to

DECLARATION OF TED ANDERSON

Case No. CV07-02669 CRB                                                                                            4

respond to San Ramon Police Department. (See Exhibit B-1, CC94.)

15. The phone call between Bhatnagar and Garrison was documented at 2:01 a.m. on Mr. Bhatnagar's phone bill. (See exhibit J.)

16. Mr. Bhatnagar's blood was drawn at approximately 2:30 a.m. at the San Ramon Police Department according to the documentation of Jonathon Young which I had available to me at the time of the investigation. (See exhibit E-2.)

17. Ingrassia and Bhatnagar did not leave for Martinez until 2:44:13 a.m. according to the dispatch log. (See Exhibit B-1, CC94) This was one of the matters that I wanted to clear up with Ms. Garrison when I phoned her. For Officer Ingrassia to have made the statement attributed to him by Ms. Garrison would be totally inconsistent with the events that were occurring at the time as shown by the other evidence.

18. Mr. Bhatnagar's statement quoted in the Garrison declaration discusses that Officer Ingrassia's statement occurred when they were leaving for Martinez Jail is also untrue if the time of events of the blood draw, the dispatch transmissions and the phone call are correct. I have no reason to disbelieve the time of events in the cell phone bill provided by Mr. Bhatnagar, the dispatch log and the phlebotomist's records.

19. Ms. Garrison testified before Hearing Officer Lee and indicated that she spoke to Abhinav Bhatnagar at approximately eleven p.m. and it sounded like he was getting arrested. (Pltf. Mtn., Ex. 4, 77:8-13) There was no evidence of such an incoming phone call on Bhatnagar's cell phone bill which would normally show incoming and outgoing calls. Secondly, there is clear evidence that the interaction between Bhatnagar and Ingrassia did not begin until 2 hours later.

DECLARATION OF TED ANDERSON

Case No. CV07-02669 CRB                                                                                 5

20. I received an audio recording from the hearing at the DMV before Hearing Officer Lee provided by deputy public defender Diane Garrido. Exhibit 4 to the plaintiff's motion to admit evidence of findings appears to be a transcript of the audio CD that I received from the Department of Motor Vehicles. I never received and was never provided with Hearing Officer Lee's findings or order from that proceeding. I was told by Mr. Bhatnagar and Ms. Jenny Huang that the" results of the Admin Per Se hearing" was to reinstate his license without restrictions. I assumed that this was the result of the Hearings before Mr. Lee.

21. Ms. Huang and Mr. Bhatnagar never told me of Hearing Officer Lee's findings rendered as a result of the hearing at DMV in July and October of 2006. I recently learned that there were favorable findings by Hearing Officer Lee that the arrest was lawful, that Officer Ingrassia had reasonable cause, and that Bhatnagar and his witnesses were not credible. I actually saw this document for the first time on April 1, 2008 while in the process of preparing this declaration.

22. I was provided with the transcript of the hearing before Judge Treat of the Contra Costa Superior Court in the matter of *People v. Abhinav Bhatnagar* relating to Mr. Bhatnagar's motion to suppress hearing in his DUI criminal proceedings.

23. I obtained the dispatch logs for Officer Ingrassia (B-1) and Officer Nathan Jones (B-2) relating to the interaction with Mr. Bhatnagar. I wanted unit histories on the dispatch log to determine where they had been in the time prior to Mr. Bhatnagar's arrest. The third document B-3 was the call history relative to the Bhatnagar arrest. Exhibits B-1, B-2 and B-3 are true and correct copies of what I ran.

    a. Based on the dispatch logs, I was able to determine that prior to the interaction with Mr. Bhatnagar, Officer Ingrassia was not sitting in the gas station watching

|   |   |
|---|---|
|   | for occupants of the El Balazo to come out so that he could arrest them for drunk driving as concluded by Judge Treat. |
| b. | I was able to determine based on the dispatch logs that shortly after midnight, (12:04 a.m.) Officer Ingrassia advised dispatch that he had made a traffic stop of an individual by the name of David Mock at Montevideo and Davonna several blocks southwest of Bollinger Canyon Road and Market Place where the Valero Station was located. Officer Ingrassia communicated to dispatch that he had cleared that scene at 12:44:48 according to the log. (See Exhibit C-1, CC 93) |
| c. | At 12:45:09 a.m., shortly after clearing the scene at Montevideo and Davonna, Officer Ingrassia went to backup a fellow officer at 2114 Crestfield Dr., San Ramon. He punched his console computer to indicate that he was on scene at 12:50:28 as recorded in the dispatch log. Officer Ingrassia reported back in service at 12:58:52. (See exhibit, C-1, CC 93) |
| d. | At 1:03:43 a.m., five minutes prior to his contact with Mr. Bhatnagar, Officer Ingrassia had advised dispatch that he performing a security check at Central Park. Central Park is on the north side of Bollinger Canyon Road, a large boulevard with two lanes of traffic in each direction. A large library building blocks any view from Central Park toward the El Balazo restaurant which is located on Montgomery Street. For the location of Central Park, the Valero Station and the El Balazo see the aerial photograph in Exhibit G-1. |
| e. | The transcript of Judge Treats hearing in *People v. Bhatnagar* does not indicate that the judge had any of this information presented to him. I came to a different conclusion than Judge Treat. I concluded that as Officer Ingrassia was returning to patrol after checking out Central Park he saw Mr. Bhatnagar make his illegal |

DECLARATION OF TED ANDERSON

Case No. CV07-02669 CRB                                                                                              7

u-turn at Bishop Ranch Road and followed Mr. Bhatnagar into the gas station.

f. I also concluded that during the stop, Mr. Bhatnagar admitted to both drinking and driving and agreed to take a Field Sobriety Test, that he tried to explain his red and watery eyes by contact lens difficulties and the alcohol on his breath by having taken cough medicine. Based on the results of the field sobriety test, Mr. Bhatnagar was requested to blow into a preliminary alcohol screening device. This device showed a result over the legal limit. Based on this information, I believed that Officer Ingrassia had probable cause to arrest Mr. Bhatnagar for suspicion of driving under the influence.

g. I pulled the arrest report and supplementary report relating to the arrest of Mr. Bhatnagar. Exhibit C is a true and correct copy of that report and supplementary report contained in the Department records.

h. I reviewed the findings of the blood alcohol test done on Mr. Bhatnagar's blood drawn at the San Ramon Police Station at 2:30 a.m. These findings provided further evidence that Mr. Bhatnagar had not been forthright about the amount of alcohol he had consumed.

The above statements are true and correct. Executed under penalty of perjury on April 2, 2008 in Martinez, CA.

*Theodore Anderson*
Ted Anderson

DECLARATION OF TED ANDERSON

Case No. CV07-02669 CRB                                                                                       8