JUSTICE FIRST, LLP
Jenny C. Huang, SBN 223596
2831 Telegraph Avenue
Oakland, CA  94609
Telephone: (510) 628-0695
Fax: (510) 272-0711
E-mail: jhuang@justicefirstllp.com

JIVAKA CANDAPPA, SBN 225919
46 Shattuck Square, Suite 15
Berkeley, CA  94704
Telephone: (510) 981-1808
Fax: (510) 981-1817
E-mail:  jcandappa@sbcglobal.net

Attorneys for Plaintiff Abhinav Bhatnagar

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABHINAV BHATNAGAR,<br>    Plaintiff,<br>vs.<br><br>JASON INGRASSIA, individually and in his official capacity; COUNTY OF CONTRA COSTA; and CITY OF SAN RAMON.<br><br>    Defendants. | Case No.: Case No. CV07-02669 (CRB)<br><br><br><br>Date: April 25, 2008<br>Time: 10:00am<br>Honorable Charles R. Breyer |

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES
IN RESPONSE TO DEFENDANT INGRASSIA'S OPPOSITION BRIEF
ON PLAINTIFF'S MOTION *IN LIMINE***

# **TABLE OF CONTENTS**

Page(s)

TABLE OF CONTENTS ................................................................................... ii

TABLE OF AUTHORITIES ............................................................................. iii

BACKGROUND FACTS ............................................................................. 1-3

ARGUMENT ................................................................................................ 3-9

I.  THIS COURT SHOULD GIVE PRECLUSIVE EFFECT
    TO THE PRIOR JUDICIAL AND ADMINISTRATIVE
    FINDINGS THAT ARISE FROM PROCEEDINGS IN
    WHICH DEFENDANTS HAD THE FULL AND FAIR
    OPPORTUNITY TO PARTICIPATE ...................................................... 3-8

    A. Defendant Ingrassia Had the Full and Fair Opportunity to
       Participate in the Prior Proceedings ................................................... 5-8

    B. It Would Be Unfairly Prejudicial to Require Mr. Bhatnagar
       to Relitigate the Constitutionality of His Stop and Search
       by Defendant Ingrassia ........................................................................ 8

II. THE PRIOR JUDICIAL FINDINGS SHOULD BE ADMITTED
    AS EVIDENCE AGAINST DEFENDANT INGRASSIA .......................... 9

CONCLUSION ............................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

Federal Cases:

*Allen v. McCurry* (1980) 449 U.S. 90........................................................................4

*Ayers v. City of Richmond* (9th Cir. 1990) 895 F.2d 1267........................................4

*Blonder-Tongue Laboratories, Inc. v. Univ. of Illinois Foundation*
(1971) 402 U.S. 313..................................................................................................5

*Parklane Hosiery Co., Inc. v. Shore* (1978) 439 U.S. 322...................................4, 5

*Richards v. Jefferson County, Ala.* (1996) 517 U.S. 793..........................................6

*Universal American Barge Corp. v. J-Chem, Inc.*
(5th Cir. 1991) 946 F.2d 1131 ...................................................................................6


Federal Rules and Statutes:

Fed. R. Civ. Pro., rule 42(b)......................................................................................9


State Cases:

*Citizens for Open Access to Sand and Tide, Inc. v. Seadrift Association et al.*,
(1st Dist 1998) 60 Cal.App.4th 1053................................................................4, 5, 8

*Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865 .....................................5

*Gikas v. Zolin* (1993) 6 Cal.4th 841..........................................................................4

*Howell v. Richardson* (Ohio 1989) 544 N.E.2d 878................................................6

*People v. Diego Diaz, Damon Moses*, Case No. 130194-4 .........................2, 6, 7, 8

*People v. Henderson* (1990) 225 Cal.App.3d 1129 .................................................4

**BACKGROUND FACTS**

In his opposition papers, Defendant Ingrassia presents himself as an innocent peace officer who fell victim to Mr. Bhatnagar's abuse of process and power to manipulate the California criminal justice and administrative systems. This portrayal is seriously undermined by the evidence that has surfaced thus far. Without the benefit of conducting any depositions or any significant discovery in this case, the evidence thus far shows that Defendant Ingrassia falsified evidence against Mr. Bhatnagar in an effort to convict him of criminal charges for driving under the influence of alcohol. Consistent with his practice in other cases, Defendant Ingrassia fabricated a basis for stopping Mr. Bhatnagar on the night of his arrest, by falsely claiming that he saw Mr. Bhatnagar make an illegal u-turn before approaching him at the gas station in San Ramon. (Affidavit of Jenny Huang in Support of Plaintiff's Motion *In Limine* ("Huang Aff."), Exh. 3 at 5-25; Declaration of Ted Anderson in Support of Defendants' Motion *In Limine* ("Anderson Decl.") at Exh. C.)

Defendant Ingrassia had the full and fair opportunity to present evidence in the prior proceedings to support his fabrication, which he utilized by giving false testimony in a police report, providing a sworn statement to the Department of Motor Vehicles ("DMV"), and by testifying as a witness against Mr. Bhatnagar in both his criminal and DMV proceedings. (Huang Aff., Exh. 3 at 5-25; Anderson Decl. at Exh. C; Affidavit of Jenny Huang in Response to Defendant Ingrassia's Opposition on Plaintiff's Motion *In Limine*, dated 4/18/08 ("Huang Reply Aff. II") at Exh. 1.) However, the deputy's testimony was substantially undermined by the testimony of Richard Ha, a gas station attendant, whose testimony established that Defendant Ingrassia did not conduct a vehicle stop of Mr. Bhatnagar that night, but instead targeted Mr. Bhatnagar for no apparent reason while he was getting gas. (Huang Aff., Exh. 3 at 28-29.) The prosecution could have presented additional evidence in an effort to counter Mr. Ha's testimony, such as the testimony of the other deputy who was present at the time of the arrest. Instead, the prosecution chose to rest its case upon the credibility of Defendant Ingrassia alone. Based on findings that the deputy lacked credibility, the criminal court concluded that Defendant Ingrassia targeted Mr. Bhatnagar solely on the basis of his race and dismissed the criminal charges against

1  Mr. Bhatnagar. (Huang Aff., Exh. 3 at 61.)  The prosecution did not pursue its right to appeal

2  Judge Treat's decision.[1] (Affidavit of Jenny Huang in Support of Plaintiff's Reply Motion *In*

3  *Limine*, filed on 4/11/08 ("Huang Reply Aff.") at ¶ 4.)  To the contrary, Mr. Bhatnagar

4  subsequently met with a district attorney who apologized about Mr. Bhatnagar's criminal matter

5  and then provided a sworn statement attesting that Defendant Ingrassia had no probable cause to

6  stop Mr. Bhatnagar. (Huang Aff., Exh. 8 at 21:19-22:1.)

7      In an apparent change of strategy, the Defendants now seek to retry Mr. Bhatnagar's

8  criminal case and ask this court to disregard the findings of the state court which already

9  weighed the same evidence presented here and ruled in Mr. Bhatnagar's favor.  Defendant

10  Ingrassia argues that the exclusion of Judge Treat's prior findings is justified because he did not

11  have a full and fair opportunity to participate in the prior proceedings. (Defendant Ingrassia's

12  Opposition to Plaintiff's Motion *In Limine* ("Ingrassia Opp. Brief") at 4-6.)  Defendant Ingrassia

13  further argues that Judge Treat's findings should be excluded as evidence in this case because it

14  will be overly prejudicial and will have the effect of deceiving the jury. (*Id.* at 8-9.)

15      It is undisputed that the findings from Mr. Bhatnagar's criminal case impact the deputy's

16  reputation and career. (Ingrassia Opp. at 1:13-15.)  Yet, Defendant Ingrassia continues to assert

17  the same fabricated basis for stopping Mr. Bhatnagar that was already presented, weighed, and

18  rejected by a prior tribunal. (Opposition Brief of County of Contra Costa and City of San Ramon

19  ("Mun. Opp. Brief") at 2:13-14 (stating that on May 20, 2006, Defendant Ingrassia saw Mr.

20  Bhatnagar make an illegal u-turn).)  In an attempt to evade the findings from the prior

21  proceedings, Defendants now claim that the criminal proceedings were somehow unfair in such a

22  way that this court should proceed as if it never happened.  Instead, Defendants seek to use

23  plaintiff's civil rights action as a forum to retry the criminal case against Mr. Bhatnagar by

24  introducing the same fabricated pretext that was appropriately rejected by Judge Treat.  Even

25  more astonishing is the assertion by Defendant Ingrassia that the prior findings were defective

---

[1] Unlike Mr. Bhatnagar's case, the prosecution in Mr. Eli's case initially sought to appeal Judge Kolin's findings.  However, in the end, the prosecution did not exercise its right to appeal the suppression order in Mr. Eli's case. (Huang Reply Aff. II at ¶¶ 3-5.)

JUSTICE FIRST, LLP

because he wasn't given a fair opportunity to present his position in the prior proceedings. Quite to the contrary, Defendant Ingrassia had every opportunity available to defend the constitutionality of his actions. He utilized the mechanisms in those prior proceedings to submit evidence against Mr. Bhatnagar in the form of witness testimony and exhibits. In some respects, the record indicates that Defendant Ingrassia declined the opportunity to defend his actions, as he did when he failed to appear as subpoenaed for the rehearing before the Department of Motor Vehicles. (Huang Aff., Exh. 7 at 1-2.)

In an ongoing effort to defend Defendant Ingrassia's reputation and credibility, the District Attorney's Office has devoted an unprecedented amount of resources to enforcing the deputy's past arrests.[2] For instance, in the pending criminal cases of *People v. People v. Diego Diaz, Damon Moses*, Defendant Ingrassia is the arresting officer who conducted a traffic stop and subsequent search of the defendants in that case. (Huang Reply Aff. II at ¶¶ 10-11.) To prosecute the charges of felony drug possession, the District Attorney's Office has assigned Assistant District Attorney Paul Sequeira, to enforce Defendant Ingrassia's arrests. As second-in-command in the District Attorney's Office, Mr. Sequeira supervises the office's felony trial team and is typically assigned to prosecute homicides and other high-profile cases. (*Id.* at ¶¶ 12-14.) His assignment to this relatively minor drug case is highly unusual and demonstrates the level of participation, corroboration, and communication that is shared between the District Attorney's Office and the Defendants in this case.

## ARGUMENT

**I.   THIS COURT SHOULD GIVE PRECLUSIVE EFFECT TO THE PRIOR JUDICIAL AND ADMINISTRATIVE FINDINGS THAT ARISE FROM PROCEEDINGS IN WHICH DEFENDANTS HAD THE FULL AND FAIR OPPORTUNITY TO PARTICIPATE**

In his opposition brief, Defendant Ingrassia urges this court to find, as a matter of law, that favorable findings to a criminal defendant should never be entitled to collateral estoppel

---

[2] As of August of 2007, Defendant Ingrassia was no longer working on patrol and testified that he voluntarily chose to work at the jail in Martinez. (Huang Aff., Exh. 11 at 5, 28.)

effect in a subsequent civil action by the criminal defendant. (Ingrassia Opp. at 4-8.) Defendant Ingrassia bases his argument on two assertions: (1) that the offensive use of collateral estoppel is patently unfair and would encourage rampant civil litigation (*Id.* at 4-5, 7-8), and (2) as a matter of law, police officers are not in privity with the prosecution. (*Id.* at 4-6.) Because both arguments are contrary to well-established caselaw on collateral estoppel, both arguments should be rejected in their entirety.

The United States Supreme Court has rejected efforts to preclude litigants from the offensive use of collateral estoppel. (*Parklane Hosiery Co., Inc. v. Shore* (1978) 439 U.S. 322, 331.) To the contrary, the Supreme Court has held that trial courts have broad discretion to determine when the offensive use of collateral estoppel should be allowed. (*Id.* at 331.) As a safeguard, the Supreme Court found that as a general rule, the offensive use of collateral estoppel should not be permitted when it would be unfair to a defendant. (*Id.*) The question, then, for this court to determine is whether it is unfair to any of the Defendants to give preclusive effect to the prior findings underlying this case.

Defendant Ingrassia asks this court to conclude that police officers and prosecutors are never parties in privity on a criminal case because police officers are not represented by counsel, do not have a stake in the outcome, and do not have a full and fair opportunity to litigate the issues in the criminal case. (Ingrassia Opp. at 5.) In doing so, Defendant Ingrassia overlooks the fact that the application of collateral estoppel in § 1983 actions is governed by state law. (*Allen v. McCurry,* 449 U.S. 90, 96; *Ayers v. City of Richmond* (9th Cir. 1990) 895 F.2d 1267, 1270.) Pursuant to California law, Defendant Ingrassia further overlooks longstanding caselaw in California which establishes that the question of privity is not determined by any universal definition and is properly decided by a "close examination of the circumstances of each case." (*Citizens for Open Access to Sand and Tide, Inc. v. Seadrift Asso.* (1998) 60 Cal.App.4th 1053, 1070 (quoting *People v. Henderson* (1990) 225 Cal.App.3d 1129, 115); *Gikas v. Zolin* (1993) 6 Cal.4th 841, 849.) Moreover, Defendant Ingrassia's rigid analysis of the privity question relies upon the doctrine of mutuality, in which he claims that he cannot be estopped by the prior findings because he was not a party to the prior proceedings. However, as the United States

Supreme Court has recognized, the mutuality requirement for collateral estoppel was criticized from the time of its inception and was subsequently abandoned by the high court in *Blonder-Tongue Laboratories, Inc. v. Univ. of Illinois Foundation*. (*Parklane Hosiery Co., Inc. v. Shore, supra,* 439 U.S. at 326-27 (citing *Blonder-Tongue Laboratories, Inc. v. Univ. of Illinois Foundation* (1971) 402 U.S. 313, 326-27).) Employing the proper analysis mandated under California law, this court should evaluate the specific facts presented by this case to determine whether the Defendants case are "sufficiently close" to the District Attorney's Office, so as to justify the application of collateral estoppel here. (*Citizens for Open Access to Sand and Tide, Inc. v. Seadrift Asso., supra,* 60 Cal.App.4th at 1069-70 (quoting *Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865, 875).)

A. <u>Defendant Ingrassia Had the Full and Fair Opportunity to Participate in the Prior Proceedings</u>

Upon review of the cases relied upon by the Defendants, it is no exaggeration to assert that this case presents a highly unique set of facts. For instance, the suppression orders at issue in this case are not the typical kind of suppression orders in which evidence is suppressed simply because it resulted from an illegal search. Rather, the suppression orders of three separate judges are each based on negative findings of credibility against Defendant Ingrassia. Moreover, Judge Treat specifically found that Defendant Ingrassia targeted Mr. Bhatnagar solely on the basis of his race. (Huang Aff., Exh. 3 at 61.) Most importantly, the prior findings at issue directly implicate the credibility of Defendant Ingrassia's assertions before this court. Contrary to repeated assertions by the Defendants in this case, Defendant Ingrassia never saw Mr. Bhatnagar driving on the night of his arrest, nor did he see Mr. Bhatnagar make an illegal u-turn that night. Defendant Ingrassia already had the full opportunity to present this fabrication to the criminal court. Because a prior tribunal has already weighed the evidence and rejected the deputy's assertions, he should not be provided with a second opportunity to make his fabrication more believable.

This case is also highly unusual, given the level of corroboration that is shared between the Defendants in this case and the District Attorney's Office. Unlike the cases relied upon by the Defendants, the circumstances presented by this case demonstrate such a level of privity

1  between the Defendants and the prosecution which justifies the application of collateral estoppel.
2  As evidenced by the prosecutorial effort demonstrated in *People v. Diego Diaz, Damon Moses*,
3  the defendants in this case benefit from an unprecedented level of participation and corroboration
4  with the District Attorney's Office.  Defendants will be hard-pressed to show that the assignment
5  of such a senior prosecutor to a relatively minor felony case is simply a coincidence.   In the
6  absence of discovery, Mr. Bhatnagar is unable to determine the precise level of privity that was
7  shared between the Defendants and the District Attorney's Office during the prosecution of Mr.
8  Bhatnagar's criminal case.  However, the privity that is now shared between the parties, at the
9  very least, indicates that the Defendants had the ability to utilize a tremendous amount of
10 resources from the prosecution during Mr. Bhatnagar's criminal case.  Although Defendants may
11 not have utilized the capacity of resources available to them to defend the deputy's actions, they
12 certainly had the opportunity to do so.

13         The law on collateral estoppel only requires that the estopped party had the *opportunity*
14 to litigate in the prior proceeding. (*Richards v. Jefferson County, Ala.* (1996) 517 U.S. 793, 797,
15 fn 4 ("The doctrine of res judicata rests at bottom upon the ground that the party to be affected,
16 or some other with whom he is in privity, has litigated *or had an opportunity to litigate* the same
17 matter in a former action in a court of competent jurisdiction.") (emphasis added); *Universal
18 American Barge Corp. v. J-Chem, Inc.* (5th Cir. 1991) 946 F.2d 1131, 1138 (a party who chooses
19 not to appear in a prior proceeding, despite having the opportunity to be heard, must make a
20 particularlized showing of prejudice); *Howell v. Richardson* (Ohio 1989) 544 N.E.2d 878, 881
21 (collateral estoppel applies to those in privity w/the parties, as well as those who could have
22 entered the proceeding but did not avail themselves of that opportunity).)  Defendants who
23 forego the opportunity to litigate should not be entitled to the protection afforded by the doctrine
24 of privity.

25         Defendants had available to them the same resources currently available to them in
26 *People v. Diego Diaz, Damon Moses*.  Instead of utilizing those resources, Defendant Ingrassia
27 repeatedly abused the process in the prior proceedings by twice providing perjured testimony to
28 the criminal court and the DMV.  He attempted to discourage the testimony of Mr. Ha by

JUSTICE FIRST, LLP

1  engaging in threatening and harassing conduct towards this witness. (Affidavit of Richard Ha in
2  Support of Plaintiff's Motion for Protective Order, filed 11/21/07 ("Ha Aff.") (Docket No. 29) at
3  ¶¶ 17-24, 27-28.)  He retaliated against Mr. Bhatnagar by threatening him with physical harm
4  and then issuing him a false traffic citation. (Affidavit of Mr. Bhatnagar in Support of Plaintiff's
5  Motion for Protective Order (Docket No. 28) at ¶ 23-25.)  After Judge Treat dismissed the
6  criminal charges against Mr. Bhatnagar, Defendant Ingrassia failed to defend his sworn
7  statements before the DMV, in violation of a subpoena.  (Huang Aff., Exh. 7 at 1-2.)  Despite his
8  best efforts, Defendant Ingrassia failed in his attempt to secure a conviction against Mr.
9  Bhatnagar.  Having failed to convince the DMV and the criminal courts, Defendants now seek
10 the forum of this court in an effort to restore the deputy's credibility.

11      In support of their opposition to Mr. Bhatnagar's motion *in limine*, Defendants submit
12 voluminous exhibits that have no apparent relevance to the subject motion.  For instance, in their
13 opposition papers, the municipal defendants inundate this court with evidence relating to Mr.
14 Bhatnagar's blood alcohol level, testimony from the phlebotomist, a declaration from a forensic
15 toxicologist, and documentation of the chain of custody of sealed vials of Plaintiff's blood.
16 However, Defendants fail to indicate whether and how they were denied the opportunity to
17 present such evidence in the prior criminal or administrative proceedings.  Similarly, Defendant
18 Ingrassia asserts that he was excluded from the courtroom during the testimony of other
19 witnesses, consistent with standard protocol.  Yet, he does not deny that he had the opportunity
20 to communicate with the prosecution throughout Mr. Bhatnagar's suppression hearing.  This
21 court should evaluate Defendants claimed lack of privity to determine whether they were in fact
22 denied the opportunity to participate in the prior proceedings or whether they simply overlooked
23 the need to step in and defend the deputy more vigorously, as is currently the strategy being
24 utilized in *People v. Diego Diaz, Damon Moses*.

25      In summary, the evidence before this court indicates that Defendants had the full and fair
26 opportunity to participate in the prior proceedings.  Whether or not Defendants fully utilized
27 those opportunities is not a proper consideration for the purpose of determining the issue of
28 privity.  As is best exemplified by the incredible resources being utilized by the District

Attorney's Office in *People v. Diego Diaz, Damon Moses*, Defendants indeed share a "sufficiently close" relationship to the District Attorney's Office so as to justify the application of collateral estoppel here. (*Citizens for Open Access to Sand and Tide, Inc. v. Seadrift Asso., supra,* 60 Cal.App.4th at 1069-70.)

B. <u>It Would Be Unfairly Prejudicial to Require Mr. Bhatnagar to Relitigate the Constitutionality of His Stop and Search by Defendant Ingrassia</u>

It is important for this court to consider the significant burden that will be imposed upon Mr. Bhatnagar and other witnesses if he is required to relitigate the constitutionality of Defendant Ingrassia's actions on the night of his arrest. It has been well-documented in this case that Defendant Ingrassia has sought to intimidate and retaliate against Mr. Bhatnagar, at least one of his witnesses, and the public defenders who have successfully challenged the deputy's misconduct. (*See,* Plaintiff's Motion for Protective Order and supporting affidavits, filed on 11/20/07 (Docket Nos. 25, 27-30, 34).) Mr. Ha testified in Mr. Bhatnagar's prior proceedings in spite of concerns for his own safety. (Ha Aff. at ¶¶ 8, 13.) As documented in Plaintiff's Motion for Protective Order, Mr. Ha has endured many months of harassment and retaliation by Defendant Ingrassia and other police, as a result of his participation in Mr. Bhatnagar's criminal case. (*Id.* at ¶¶ 17-24, 27-28.) For this reason, Mr. Bhatnagar successfully sought an order of protection from this court to exclude Defendant Ingrassia from the deposition room of Mr. Ha. (Order dated 12/28/07 (Docket No. 45).) However, with the limitations imposed by this court, Defendant Ingrassia has since abandoned his intentions to depose Mr. Ha. (Huang Reply Aff. II at ¶¶ 6-9.)

In the event that this court provides Defendant Ingrassia with a second opportunity to litigate the constitutionality of his stop and seizure of Mr. Bhatnagar, he will again require the critical testimony of Mr. Ha to undermine the deputy's fabricated pretext for stopping Mr. Bhatnagar. Although Mr. Ha previously testified in the criminal and DMV proceedings against Mr. Bhatnagar, it would be a significant burden on the plaintiff and his witness to require Mr. Ha to testify for a third time, in the face of longstanding harassment and retaliation by the police.

## II. THE PRIOR JUDICIAL FINDINGS SHOULD BE ADMITTED AS EVIDENCE AGAINST DEFENDANT INGRASSIA

It is significant to note that in his opposition brief, Defendant Ingrassia does not dispute that the prior findings are relevant as to the deputy's character and for the purpose of establishing his pattern, habit, and absence of mistake in fabricating the basis for stopping motorists. Additionally the prior findings underlying this case are relevant and necessary to establish Mr. Bhatnagar's claims for malicious prosecution, false arrest and detention, claims of municipal liability, and to disprove immunity defenses asserted by Defendants. (*See*, Plaintiff's Reply Brief at Section I.) In apparent recognition of the relevancy of the prior findings, Defendant Ingrassia simply argues that the admission of such evidence would be overly prejudicial. (Ingrassia Brief at 8-9.) As discussed more thoroughly in Plaintiff's Reply Brief filed last week, the prior findings are a prerequisite to proving at least some of the claims asserted by Mr. Bhatnagar. (Plaintiff's Reply Brief at Section I(A).) The exclusion of such evidence would therefore deny Mr. Bhatnagar a fair opportunity to establish his claims. (*Id.* at Section I.) Accordingly, the prejudicial impact, if any, of the prior findings is far outweighed by their probative value.

Moreover, Defendants fail to address why other mechanisms are insufficient to minimize any prejudicial impact presented by the prior findings. For instance, this court could instruct the jury that they are not to give undue weight to the prior findings and that they should be considered solely for the limited purpose for which they are admitted. Defendants are also entitled to request bifurcation of the trial in the event they can show that evidence that may be admissible against the municipal defendants would not also be admissible against Defendant Ingrassia. (Fed.R.Civ.Pro., rule 42(b).)

//
//
//
//
//
//

### CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that this court issue an order granting his motion *in limine* in its entirety.

Date: April 18, 2008
Oakland, California

**JUSTICE FIRST, LLP**
Attorneys for Plaintiff Abhinav Bhatnagar
By:
_____/s/_____
Jenny C. Huang
2831 Telegraph Avenue
Oakland, CA  94609
Tel.: (510) 628-0695