# HUANG REPLY AFFIDAVIT
# EXHIBIT 3

DAVID C. COLEMAN, Public Defender, State Bar #55545
Office of the Public Defender, Contra Costa County
By: Tracee Clark, Deputy Public Defender, State Bar # 104719
610 Court Street
Aaron Dritz, Certified Law Clerk
Martinez, California 94553
(925) 335-8000

2007 AUG -9  P 1: 58

Attorneys for Defendant

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF CONTRA COSTA

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | | No. 130194-4 |
| | Plaintiff, | MOTION TO |
| v. | | SUPPRESS EVIDENCE |
| DAYMON MOSES | Date: | |
| | | Time: 9/27/07    Dept: 19 |
| | Defendant./ | Est. Time: 15 Minutes |

TO:    ROBERT KOCHLY, DISTRICT ATTORNEY, CONTRA COSTA COUNTY,
MARTINEZ, CALIFORNIA, OR TO ANY OF YOUR REPRESENTATIVES; AND
TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that on the twenty seventh day of September, 2007, at 8:30 a.m., or as soon thereafter as the matter may be heard, in department 19 of the above entitled court, the defendant herein will move for an order to suppress cocaine and all statements and other evidence related to the cocaine.

The motion will be based on the attached memorandum of points and authorities.

Dated: August 1, 2007

Respectfully submitted,

Tracee Clark
Attorney for Defendant

1

1

2          **MEMORANDUM OF POINTS AND AUTHORITIES**

3                            **STATEMENT OF FACTS**

4          Defandant Daymon Moses is charged with Count One: a violation of Health and Safety

5   Code section 11352(a) (transporting controlled substance); and Count Two: a violation of

6

7   Health and Safety Code section 11350(a) (possessing controlled substance).

8          The factual basis for the motion to suppress is the following: San Ramon Police

9   Officer J. Ingrassia made a traffic stop on December 22, 2007, on a vehicle driven by Diego

10  Diaz. Defendant Daymon Moses was the passenger in the vehicle. Officer Ingrassia alleged

11
    in his police report that Mr. Diaz was speeding. On contacting the driver through the driver's
12

13  side window Officer Ingrassia alleged in his police report that he smelled "fresh Marijuana."

14  Officer Ingrassia further alleged that Mr. Diaz had red watery eyes. Mr. Diaz denied having

15  recently smoked marijuana. Officer Ingrassia asked Mr. Diaz to step out of the car. Officer

16
    Ingrassia saw a black book with white powder and a rolled up piece of paper on it. Mr. Diaz
17

18  told Officer Ingrassia that he had ingested cocaine earlier in the evening. Mr. Diaz

19  surrendered a plastic bindle of a soft white substance to Officer Ingrassia. Officer Ingrassia

20  arrested Mr. Diaz.

21
           Another police officer, Officer Doherty arrived on the scene to assist. Officer Ingrassia
22

23  ordered the defendant, Mr. Moses out of the car so that the car could be searched. Officer

24  Ingrassia conducted a pat-search of Mr. Moses for weapons. Officer Doherty observed Officer

25  Ingrassia patting down Mr. Moses. Officer Doherty's report stated that he wanted to put Mr.

26  Moses in the patrol car because it was cold outside. Officer Doherty then conducted his own

27
    pat-search of Mr. Moses for weapons. While pat-searching Mr. Moses, Officer Doherty asked
28

                                            2

1    Mr. Moses if he had any drugs on him. Mr. Moses answered that he did not. Mr. Moses did

2    not give Officer Doherty permission to search him. Mr. Moses told Officer Doherty that he

3    had nothing on him as far as he knew. Officer Doherty searched Mr. Moses for drugs. The

4    search resulted in the officer allegedly finding cocaine. Officer Doherty arrested Mr. Moses.

5
                                      **ARGUMENT**
6

7         A search without a warrant is presumptively illegal, and must be justified by the

8    prosecution. The prosecution bears the burden of establishing the legality of a warrantless

9    search. ``It is hornbook law that searches conducted outside the judicial process, without prior

10   approval by judge or magistrate, are per se unreasonable under the Fourth Amendment's

11   warrant requirement unless they fall within one of a few narrow exceptions thereto. "
12

13   (*Coolidge v. New Hampshire* (1971) 403 U.S. 443, 454-455 [29 L.Ed.2d 564, 576, 91 S.Ct.

14   2022] (plur. opn. by Stewart, J.).) (*People v. Osband* (1996) 13 Cal.4th 622, 673; internal

15   quotation marks omitted; see also *Minley v. Arizona* (1978) 437 U.S. 385, 390.) Further,

16   when law enforcement officers conduct a warrantless search, the prosecution has the burden of
17

18   justifying the search under a recognized exception to the constitutional warrant requirement.

19   (*Welsh v. Wisconsin* (1984) 466 U.S. 740, 749-750; *People v. James* (1977) 19 Cal.3d 99,

20   106 [137 Cal.Rptr. 447, 561 P.2d 1135].) The prosecution's burden of proof is preponderance

21   of the evidence. (*People v. Superior Court* [Bowman] [1971] 18 Cal.App.3d 316.)
22

23   I.    WHEN MR. DIAZ'S VEHICLE WAS DETAINED BY OFFICER INGRASSIA, MR.
      MOSES AS A PASSENGER IN THE VEHICLE WAS DETAINED AS WELL.

24
          A person has been "seized" within the meaning of the Fourth Amendment only if, in
25

26   view of all the circumstances surrounding the incident, a reasonable person would have

27   believed that he was not free to leave. (*U.S. v. Mendenhall* (1980) 446 U.S. 544,554) "A

28   traffic stop necessarily curtails the travel a passenger has chosen just as much as it halts the

                                          3

driver[.]" (*Brendlin v. California* (2007) 127 S. Ct. 2400, 2407.) "[The passenger's] attempt

to leave the scene would be so obviously likely to prompt an objection from the officer that no

passenger would feel free to leave in the first place." *Ibid*.

The *Brendlin* court has firmly established that a passenger in a detained vehicle is

subject to police detention as no reasonable person would feel free to leave in such a situation.

*Ibid*. Since Mr. Moses was a passenger Mr. Diaz's vehicle when Mr. Diaz's vehicle was

detained, Mr. Moses was detained as well.

II.    WHEN MR. MOSES WAS ORDERED TO GO WITH OFFICER DOHERTY WHILE
OFFICER INGRASSIA SEARCHED THE CAR, MR. MOSES' DETENTION BECAME
ILLEGALLY PROLONGED.

Even if a detention is initially lawful, it can become unlawful if it continues beyond the

time necessary to resolve the initial detention. *People v. McGaughran* (1979) 25 Cal.3d 577

[159 Cal.Rptr. 191, 601 P.2d 207]. When a police officer prolongs a valid traffic detention

beyond the point when such duties as were 'reasonably necessary' to complete the issuance of

a traffic citation had been performed, the detention then became illegal. Any evidence seized

during the illegal detention would then be suppressed." (*People v. Lusardi* [1991] 228

Cal.App.3d Supp. 1, 4.) "In assessing whether a detention is too long in duration to be

justified as an investigative stop, we consider it appropriate to examine whether the police

diligently pursued a means of investigation that was likely to confirm or dispel their

suspicions quickly, during which time it was necessary to detain the defendant." (*U.S. v.

Sharpe* [1985] 470 U.S. 675, 686, 105 S.Ct. 1568; see also *People v. Clair* [1992] 2 Cal.4th

629, 675.) Furthermore, it is the prosecution's burden to show that the detention was

sufficiently limited in scope and duration. *People v. Lusardi* 228 Cal.App. Supp. 3.

4

1   Even if the initial detention and subsequent search of Mr. Diaz was justified, there was

2   no reason to continue to detain Mr. Moses after he had been ordered out of the car so that the

3   officers could search its interior. The initial stop for speeding did not implicate the passenger

4   Mr. Moses in any way. Mr. Moses was merely detained as a passenger in a vehicle that was

5
6   detained for a vehicular infraction. Nor did the subsequent searches of Mr. Diaz or Mr. Diaz's

7   vehicle, give the officers reason to continue to detain Mr. Moses after they had already

8   investigated Mr. Diaz. Mr. Diaz did not indicate to the officers that Mr. Moses was involved

9   in any illegal activity.

10      Even if the officers could justify the initial pat down search of Mr. Moses in the

11
12  interest of officer safety there was certainly no reason to continue to detain him after it had

13  been established that he posed no threat to the officers and there was no probable cause to

14  arrest him. Instead, Officer Doherty commenced a *second* pat down search of Mr. Moses.

15  This second search by Officer Doherty was a completely gratuitous invasion upon Mr. Moses'

16
17  person as Officer Ingrassia had already frisked Mr. Moses in Officer Doherty's presence.

18  After establishing that Mr. Moses was not a danger to the officers and having no probable

19  cause to arrest him there was no reason to prolong the detention with a second pat down

20  search. Instead Officer Doherty continued to detain Mr. Moses under the pretext that it was

21
    cold outside and they wanted to let Mr. Moses sit in the police car.
22

23      The evidence obtained as a result of the search of Mr. Moses is inadmissible because

24  the detention of Mr. Moses continued long after what was necessary to effectuate its purpose.

25  III.    OFFICER INGRASSIA'S WEAPONS SEARCH OF MR. MOSES WAS ILLEGAL
        BECAUSE OFFICER INGRASSIA DID NOT HAVE A PARTICULARIZED SUSPICION
26      TO BELIEVE THAT MR. MOSES WAS ARMED AND DANGEROUS.

27

28

1

An officer may execute a limited pat down search for weapons only if he has a

2 reasonable belief, supported by specific and articulable facts, that the detainee is an "armed

3 and dangerous individual." *Terry v. Ohio* (1968) 392 U.S. 1, 27. The United States Supreme

4 Court delineates  the circumstances that permit a pat down search as follows: "In the case of

5
the self-protective search for weapons, he must be able to point to particular facts from which
6

7 he reasonably inferred that the individual was armed and dangerous." *Sibron v. New York*

8 (1968) 392 U.S. 40, 64; see also *People v. Dickey* (1994) 21 Cal.App.4th 952.

9     In this case Officer Ingrassia was not justified in frisking Mr. Moses. There is no

10
information in the police report to suggest that Mr. Moses was armed or posed any threat to
11

12 the officers.  There is no evidence that Mr. Moses made any suspicious movements, appeared

13 to be hiding anything, or was anything less than perfectly cooperative.  Because there was no

14 reason to suspect that Mr. Moses was armed and dangerous Officer Ingrassia's search of Mr.

15 Moses was a violation of Mr. Moses 4th amendment rights.  Furthermore, as stated above, the

16
pat down search of Mr. Moses resulted in an illegally prolonged detention.  Because an
17

18 illegally prolonged detention is tantamount to arrest without probable cause, all evidence

19 obtained from Mr. Moses as a result of the detention must be suppressed.

20     It seems that Officer Ingrassia's search for weapons was not satisfactory to Officer

21
Doherty. After Officer Ingrassia had searched Mr. Moses for weapons, Officer Doherty took
22

23 it upon himself to repeat the process.  Even if the first search can somehow be justified, the

24 second search clearly served no police purpose other than to try to overbear the will of Mr.

25 Moses and get him to consent to an otherwise illegal search.  Because Officer Doherty's

26 second weapons search of Mr. Moses was  not necessary to effectuate any legitimate police

27

28

6

1  purpose it is an illegally prolonged detention and all evidence obtained as a result must be

2  suppressed.

3  IV.     BECAUSE THERE WAS NO PROBABLE CAUSE TO ARREST MR. MOSES AND
   BECAUSE MR. MOSES DID NOT CONSENT TO BE SEARCHED, OFFICER
4  DOHERTY'S SEARCH OF MR. MOSES WAS ILLEGAL AND ANY EVIDENCE
5  PROCURED AS A RESULT OF THE SEARCH MUST BE SUPPRESSED.

6        A.  Probable Cause

7

8         If an officer makes a warantless search, probable cause to arrest must precede the

9  search. (Sibron v. New York (1968) 392 U.S. 40) In Sibron the United States Supreme Court

10 establishes a standard for the probable cause required to search someone suspected of

11 engaging in criminal activity.  Ibid.   In that case a police officer observed the defendant
12

13 speaking to a number of narcotics addicts over the period of eight hours.  Id. at 62.  The

14 officer then searched the defendant based on his observations.  Ibid.  The court found that the

15 inference that persons who talk to narcotics addicts are engaged in criminal narcotics traffic is

16 "simply not the sort of reasonable inference required to support an intrusion by the police
17
18 upon an individual's personal security."  Ibid.

19        In this case Mr. Moses was observed to have contact with only one person who was

20 involved in any way with drugs.  The officers did not know how long Mr. Moses had been

21 with co-defendant, Mr. Diaz.  Mr. Diaz gave no indication that Mr. Moses was carrying any
22
   drugs or had been consuming any.  There was no indication in the police report that Mr.
23
24 Moses appeared to be under the influence of narcotics.  Officer Ingrassia had just conducted a

25 pat down of Mr. Moses and had not found any weapons.  The only thing connecting Mr.

26 Moses to criminal activity was his presence in the car of Mr. Diaz.  When asked whether he

27

28

7

1    had any drugs on him Mr. Moses answered in the negative. The officers had no information

2    regarding Mr. Moses suggesting that Mr. Moses was involved in any criminal activity.

3    . Since Officer Doherty did not have the probable cause to believe Mr. Moses was

4    involved in criminal activity necessary to arrest him, the evidence obtained as a result of the

5    search of Mr. Moses must be suppressed.

6

7    B.  Consent to Search

8    The Fourth Amendment test for a valid consent to search is that the consent be

9    voluntary, and "[v]oluntariness is a question of fact to be determined from all the

10   circumstances." *Ohio v. Robinette* (1996) 519 U.S. 33, 40. In the present case the officers

11
12   pat-searched Mr. Moses for weapons despite the fact that, when asked, he denied having any

13   on his person. While pat searching Mr. Moses, Officer Doherty asked him if he had any drugs

14   on him. Since Mr. Moses had been asked if he had weapons, had denied having weapons and

15   then was searched for weapons anyway, it is hard to believe that Mr. Moses would have felt

16   that he had the right to refuse the officer's subsequent request that he be searched for drugs.
17
18   In fact it defies all logic to imagine that after having been pat-searched twice, with no

19   suggestion that he had any right to refuse the officers, Mr. Moses would then feel free to

20   refuse the request to search him for drugs. Since no reasonable person could feel he had the

21   right to refuse Officer Doherty's request to search for drugs, Mr. Moses' consent cannot be
22
23   deemed to have been voluntary. Since the search was not consensual and there was no

24   probable cause to search Mr. Moses, all evidence obtained as a result of the search must be

25   suppressed.

26   V.    CONCLUSION

27

28

8

1           For each of the reasons set forth above the defendant, Daymon Moses, respectfully

2   requests that the court grant this motion to suppress the evidence.

3                                      Respectfully submitted,

4

5

6

7                                   Tracee Clark
                                      Attorney for Defendant

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28